# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

Emergency Physician Services Of New York, et al.,

*Plaintiffs*,

V.

UnitedHeatlh Group, Inc., et al.,

*Defendants*.

Case No. 1:20-cv-09183

## MULTIPLAN, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)

**PLEASE TAKE NOTICE THAT** upon the incorporated Memorandum in Support of Defendant MultiPlan, Inc.'s ("MultiPlan") Motion to Dismiss Plaintiff's Complaint, MultiPlan will move this Court before the Honorable Alison J. Nathan, in Courtroom 906, 40 Foley Square, New York, New York 10007, on a date to be determined by the Court, for an Order pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure dismissing, with prejudice, Plaintiffs' Complaint on the grounds that Plaintiffs' causes of action against MultiPlan fail to state claims against MultiPlan upon which relief can be granted.

MultiPlan requests that the Court dismiss the Complaint in its entirety with prejudice. This Motion is based on the Memorandum of Law filed concurrently herewith, all pleadings on file with this Court, and on such oral argument as may be presented at the hearing on this matter.

January 25, 2021

Respectfully Submitted,

*/s/ Aimee Leigh Creed*
Aimee L. Creed
d'Arcambal Ousley & Cuyler Burk LLP
40 Fulton Street, Suite 1501
New York, NY 10038
Telephone: (212) 971-3175, ext. 104
Fax: (212) 971-3176
Email: acreed@darcambal.com

And

Errol J. King
Katherine C. Mannino
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
Email:  errol.king@phelps.com
         katie.mannino@phelps.com

Attorneys for Defendant, MultiPlan, Inc.

PD.30625481.2

**MULTIPLAN, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES AND DECLARATORY <u>RELIEF PURSUANT TO FED. R. CIV. P. 9(b) AND 12(b)(6)</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

MEMORANDUM OF LAW ......................................................................................................1

INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED ...................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................3

ARGUMENT .............................................................................................................................4

I.       Plaintiffs Fail to Meet the Pleading Standard of Rule 9(b)....................................4

II.     Plaintiffs Have Failed to Meet the Plausibility Standard of Twombly/Iqbal......................6

III.    Plaintiffs Have Failed to Make Out Their Civil RICO Claims............................................7

IV.   Plaintiffs Have Failed To Make Out Their Claim for Declaratory Relief
Under 28 U.S.C. § 2201...........................................................................................................12

CONCLUSION.........................................................................................................................12

PD.30625481.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Express Co. Shareholder Litig.*,
39 F.3d 395 (2d Cir. 1994)..................................................................................11

*Anatian v. Coutts Bank (Switzerland), Ltd.*,
193 F.3d 85 (2d Cir. 1999).................................................................................4, 8

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006)..............................................................................................11

*Ashcroft v. Iqbal*,
566 U.S. 662 (2009)................................................................................................2

*Azirelli v. Cohen Law Offices*,
21 F.3d 512 (2d Cir. 1994)......................................................................................9

*Beck v. Prupis*,
529 U.S. 494 (2000)..............................................................................................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................2

*Boyle v. United States*,
556 U.S. 938 (2009)................................................................................................9

*Bridge v. Phoenix Bond & Indem. Co.*
553 U.S. 639 (2008)..............................................................................................11

*Cruz v. FXDirectDealer, LLC*,
730 F.3d 115 (2d Cir. 2013)....................................................................................9

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001)....................................................................................9

*DiVittorio v. Equidyne Extractive Industries, Inc.*,
822 F.2d 1242 (2d Cir. 1987)..................................................................................5

*Empire Merchs., LLC v. Reliable Churchill LLLP*,
902 F.3d 132 (2d Cir. 2018)......................................................................6, 10, 11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
385 F.3d 159 (2d Cir. 2004)....................................................................................9

PD.30625481.2

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990)................................................................................8

*Hemi Grp., LLC v. City of New York, N.Y.*,
  559 U.S. 1 (2010).......................................................................................11

*Holmes v. Sec. Inv'r Prot. Corp.*,
  503 U.S. 258 (1992)................................................................................10, 11

*Lundy v. Catholic Health System of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013).......................................................................7, 8

*McLaughlin v. Anderson*,
  962 F.2d 186 (2d Cir. 1992)............................................................................4

*Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984)............................8

*O'Brien v. Nat'l Prop. Analysts Partners*,
  936 F.2d 674 (2d Cir. 1991)............................................................................5

*Reves v. Ernst Young*,
  507 U.S. 170 (1993)....................................................................................10

*Ross v. Bolton*,
  F.2d 819, 823 (2d Cir. 1990)...........................................................................5

*Schmidt v. Fleet Bank*,
  16 F.Supp.2d 340 (S.D.N.Y. 1998) ...............................................................10

*Sedima, S.P.R.L. v. Imrex Co.*,
  473 U.S. 479 (1985)....................................................................................10

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994).............................................................................5

*Stern v. Leucadia National Corp.*,
  844 F.2d 997 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d
  109 (1988).................................................................................................5

*United States v. Sessa*,
  125 F.3d 68 (2d Cir. 1997).............................................................................8

*United States v. Turkette*,
  452 U.S. 576 (1981).......................................................................................9

*United States v. Viola*,
  35 F.3d 37 (2d Cir. 1994)..............................................................................10

PD.30625481.2

*Williams v. Affinion Grp., LLC,*
   889 F.3d 116 (2d Cir. 2018).................................................................8

*Wood ex rel. Applied Research Assocs., Inc.,* 328 F. App'x 744 (2d Cir. 2009) ............5

**Statutes**

18 U.S.C. § 1341...................................................................................8

18 U.S.C. § 1343...................................................................................8

18 U.S.C. § 1962(c)..........................................................................1, 7, 10

18 U.S.C. §1962(d)...........................................................................7, 8, 10

18 U.S.C. § 1964(c)................................................................................1

18 U.S.C. §§ 1964(d)..............................................................................1

28 U.S.C. § 2201...............................................................................3, 12

**Other Authorities**

Fed. R. Civ. P. 8(a)............................................................................2, 6

Fed. R. Civ. P. 9(b)....................................................................1, 2, 4, 5, 8

Fed. R. Civ. P. 12(b)(6)...................................................................1, 2, 6

## MEMORANDUM OF LAW

Defendant MultiPlan, Inc. ("MultiPlan") respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Complaint (Doc. 1, "Compl.") filed by Plaintiffs Emergency Physician Services of New York; Buffalo Emergency Associates; Exigence Medical of Binghamton; Exigence Medical of Jamestown; and Emergency Care Service of New York ("Plaintiffs"), pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) (the "Motion"), as follows:

## INTRODUCTION AND STATEMENT OF ISSUES TO BE DECIDED

Plaintiffs, hospital-based emergency room physicians who practice medicine throughout the State of New York, [Compl., ¶ 2], allege that MultiPlan, along with its co-Defendant UnitedHealth Group, Inc. ("United"), have "formed an enterprise that furnishes a vehicle to deny proper payment for emergency medical services that the Plaintiffs provided to United's insureds," and have "conspired together to withhold proper payment for emergency medical services from Plaintiffs." [*Id.*, ¶¶ 3-4]. Plaintiffs further allege that Defendants have so acted "in furtherance of a scheme to defraud Plaintiffs by paying them amounts well below the 'usual and customary' or 'reasonable' rate required by both state and federal law." [*Id.*, ¶ 11]. Insofar as MultiPlan is concerned, these allegations are claimed to support liability under the federal RICO Act, 18 U.S.C. §§ 1961 *et seq.*, for which Plaintiffs seek damages pursuant to 18 U.S.C. §§ 1964(c) and (d). [Compl., ¶¶ 825 and 835].[1]

The Complaint, which consists of eight hundred sixty-four (864) paragraphs, attempts to spell out the circumstances by which Defendants are alleged to have combined to commit fraud against Plaintiffs, depriving the latter of "proper" reimbursement for healthcare services rendered to emergency-room patients with insurance provided or administered by United, and allowing Defendants to pocket the "ill-gotten" gains. Plaintiffs go to elaborate lengths to concoct a scheme by which Defendants have carried out these activities over several years to the detriment of

---

[1] Plaintiffs incorrectly cite 18 U.S.C. §§ 1964(c) and (d) as defining a substantive RICO violation and a RICO conspiracy, respectively; however, the proper references are to sections 1962(c) and (d). A private right of action is provided to "[a]ny person injured in his business or property by reason of a violation of section 1962" by 18 U.S.C. § 1964(c); section 1964(d) has no applicability to this case.

Plaintiffs – engaging in secret meetings, creating fraudulent pricing methodologies to avoid paying "reasonable" amounts, misrepresenting facts to Plaintiffs, and carrying out other nefarious activities all focused on cheating Plaintiffs out of amounts to which they claim they are entitled – all of which Defendants deny.

What this alleged vast conspiracy fails to present is a plausible theory of wrongdoing, particularly when held up against the legitimate cost-containment efforts of Defendants that are reflected in their entirely above-board business dealings. Yet to hear plaintiffs tell it, everything that MultiPlan does is designed with one purpose – to establish and justify unreasonably low and inaccurate pricing information that can be passed on to United for its use in underpaying the claims submitted by Plaintiffs.

As MultiPlan will demonstrate, Plaintiffs have not satisfied the applicable pleading standards of the Federal Rules of Civil Procedure and further, they have failed properly to allege essential elements of their claims, including but not limited to, standing and proximate cause. For this reason, their Complaint against MultiPlan should be dismissed.

<u>Issues to be resolved by the Court in considering this Motion:[2]</u>

1.  Have the Plaintiffs failed to plead fraud "with particularity" as required by Fed. R. Civ. P. 9(b), thereby requiring the dismissal of their civil RICO claims?

2.  Have the Plaintiffs failed to meet the "plausibility" standard of Fed. R. Civ. P. 8(a), as articulated by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 566 U.S. 662 (2009), thereby requiring the dismissal of all of their claims under Fed. R. Civ. P. 12(b)(6)?

---

[2] Only Counts I, II, and V are asserted against MultiPlan, along with co-Defendant United; accordingly, this Motion does not address Counts III and IV, which are asserted solely against United. MultiPlan adopts the arguments of United set forth in the latter's Motion to Dismiss and supporting Memorandum (Doc. 28) with respect to those Counts of the Complaint that are directed both to MultiPlan and United.

3.     Subsumed within the foregoing, have Plaintiffs failed to allege a civil RICO violation, for various reasons, thereby requiring dismissal of that claim, as well as the related RICO conspiracy claim?

4.     Have the Plaintiffs failed to demonstrate an entitlement to declaratory relief pursuant to 28 U.S.C. § 2201 against MultiPlan in the form of the prayed-for "declaration establishing the appropriate payment rates and payment methodology to be used to prevent further harm to the Plaintiffs," [Compl., ¶ 861], and that the "rates calculated by MultiPlan using the Data iSight service are fraudulent" [*Id.*, ¶ 862]?

The answer to each of these questions remains a simple and straightforward "*yes*." Dismissal of the Complaint with prejudice is therefore warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was filed by Plaintiffs on November 2, 2020. [Dkt. No. 1] The parties agreed, and the Court concurred by approving their stipulation on December 17, 2020, to an extension of the deadline for Defendants to file their motions to dismiss to January 25, 2021.  [Dkt. No. 23]

On information and belief, Plaintiffs are all affiliates of TeamHealth, a for-profit, private equity-funded entity that has acquired emergency services practices throughout the United States. As a result of these acquisitions and TeamHealth's goal of maximizing its return on investment, its affiliates, including Plaintiffs, aggressively bill for their services.[3]  Insurers such as United have been confronted with these escalating bills across the country and for some period of time; consistent with their obligations to their members, and employer healthcare plans, have been seeking solutions to deal with the situation.  One of those solutions is the employment of cost-management services like those provided by MultiPlan through its Data iSight product and other pricing tools.   Rather than the fraudulent scheme presented by Plaintiffs, the contractual

---

[3] TeamHealth's financial backers and its approach to billing has been the subjective of investigative reporting in the past year.  *See* https://www.propublica.org/article/how-rich-investors-not-doctors-profit-from-marking-up-er-bills.   Plaintiffs' protestations throughout the Complaint regarding Defendants' financial arrangements must thus be viewed with more than a little skepticism.

arrangement between United and MultiPlan, is fully documented in a Network Access Agreement and implemented, as would any business relationship, by interactions between the personnel of the two parties that are reflected in meetings, information exchanges, and other communications. Such interactions are entirely above-board, and are intended – not to defraud, to mislead, to divert monies, or to do any of the other "bad acts" of which Plaintiffs accuse Defendants – but instead are carried out to ensure that providers such a Plaintiffs are properly paid in a way that ensures necessary care but does not exploit those who are obligated to pay for such services. Plaintiffs' accusations attempt to twist a process designed to benefit American society into an evil money-grab. Viewed objectively, their case does not hold water. It should be swept aside.

## ARGUMENT

As demonstrated more fully below, Plaintiffs have failed to properly allege a substantive RICO claim predicated on an "association-in-fact" enterprise engaged in a scheme to defraud Plaintiffs, or a RICO conspiracy claim dependent on the same inadequately pled allegations of fraud. Moreover, they have failed to establish the requisite standing or proximate causation that would entitle them to seek damages for any alleged misconduct on the part of Defendants, particularly MultiPlan. And, having failed to demonstrate any fraudulent activity with respect to pricing or reimbursement, they are not entitled to a declaratory judgment establishing standards different from those presently applicable to the claims submitted to United and repriced by MultiPlan.

## I.     Plaintiffs Fail to Meet the Pleading Standard of Rule 9(b).

In any instance in which fraud is directly or indirectly pled, Plaintiffs are required to satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires that "'the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statement were fraudulent, state when and where the statements were made, and identify those responsible for those statement.'" *McLaughlin v. Anderson*, 962 F.2d 186, 191 (2d Cir. 1992) (quoting *Cosmas v. Hassett*, 886 F.2d 6, 11 (2d Cir. 1989); *Anatian v. Coutts Bank (Switzerland), Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999); *Shields v.*

*Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. . . . Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

The Complaint alleges fraud, using that word or comparable ones, at numerous points. [*See* Compl., ¶¶ 11, 16, 19, 51, 53, 55, 83, 85, 91, 98-100, 103-104, 107-108, 112-113, 116-119, 151, 161, 222-227, 229-230, 232, 234-236, 255-256, 269, 274-277, 306-310, 312, 315-318, 334-342, 378, 392, 406-407, 428, 442, 456, 470, 484, 498, 512, 536, 549, 562, 584, 598, 612, 626, 640, 654, 673, 687, 701, 715, 729, 743, 757, 771, 815, 860, 862]. The sheer number of allegations (many of which are "cookie-cutter" duplicates) does not make up for their inadequacy. All of those allegations lack the specificity required by Rule 9(b). The law is clear that such conclusory allegations are nothing more than makeweight to be ignored by the Court. *Wood ex rel. Applied Research Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009); *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991).[4]

Moreover, where Plaintiffs try to present "representative" claims involving each of the providers, presumably attempting to create the appearance of specificity, [*see* Compl., ¶¶ 366-771], they fail to do so, and also fail to show where MultiPlan was involved at all. In particular, Plaintiffs have not set forth any "specifics" regarding "the time, place, speaker, and content" of

---

[4] The Second Circuit's decision in *O'Brien* also provides cautionary guidance as to why enforcing the strictures of Rule 9(b) is so important:

> The purpose of Rule 9(b) is threefold — it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from "improvident charges of wrongdoing," and to protect a defendant against the institution of a strike suit. *See Ross v. Bolton,* F.2d 819, 823 (2d Cir. 1990); *Stern v. Leucadia National Corp.,* 844 F.2d 997, 1003 (2d Cir.), *cert. denied,* 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 109 (1988); *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987).

*Id.*

the alleged misrepresentations. References to Provider Remittance Advices ("PRA") sent by United along with claim reimbursements that indicate the use of the Data iSight pricing tool do not show that anyone was misled, since they were sent long _after_ services were rendered. They also do not show how MultiPlan or Data iSight was used to defraud or injure Plaintiffs.

Additionally, and perhaps more importantly, nowhere in the Complaint do Plaintiffs identify any separate misrepresentations or omissions whatsoever on the part of MultiPlan that could plausibly have misled them into believing that they would receive a particular rate for their services. Accordingly, all of the counts of the Complaint that are predicated on those examples are subject to dismissal.

## II. Plaintiffs Have Failed to Meet the Plausibility Standard of _Twombly/Iqbal._

Cutting across all of the allegations in the FAC is one fundamental flaw — Plaintiffs have failed to present a plausible claim as required by _Twombly/Iqbal_ alleging that MultiPlan (or United) has done anything improper or illegal by engaging in above-board, contractual dealings to control excessive health care costs. Fed. R. Civ. P. 8(a) requires such a showing; in its absence, the Complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6).

The analysis required under _Twombly_ and _Iqbal_ is straightforward. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." _Twombly_, 550 U.S. at 570. In _Iqbal_, the Supreme Court explained that courts considering motions to dismiss should adopt a "two-pronged approach" in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." _Iqbal_, 566 U.S. at 679.[5] The Second Circuit has applied the _Twombly/Iqbal_ standard to affirm a Rule 12(b)(6) dismissal of RICO substantive and conspiracy claims. _See Empire Merchs., LLC v. Reliable_

---

[5] Importantly, the Court held in _Iqbal_, as it had in _Twombly_, that courts may infer from the factual allegations in the complaint, "obvious alternative explanation[s]," which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer. _Iqbal,_ 566 U.S. at 682 (quoting _Twombly_, 550 U.S. at 567).

*Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (noting in particular *Iqbal's* statement at 566 U.S. 578 that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Applying those working principles to the Complaint in this matter leads to the inevitable conclusion that Plaintiffs have not made out a plausible case in any of the Counts against MultiPlan. First, shorn of all of the "legal conclusions" – which, in reality, make up the bulk of Plaintiffs' allegations – the Complaint strives mightily to cast MultiPlan and United as focused on nothing but fraud and deception aimed at depriving Plaintiffs of payments at "reasonable" rates for services rendered in order to line their pockets with ill-gotten gains. The alleged "details" regarding pricing policies and mechanisms – discussions of "FRED," "DiP," "Editing," "CF," and "target pricing" — add nothing. However, when one considers the "obvious alternative explanation" of managed care programs designed and implemented to hold down excessive health care costs for the benefit of plan sponsors, plan participants, and society as a whole, then MultiPlan's and United's conduct appears in a whole new light – a much more plausible one than Plaintiffs' tale of fraud and misrepresentation, conspiracy, and racketeering. Other than conclusory and unsupported characterizations — which, again, the Court must disregard — nothing in Plaintiffs' recitation of purported meetings between MultiPlan and United, or the purported exchange of information in whitepapers and other communications, presents a plausible case of wrongdoing. Under *Twombly/Iqbal*, claims based upon such allegations should be dismissed.

## III.   Plaintiffs Have Failed to Make Out Their Civil RICO Claims.

In Count I of the Complaint, Plaintiffs set forth allegations claiming violations of 18 U.S.C. § 1962(c). In Count II of the Complaint, Plaintiffs allege a RICO conspiracy violative of 18 U.S.C. §1962(d).

### A.   Section 1962(c)

"To establish a civil RICO claim, a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health System of Long Island, Inc.*, 711 F.3d

106, 119 (2d Cir. 2013) (quoting *Anatian*, 193 F.3d at 88); *Moss v. Morgan Stanley, Inc*., 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied*, 465 U.S. 1025 (1984). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Lundy,* 711 F.3d at 119.

B. <u>Section 1962(d)</u>

To establish a RICO conspiracy claim, courts requires that the complaint, at a minimum, (1) allege the parties' specific agreement to commit at least two predicate acts, and (2) contain supportive factual allegations. Mere conclusions are not enough. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25-26 (2d Cir. 1990); *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) (a plaintiff must allege "the existence of an agreement to violate RICO's substantive provisions"). Moreover, if the complaint fails to make out a substantive RICO claim, then a RICO conspiracy claim based on those insufficient substantive allegations must fail as well. *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 126 (2d Cir. 2018).

C. <u>Mail and Wire Fraud</u>

Plaintiffs also attempt to allege mail fraud (18 U.S.C. § 1343) and wire fraud (18 U.S.C. § 1341) as the predicate acts to support their RICO claim. [*See* Compl., ¶¶ 55, 276, 407, 514, 519, 564, 656, 773, 778, 824]. Both mail and wire fraud have three essential elements, which must be pleaded in conformity with Rule 9(b): "(1) a scheme to defraud, (2) to get money or property (3) furthered by the use interstate mails or wires." *Williams*, 889 F.3d at 124. A "scheme to defraud" is a "plan to deprive a person of something of value by trick, deceit, chicane, or overreaching." *Id*. (quoting *United States v. Autuori*, 212 F.3d 105, 115 (2d Cir. 2000)). Moreover, to make out a such a scheme, a plaintiff must provide proof of a material misrepresentation. *Id*. (quoting *Neder v. United States*, 527 U.S. 1, 25 (1999)).

Here, Plaintiffs' conclusory allegations of mail and wire fraud fail at the outset because, as discussed above, Plaintiffs have failed to allege any fraud, by either Defendant, with the requisite particularity required under Rule 9(b). *See Williams*, 889 F.3d at 124-25. Plaintiffs' allegations of mail and wire fraud are also insufficient because Plaintiffs do not plead that any wire communications crossed state lines — a necessary element to sustain a claim of wire fraud.

Plaintiffs in this case have alleged only that (1) some communications to further the alleged scheme were transmitted by wire, and that (2) "activities that span multiple states and affect interstate commerce" occurred. [*See* Compl., ¶¶ 19, 55, 107, 159, 222-223, 778-779, 807, 824, 830]. But there is no specific allegation describing any particular communication sent by "wire" (fax, phone, or otherwise) that crossed a state line, which is fatal to Plaintiffs' claim. Also absent from the Complaint are any factual allegations demonstrating a specific intent to deceive or defraud on the part of MultiPlan.

D. <u>Association-in-Fact Enterprise</u>

Plaintiffs have also failed adequately to plead the existence of an "association-in-fact" enterprise, distinct from the alleged pattern of racketeering. *See Boyle v. United States*, 556 U.S. 938 (2009); *United States v. Turkette*, 452 U.S. 576 (1981). Plaintiffs claim the existence of such an enterprise, consisting of United and MultiPlan, acting in concert with an alleged common purpose and each directing some part of the affairs of the alleged scheme for RICO purposes. [*See* Compl., ¶¶ 16, 53-54, 103-130]. However, their allegations do not satisfy the applicable legal test.

To sustain a RICO claim where an "association-in-fact" enterprise is concerned, Plaintiffs must plausibly allege that the participants share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes. *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004). Each RICO defendant must be shown to have participated in directing, or played some part in the management or operation of, the enterprise itself, and not merely conducted its own affairs. *Azirelli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994); *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001); *Cruz v. FXDirectDealer, LLC*, 730 F.3d 115, 121 (2d Cir. 2013).

Where the alleged association-in-fact is formed through routine contracts for services, the "common purpose" element is unmet because the entities are pursuing their own individual economic interests, rather than a shared purpose. Here, all of MultiPlan's actions are attributable to its performance pursuant to the Network Access Agreement with United. [See Compl., ¶ 270]. Plaintiffs present a litany of actions involving meetings, shared approaches to dealings with

providers, analyses of claims to develop pricing parameters, and the like; but they fail to show that these are anything more than the conduct of a business relationship whose ultimate goal is cost-containment designed to benefit patients, employers, and society as a whole. Regardless of their alleged payment expectations, Plaintiffs have not shown that Defendants set out to, or did in fact, engage in a pattern of racketeering that defrauded them by means of a RICO enterprise, rather than engage in normal business activity.[6]

Insofar as MultiPlan is concerned, its Data iSight pricing services fall squarely within the scope of *Reves v. Ernst Young*, 507 U.S. 170, 179 (1993), where the Supreme Court held that a party will not be liable under RICO unless it has some part in directing the alleged enterprise's affairs. As the Second Circuit has held, "simple taking of directions and performance of tasks that are 'necessary and helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of §1962(c)." *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994). *See Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346-47 (S.D.N.Y. 1998) (collecting cases).

E. <u>Standing and Proximate Cause</u>

A RICO "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property *by the conduct constituting the violation*. "*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (emphasis added).[7] "To sue under RICO, a plaintiff must also establish that the underlying § 1962 RICO violation was 'the proximate cause of his injury.'" *Empire Merchs.*, 902 F.3d 132, 140 (2d Cir. 2018) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010)). "This means that there must be 'some direct relation between the injury asserted and the injurious conducts alleged.'" *Id.* (quoting *Holmes v. Sec. Inv'r Prot.*

---

[6] Plaintiffs allege that "[t]he relationships between United and MultiPlan are not merely standard commercial contracts; instead, United and MultiPlan exploit their contractual arrangements to provide a false impression of legitimacy for their hidden racketeering activity." [Compl., ¶ 20]. Such conclusory pleading avails Plaintiffs nothing in advancing their RICO claim.

[7] Although the discussion here generally relates to standing with respect to Plaintiffs' alleged claims under section 1962(c), the Supreme Court held in *Beck v. Prupis*, 529 U.S. 494, 496 (2000), that a plaintiff suing under section 1962(d), as are Plaintiffs here, must allege injury from an overt act that is itself a predicate act.

*Corp.*, 503 U.S. 258, 268 (1992)). "A link that is 'too remote,' 'purely contingent, or 'indirec[t]' is insufficient." *Id.* at 141 (quoting *Hemi Grp., LLC v. City of New York, N.Y.*, 559 U.S. 1, 9 (2010)). "But for" causation is not enough, *Holmes*, 503 U.S. at 268; *In re Am. Express Co. Shareholder Litig.*, 39 F.3d 395 (2d Cir. 1994),[8] and "foreseeability and intention" have little to no import for RICO's proximate cause test. *Empire Merchs.*, 902 F.3d at 145 (discussing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006), *Hemi*, and *Bridge v. Phoenix Bond & Indem. Co.* 553 U.S. 639 (2008)).

Plaintiffs provide only conclusory allegations as to the existence of RICO proximate cause. [*See* Compl., ¶¶ 12, 116, 825, 784, 787, 834-835]. They simply claim that each "Plaintiff has been directly harmed . . . ," [*see* Compl., ¶¶ 411-412, 516-517, 521-522 (duplicates of 516-517 relating to same individual Plaintiff), 568, 658-659, 775-776], that there are no other victims "who have been directly injured, or more directly injured than Plaintiffs," and that their "injuries are not just the foreseeable and natural consequence" of Defendants' actions, [*see* Compl., ¶ 787]. These formulaic recitations are not sufficient under the previously noted precedents, however.[9]

The simple fact is that Plaintiffs allege that they were not paid what they believe they were entitled to be paid. Without focusing on the reasonableness of their own billed charges, Plaintiffs allege that they were deprived of additional monies that they claim they should have been paid because United paid them less. If the ultimate determination to pay the Plaintiffs less – based on the entirely legitimate motivation to control healthcare costs – was made by United, based on criteria it applied (even if a part of that was information supplied by MultiPlan via Data iSight pricing methodology), then it cannot be said that the reduction is a result of any conduct allegedly violative of RICO on the part of MultiPlan.[10] Accordingly, there is no direct causal link and hence, no RICO standing on the part of Plaintiffs.

---

[8] Quoting *Hecht*, 897 F.2d at 23 ("By itself, factual causation (e.g., 'cause-in-fact' or 'but for' causation) is not sufficient.")

[9] Indeed, as noted in the plurality opinion in *Hemi*, "*Anza* and *Holmes* never even mention the concept of foreseeability." 592 U.S. at 12.

[10] In making the statement above, MultiPlan does not concede that United committed any act violative of RICO that would create standing for Plaintiffs based on proximate causation.

Based on the foregoing, Counts I and II of the Complaint should be dismissed with prejudice, as Plaintiffs have failed to establish a substantive RICO violation or a RICO conspiracy against MultiPlan.

## IV.    Plaintiffs Have Failed To Make Out Their Claim for Declaratory Relief Under 28 U.S.C. § 2201.

Plaintiffs' claim for declaratory relief pursuant to 28 U.S.C. § 2201 is wholly dependent upon their establishing that Defendants have engaged in fraud, and that United has not otherwise properly paid claims submitted by Plaintiffs for emergency services, based on the use of MultiPlan's Data iSight pricing methodology.  To the extent, as has been shown above, that Plaintiffs have failed to establish the necessary predicate of fraudulent conduct through a RICO enterprise and/or conspiracy that could be the proximate cause of any alleged injury resulting from the payments that United did make, Plaintiffs are not entitled to have this Court "set the rates" which allegedly should have been used in the past, or purportedly should be used in the future.  A declaratory judgment doing so accordingly should not be entered.

## CONCLUSION

For the forgoing reasons, as well as those set forth in United's motion papers, Defendant MultiPlan, Inc. respectfully asks the Court to dismiss with prejudice the Complaint of Plaintiffs Emergency Physician Services of New York; Buffalo Emergency Associates; Exigence Medical of Binghamton; Exigence Medical of Jamestown; and Emergency Care Service of New York.

January 25, 2021

Respectfully Submitted,

*/s/ Aimee Leigh Creed*
Aimee Leigh Creed
d'Arcambal Ousley & Cuyler Burk LLP
40 Fulton Street, Suite 1501
New York, NY 10038
Telephone: (212) 972-3175, ext. 104
Fax: (212) 971-3176
Email: acreed@darcambal.com

And

Errol J. King
Katherine C. Mannino
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
Email:  errol.king@phelps.com
        katie.mannino@phelps.com

Attorneys for Defendant, MultiPlan, Inc.

| | |
|---|---|
| Emergency Physician Services Of New York, et al., | |
| *Plaintiffs*, | Case No. 1:20-cv-09183 |
| V. | |
| UnitedHeatlh Group, Inc., et al., | |
| *Defendants*. | |

## CERTIFICATE OF SERVICE

I, Aimee L. Creed, an attorney duly admitted to practice law in the Courts of the State of New York, hereby certify that on January 25, 2021, I electronically filed a copy of the foregoing *Notice of Motion and Motion to Dismiss Plaintiffs' Complaint* with the Clerk of the Court by using the CM/ECF system, which will send a notification of such filing to the following:

Matthew M. Lavin, Esq.
Salvatore Badala, Esq.
Aaron R. Modiano, Esq.
Napoli Shkolnik, PLLC
*Attorneys for Plaintiffs*
360 Lexington Avenue, 11th Floor
New York, NY 10017

Dated: New York, New York
January 25, 2021

**d'Arcambal Ousley & Cuyler Burk LLP**

By: *     /s/ Aimee L. Creed          *

Aimee L. Creed, Esq.
40 Fulton Street, Suite 1501
New York, NY 10038
(212) 971-3175, ext. 104
(212) 971-3176 (fax)
acreed@darcambal.com

Errol J. King
Katherine C. Mannino
Phelps Dunbar LLP
II City Plaza
400 Convention Street, Suite 1100
Baton Rouge, LA 70802
Telephone: (225) 346-0285
Fax: (225) 381-9197
errol.king@phelps.com
katie.mannino@phelps.com

*Attorneys for Defendant, MultiPlan, Inc.*