**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EMERGENCY PHYSICIAN SERVICES OF NEW YORK, ET AL., | Case No. 1:20-cv-09183-AJN |
| Plaintiffs, | Hon. John G. Koeltl |
| -against- | |
| UNITEDHEALTH GROUP, INC., ET AL., | |
| Defendants. | |

**OBJECTIONS TO MAGISTRATE JUDGE NETBURN'S DISCOVERY
RULINGS AND REQUEST TO FILE IMMEDIATE MOTION FOR
SUMMARY JUDGMENT PRIOR TO CLOSE OF DISCOVERY**

## TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ...................................................................................... 1

II.     DISCOVERY ORDER OBJECTIONS .......................................................................... 5

III.    STANDARD FOR REVIEW ........................................................................................... 8

IV.    OBJECTIONS AND ARGUMENT ................................................................................ 8

    A.      Objection to Discovery Ruling on Cost Information ............................................. 8

    B.      Objection to Discovery Ruling on Complaints Concerning Excessive Billing ................................................................................................................... 12

    C.      Objection to Discovery Ruling on Documents Showing Defendants' Nationwide Strategies and Profit Motives Pertaining to Emergency Medicine Services. .............................................................................................. 14

V.      DEFENDANTS SHOULD BE PERMITTED TO IMMEDIATELY MOVE FOR SUMMARY JUDGMENT AS TO ALL DISPUTED CLAIMS ..................................... 19

VI.    CONCLUSION ............................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buffalo Emergency Servs. Assocs., LLP v. Aetna Health, Inc. (N.Y.),*
 167 A.D.3d 461 (1st Dep't 2018) ................................................................8, 20, 21

*Buffalo Emergency Servs. Assocs., LLP v. Aetna Health, Inc. (N.Y.),*
 195 A.D.3d 1403 (4th Dep't 2021).............................................................8, 20, 21

*Buffalo Emergency Servs. Assocs., LLP v. Aetna Health, Inc. (N.Y.),*
 2017 WL 5668420 (N.Y. Sup. Ct., Com. Div., Nov. 27, 2017) .........................7, 20

*Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.,*
 2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021)..............................................*passim*

*Han v. Hertz Corp.,*
 12 A.D.3d 195 (1st Dep't 2004) ..............................................................................21

*N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.,*
 937 N.Y.S.2d 540 (N.Y. Sup. Ct. 2011) ......................................................3, 9, 17

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.,*
 967 F.3d 218 (3d Cir. 2020)........................................................................3, 4

*Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.,*
 2021 WL 1224883 (E.D.N.Y. Mar. 31, 2021) ....................................................3

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.,*
 832 A.2d 501 (Pa. Super. Ct. 2003) ....................................................................9

**Statutes**

28 U.S.C. § 636(b)(1)(A).................................................................................8

29 U.S.C. § 1144.............................................................................................2

NYFSL § 603(i)...............................................................................................9

NYFSL § 604..................................................................................................17

NYFSL § 604(a)(1)....................................................................................15, 18

NYFSL § 604(f)................................................................................................8

NYFSL § 605(a) ...........................................................................................7, 21

**Rules**

Fed. R. Civ. P. 72(a) .......................................................................................8

Pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a), Defendants UnitedHealth Group, Inc. ("UHG"), United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC (collectively, "Defendants"), respectfully submit their objections to three discovery rulings entered by the Hon. Sarah Netburn in a bench ruling dated June 27, 2022 (Dkt. Nos. 159, 160) and in an Order dated July 1, 2022 (Dkt. No. 158), following a discovery conference held on June 27, 2022.

## I.   PRELIMINARY STATEMENT

Plaintiffs Emergency Physician Services of New York, Buffalo Emergency Associates, Exigence Medical of Binghamton, and Emergency Care Services of New York (collectively, "TeamHealth Plaintiffs") are pursuing common law claims for unjust enrichment against Defendants relating to more than 7,500 separate health plan benefit claims for emergency medicine services that they rendered between January 1, 2018 and December 31, 2021 to patients who are members of health plans insured or administered by Defendants, and submitted to Defendants for payment (the "Disputed Claims").[1]  TeamHealth Plaintiffs acknowledge that they are out-of-network providers who do not have written contracts with Defendants that specify the rates that they are to be paid for their services.  (First Amended Complaint ("FAC") ¶ 28, Dkt. No. 97.)  Each of the hundreds of  health benefit plans that are at issue among the Disputed Claims contain written terms describing the amounts of benefits the plan will pay for health care services, including emergency medicine services, that are rendered by out-of-network providers such as TeamHealth Plaintiffs.

---

[1] As stated in Defendant UHG's pending motion for partial judgment on the pleadings, UHG does not adjudicate or pay benefit claims, and UHG accordingly did not participate in the conduct that is the basis for TeamHealth Plaintiffs' unjust enrichment claims.  (Dkt. No. 113.)

In this lawsuit, TeamHealth Plaintiffs are seeking to use common law unjust enrichment claims to override the health plan benefit terms that govern out-of-network benefit payments, and to instead uniformly require each of the hundreds of the at-issue health plans to pay TeamHealth Plaintiffs "reasonable value" whenever the health plans' members receive emergency medicine services. TeamHealth Plaintiffs acknowledge that Defendants adjudicated the Disputed Claims pursuant to the terms of "commercial insurance plans sold and/or administered by United," and that Defendants made payments on each Disputed Claim. (FAC ¶¶ 19, 27, 75.) The FAC alleges, however, that Defendants underpaid each of the more than 7,500 claims at issue because "the payment made was substantially less than the reasonable value of the emergency care provided by [TeamHealth] Plaintiffs." (FAC ¶ 27.) TeamHealth Plaintiffs further contend that "reasonable value" means whatever amount they billed on each Disputed Claim, (*see* Tr. 6/27/22, Dkt. No. 159 at 43:16-17), notwithstanding the fact that providers generally are not paid their billed charges.

It is Defendants' position that TeamHealth Plaintiffs' unjust enrichment claims are not legally viable. Out-of-network providers would, of course, prefer to be able to override health plan benefit terms by using unjust enrichment claims to require health plans to pay their billed charges. But the Employee Retirement Income Security Act of 1974 ("ERISA) preempts the use of common law claims to override health plan benefit terms. 29 U.S.C. § 1144.[2] Moreover,

---

[2] The case that Judge Nathan most prominently relied on in her motion to dismiss ruling as support for allowing TeamHealth Plaintiffs' unjust enrichment claims to proceed actually held the opposite, finding that unjust enrichment claims of the kind brought by the FAC are preempted by ERISA. *Compare Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.*,

TeamHealth Plaintiffs rendered their services to patients who were members of the health plans administered or insured by Defendants, not to Defendants themselves, and the effect of rendering those services was not to confer a benefit on Defendants, but rather was to trigger a contractual obligation of the health plans to pay out-of-network benefit amounts in accordance with plan terms.[3]  Defendants accept, however, that the Court denied dismissal of TeamHealth Plaintiffs' unjust enrichment claims, and that the case is accordingly proceeding on the theory that Defendants owed TeamHealth Plaintiffs a common law duty always to pay Plaintiffs what they refer to as "a 'reasonable' rate for their services," even when doing so would require departing

---

2021 WL 4437166, at *12 (S.D.N.Y. Sept. 28, 2021), *with Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 240–41 (3d Cir. 2020) (unjust enrichment claims seeking to compel health plan benefit payments are preempted by ERISA, unless the claims are seeking to enforce agreements or promises that were made external to the plan).

[3] Judge Nathan cited *Sasson Plastic Surgery, LLC v. UnitedHealthcare of N.Y., Inc.*, 2021 WL 1224883, at *15 (E.D.N.Y. Mar. 31, 2021) and *N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc.*, 937 N.Y.S.2d 540, 545 (N.Y. Sup. Ct. 2011), as support for her decision allowing TeamHealth Plaintiffs' unjust enrichment claims to proceed.  *See Emergency Physician Servs.*, 2021 WL 4437166, at *12.  In fact, *Sasson* dismissed similar unjust enrichment claims, and specifically distinguishing *Wellcare* on the grounds that it applies only in Medicare and Medicaid contexts in which a defendant has undertaken a specific contractual obligation to provide emergency medicine ***services*** to patients, rather than paying specified ***monetary benefits***.

from the terms of the health plans that they are charged with administering in accordance with plan terms. *Emergency Physician Servs.*, 2021 WL 4437166, at *12.[4]

Applying the "reasonable value" paradigm that is at the heart of TeamHealth Plaintiffs' case and thus presently governs discovery, Defendants object to three specific discovery orders on the grounds that they cannot be reconciled with New York law pertaining to determining the reasonable value of emergency medicine services, and further cannot be reconciled with each other. As explained further herein, the "reasonable value" of emergency medicine services under New York law is a purely objective inquiry that does not warrant or permit discovery into the subjective motivations and intentions of the parties. However, to the extent that the Court

---

[4] In allowing the unjust enrichment claims to proceed, Judge Nathan held that "the insurer's benefit 'is not the provision of the healthcare services *per se*, but rather the discharge of the obligation the insurer owes to its insured.'" *Emergency Physician Servs.*, 2021 WL 4437166, at *12 (quoting *Plastic Surgery Ctr.*, 967 F.3d at 240–41). As a matter of law and logic, the "discharge of the obligation the insurer owes to its insured" can only be the amount that the health plan was required to pay for the out-of-network service under the terms of the plan. *See, e.g.*, *Plastic Surgery Ctr.*, 967 F.3d at 241 ("[I]n the modern era, when the insured is a plan participant, the 'contractual obligation' is none other than the insurer's duty to its insured under the terms of the ERISA plan."). Defendants understand, however, that discovery presently extends to TeamHealth Plaintiffs' alternate theory that New York common law imposes an independent obligation on health plans to pay "reasonable value" whenever emergency medicine services are rendered to their insureds.

disagrees and elects to permit discovery into subjective *mens rea* considerations, such discovery

must be a two-way street that is equally available to both parties.

## II.   <u>DISCOVERY ORDER OBJECTIONS</u>

Defendants object to two discovery orders denying Defendants' requests to compel

production of documents showing (1) "TeamHealth Plaintiffs' costs of rendering the at-issue

emergency medicine services" and (2) "complaints or disputes from patients, hospitals, or other

facilities … regarding the amount they charged for their services."  (Dkt. No. 150 at 3, 4.)  In

opposing these discovery requests, TeamHealth Plaintiffs argued that the requested discovery

should be denied because "what this case should be about is price, value based on price."  (Tr.

6/27/22, Dkt. No. 159 at 30:14-15.)  In support of their discovery objections, TeamHealth

Plaintiffs referred the Court to New York Financial Services Law ("NYFSL") § 604, a statute

that sets forth specific factors for determining the reasonable value of emergency medicine

services rendered in New York, which do not include the costs individual healthcare providers

incur to render the services at issue.  (*Id*. at 29:3-10.)  TeamHealth Plaintiffs specifically argued

that "the law focuses **only** on price."  (*Id*. at 30:25 (emphasis added).)  Magistrate Judge Netburn

agreed and denied the requested discovery, citing the standards set forth in NYFSL §§ 603-604.

(Dkt. No. 158 at 2.)

Defendants separately object to a discovery ruling requiring Defendants to produce

"nationwide evaluations about emergency room rates and spending."[5]  (Tr. 6/27/22, Dkt. No. 160

at 34:11-14.)  Magistrate Judge Netburn explained that the emergency medicine services

---

[5] This bench ruling clarified a prior written order stating that "Defendants shall produce

nationwide strategy documents relevant to New York, even if they are not New York-specific."

(Dkt. No. 149.)

documents that are encompassed by the order would be "nationwide documents … that talk about the higher level strategies for how United decides to roll out its plans, generally speaking, and the ways in which it looks to make money.  There's no shame here.  It's a profit making enterprise, so the fact that it's looking to improve its profitability shouldn't shock anybody, but I think that plaintiffs are entitled to know how they're making those determinations."  (*Id.* at 35:9, 15-22.)  But Defendants' strategies and profit motives are not a factor for determining the reasonable value of emergency medicine services under NYFSL §§ 603-604, nor under any New York case that has examined the reasonable value of emergency medicine services.  And while the other discovery orders that Defendants are challenging deny them access to the cost information needed to demonstrate TeamHealth Plaintiffs' profits and profit motives, Defendants have irreconcilably been required to produce documents pertaining to their own profits and profit motives.

The three discovery orders to which Defendants object are clearly erroneous and should be set aside because they are inconsistent with New York law, inconsistent with prior rulings of this Court, and inconsistent with one another.  Discovery cannot be allowed to proceed on an unequal and inconsistent basis that permits TeamHealth Plaintiffs extensive nationwide discovery into Defendants' profits and profit motives, while denying Defendants discovery into TeamHealth Plaintiffs' corresponding profits and profit motives.  Defendants respectfully request that the Court establish a single consistent discovery standard that either limits discovery on the 7,500 Disputed Claims to objective information similar to the factors set forth in NYFSL §§ 603-604, or equally permits both parties to obtain documents pertaining to motive.

Relatedly, Defendants respectfully request permission to immediately move this Court for summary judgment as to all of the Disputed Claims on the grounds that they are barred by

New York State law.[6]  TeamHealth Plaintiffs have extensively relied on NYFSL §§ 603-605 in

their Complaint, in their Amended Complaint, and their discovery arguments.  (*See, e.g.*, Compl.

¶ 80 ("Specifically, New York's Financial Services Law § 605(a) provides that out-of-network

emergency medical providers must be paid a reasonable rate for their services); FAC ¶ 29 (citing

NYFSL § 605(a)).)  This Court similarly expressly relied on NYFSL § 605(a) in allowing

TeamHealth Plaintiffs' unjust enrichment claims to survive Defendants' motion to dismiss.

*Emergency Physician Servs.*, 2021 WL 4437166, at *2 ("State law similarly requires that health

insurance companies pay a reasonable amount for the services of out-of-network emergency

medical providers.  NYFSL § 605(a); Compl. ¶ 80."); *id*. at 17 ("[A]s alleged, United's

obligation to compensate Plaintiffs comes from, among other authorities, New York state law.

*E.g.*, NYFSL § 605(a) (requiring that "the health care plan shall pay an amount that it determines

is reasonable for the emergency services rendered by the non-participating physician").").  And

Magistrate Judge Netburn has repeatedly relied on NYFSL §§ 603-604 in issuing discovery

rulings in the case.  (Dkt. No. 143; Dkt. No. 158 at 2.)

      As explained further below, in prior litigation brought by the very same plaintiffs that

have sued Defendants in this case, multiple state courts held that New York law bars the use of

unjust enrichment claims to contest health plan benefit claim payments for emergency medicine

services, because NYFSL §§ 601 *et seq*. establish that such disputes must be resolved through

other available means, and not through litigated private causes of action.  *See Buffalo Emergency*

---

[6] Defendants request that they be permitted to reserve the right to move for summary judgment

as to all other grounds that depend on the further development of the discovery record at the

close of discovery.

*Servs. Assocs., LLP v. Aetna Health, Inc. (N.Y.)*, 2017 WL 5668420 (N.Y. Sup. Ct., Com. Div.,

Nov. 27, 2017) ("*Buffalo Emergency Servs. I*"); *Buffalo Emergency Servs. Assocs., LLP v. Aetna*

*Health, Inc. (N.Y.)*, 167 A.D.3d 461 (1st Dep't 2018) ("*Buffalo Emergency Servs. II*"); *Buffalo*

*Emergency Servs. Assocs., LLP v. Aetna Health, Inc. (N.Y.)*, 195 A.D.3d 1403 (4th Dep't 2021)

("*Buffalo Emergency Servs. III*").  The interests of judicial economy and efficiency counsel in

favor of allowing Defendants to bring an across-the-board summary judgment motion raising this

dispositive issue of state law now, rather than following months of further expensive and time-

consuming discovery.

## III.  STANDARD FOR REVIEW

"A judge of the court may reconsider any pretrial matter [related to discovery] where it

has been shown that the … magistrate judge's order is clearly erroneous or contrary to law."  28

U.S.C. § 636(b)(1)(A).  "The district judge in the case must consider timely objections and

modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R.

Civ. P. 72(a).

## IV.  OBJECTIONS AND ARGUMENT

### A.  Objection to Discovery Ruling on Cost Information

Defendants agree that if discovery is limited to the factors enumerated in NYFSL § 604,

then they are not entitled to obtain "TeamHealth Plaintiffs' costs of rendering the at-issue

emergency medicine services."  (Dkt. No. 150 at 3.)  NYFSL § 604 provides that one "relevant

factor" for "determining a reasonable fee" for emergency medicine services is "the usual and

customary cost of the service."  NYFSL § 604(f).  But NYFSL § 603 does not define "usual and

customary cost" by reference to the costs incurred by providers to render the service.  Instead, it

defines "usual and customary cost" to mean "the eightieth percentile of all ***charges*** for the

particular health care service performed by a provider in the same or similar specialty and

provided in the same geographical area as reported in a benchmarking database maintained by a

nonprofit organization specified by the superintendent."  NYFSL § 603(i) (emphasis added).

This statutory definition focuses on provider charges for a service, not the costs that providers

incur to render a service.

It was nonetheless clearly erroneous and contrary to law for Defendants to be denied the

requested cost discovery for two reasons.

First, TeamHealth Plaintiffs' objective cost information—and specifically, whether

Defendants' payments on each Disputed Claim exceeded TeamHealth Plaintiffs' costs—is made

relevant by New York case law to determining whether TeamHealth Plaintiffs have a valid cause

of action for unjust enrichment.  As TeamHealth Plaintiffs themselves expressly acknowledged

in an April 5, 2022 letter to the Court on discovery issues, *see* Dkt. No. 126 at 1, Judge Nathan

"specifically held" in her ruling on Defendants' motion to dismiss that "where, as here, a hospital

is required by law to treat patients in an emergency room, an insurance company is unjustly

enriched ***if it fails to pay the hospital in full for the costs incurred*** in rendering the necessary

treatment to the insurer's enrollees."  (Dkt. No. 65 at 25) (emphasis added) (quoting *Wellcare*,

937 N.Y.S.2d at 545).  Magistrate Judge Netburn cited a Pennsylvania case as support for

departing from *Wellcare* and from Judge Nathan's prior ruling in this case.  (*See* Dkt. No. 158 at

2 (citing *Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts., Inc.*, 832 A.2d 501, 510 (Pa. Super.

Ct. 2003)).)  But *Temple* in fact strongly reinforces the relevance of cost information to

determining an unjust enrichment claim, holding that "payment of less than actual costs is

unreasonable and thus, inequitable."  *Id*. at 508.  In fact, *Wellcare* cited *Temple* for this precise

point.  *Wellcare,* 937 N.Y.S.2d at 544 (quoting *Temple* for the proposition that "payment of less

than actual costs is unreasonable and thus, inequitable").  Because New York case law and Judge

Nathan's prior ruling in this case both hold that a direct comparison of TeamHealth Plaintiffs' cost of providing emergency medicine services to the amounts that they were paid for those services is directly relevant to the validity of their unjust enrichment claims, Defendants are entitled to TeamHealth Plaintiffs' cost information.

Second, Magistrate Judge Netburn's order denying discovery into TeamHealth Plaintiffs' cost information cannot be reconciled with her separate discovery ruling permitting TeamHealth Plaintiffs discovery into Defendants' profit motives related to emergency medicine services. TeamHealth Plaintiffs' expected and actual profits are the difference between the costs they incur to render emergency medicine services, and the amounts that they bill and are paid for those services. Defendants cannot demonstrate whether TeamHealth Plaintiffs made a profit on each Disputed Claim, or the amount of that profit, without access to their cost information.

Moreover, TeamHealth Plaintiffs are continuing to reserve the right to contend at trial that the specific amounts that they billed for emergency medicine services reflect the reasonable value of those services. (*See* Tr. 6/27/22, Dkt. No. 159 at 43:16-17 ("[T]hat may be the metric of what is reasonable value. Our charges may be reasonable value.").) If the Court holds that the motives and incentives of the parties are relevant, then TeamHealth Plaintiffs unquestionably had a strong financial incentive to increase their billed charges to rates well above the reasonable value of their services because (1) patients generally do not inquire about price before obtaining emergency medicine services, and (2) the more TeamHealth Plaintiffs billed for their services above and beyond their actual costs, the greater their potential profit.

To be clear, it is Defendants position that under New York law—including *Wellcare* and NYFSL §§ 603-605—the reasonable value of each of the more than 7,500 Disputed Claims should be determined based on entirely objective information concerning the amounts that

TeamHealth Plaintiffs charged, the amounts that Defendants paid, whether the amounts that Defendants paid exceeded TeamHealth Plaintiffs' costs, and the market rates for similar emergency medicine services rendered by other healthcare providers in the same geographic area. Indeed, TeamHealth Plaintiffs vociferously and repeatedly argued at the June 27, 2022 hearing that the reasonableness of each payment must be determined *solely* on the basis of objective market information. *See, e.g.*, Tr. 6/27/22, Dkt. No. 159 at 37:23-38:2 ("[A]nd the benefit they retain is the benefit of paying under market. … So it's the benefit to them for not meeting the market. That's the unjust enrichment standard.").[7] Defendants agree that only

---

[7] *See also* Tr. 6/27/22, Dkt. No. 159 at 30:14-15 ("[W]hat this case should be about is price, value based on price."); *id.* at 30:25-31:2 ("[T]he law only focuses on price. The law is going to focus on what is the price of the services that we are providing."); *id.* at 32:4-5 ("The reasonable value is always based on that price, that market price."); *id.* at 32:16-33:2 ("[P]rice will be determined by the geography in which it was provided. We're not going to be benchmarking against services in South Dakota . . . . So we can say what is the reasonable value for the service here in Brooklyn. What is the reasonable value upstate in Albany. We can look at it market by market, and we can have specific information. It's not going to be compared against South Dakota. So you have the value based on the price in each of the geographies that are relevant to this case."); *id.* at 33:7-18 ("The value of that service may be different based on the market forces in South Dakota. . . . But what you're going to benchmark against is what is in that community, and it's really going to be based on price."); *id.* at 36:25-37:3 ("And the standard is the price in each geographic location. And we're more than happy to produce whatever information we have on the price in every jurisdiction."); *id.* at 37:17-19 ("And our position is

objective information is relevant to adjudicating the Disputed Claims, and if the Court agrees as well, then it should hold that the parties' subjective strategies and profit motives are beyond the scope of appropriate discovery.  That is, a health plan payment on an emergency medicine services claim is either objectively within the range of reasonable market rates or it is not, and the strategies and profit motives of the parties cannot alter that objective conclusion one way or the other.  If the Court disagrees, however, and permits discovery into strategies and profit motives, then both parties must be equally permitted access to discovery of such information.

**B.      Objection to Discovery Ruling on Complaints Concerning Excessive Billing**

Defendants again concede that if discovery is specifically limited to the factors set forth in NYFSL § 604, they are not entitled to obtain "complaints or disputes from patients, hospitals, or other facilities . . . regarding the amount [TeamHealth Plaintiffs] charged for their services." (Dkt. No. 150 at 4.)  Complaints about billed charges are not one of the "relevant factors" listed in NYFSL § 604 "for determining a reasonable fee" for emergency medicine services.  Indeed, an individual provider's billed charges are not themselves a factor in determining a reasonable fee under NYFSL § 604.

---

that the unjust enrichment is not paying us a fair market price as defined by the market."); *id.* at 43:6-7 ("It doesn't change the nature of the dispute, however, about the reasonable value of the service, number one."); *id.* at 43:8-15 ("[On] the complaints, it's the same issue.  It's not going to determine what is reasonable value in the marketplace about whether a patient complained about some element of a bill.  It doesn't move the needle on what is reasonable value or unjust enrichment in this context.  It just doesn't.  The focus needs to be back on what is the market rate and whether it's our charges.").

The reason that Defendants are seeking the requested complaint information, however, is that TeamHealth Plaintiffs continue to openly insist—contrary to NYFSL § 604—that their billed charges themselves constitute evidence of reasonable value.  (*See, e.g.*, Tr. 6/27/22, Dkt. No. 159 at 43:16-17 ("[T]hat may be the metric of what is reasonable value.  Our charges may be reasonable value.").)  In her motion to dismiss ruling, Judge Nathan disagreed with TeamHealth Plaintiffs on this precise point, stating that Defendants do not have a duty to "pay whatever amount Plaintiffs decide to bill United."  *Emergency Physician Servs.*, 2021 WL 4437166, at *13.  But as long as TeamHealth Plaintiffs continue to reserve the right to argue at trial that their billed charges reflect reasonable value—an assertion that is itself outside NYFSL § 604— Defendants must have the right to dispute the reasonableness of those billed charges, and to develop evidence showing that they are in fact excessive.[8]

Patients receiving emergency medicine services (who are financially responsible for paying deductibles and copays) and hospitals contracting with TeamHealth Plaintiffs to provide emergency medicine services are fellow market participants with respect to TeamHealth Plaintiffs' emergency medicine services.  Objections by these market participants that the amounts TeamHealth Plaintiffs charged were excessive would clearly have bearing on whether the amount that TeamHealth Plaintiffs billed was, as TeamHealth Plaintiffs claim, reasonable. The strength of the reasoning and facts cite in those complaints may affect the weight they

---

[8]  TeamHealth Plaintiffs have acknowledged that this is the Defendants' rebuttal, about which Defendants are seeking to develop supporting evidence.  (*See, e.g.*, Tr. 6/27/22, Dkt. No. 160 at 21:20-23 ("But when United comes into this courtroom, United says the providers' charges are unreasonable, they're too high, the providers are not entitled to their bill[ed] charge.").)

should be accorded, but it does not affect their relevance so long as TeamHealth Plaintiffs continue to assert that their billed charges reflect reasonable value.

In addition, it cannot simultaneously be the case that Defendants' alleged general nationwide profit motives are relevant to determining the reasonableness of the amounts they paid on the Disputed Claims, while a complaint specifically contending that the amount TeamHealth Plaintiffs charged was excessive is irrelevant to determining the charge's reasonableness. Accordingly, either TeamHealth Plaintiffs should be precluded from arguing at trial that their billed charges reflect reasonable value, or Defendants should be permitted the requested discovery so that they can challenge the reasonableness of those charges.

### C. Objection to Discovery Ruling on Documents Showing Defendants' Nationwide Strategies and Profit Motives Pertaining to Emergency Medicine Services.

Magistrate Judge Netburn ordered Defendants to produce "nationwide evaluations about emergency room rates and spending." (Tr. 6/27/22, Dkt. No. 160 at 34:11-14.) She explained that the documents encompassed by this order would be "nationwide documents … that talk about the higher level strategies for how United decides to roll out its plans, generally speaking, and the ways in which it looks to make money. There's no shame here. It's a profit making enterprise, so the fact that it's looking to improve its profitability shouldn't shock anybody, but I think that plaintiffs are entitled to know how they're making those determinations." (*Id.* at 35:9, 15-22.)

This order requiring Defendants to produce extensive and burdensome *mens rea* type information is contrary to law for two reasons. First, it ignores that New York law—by TeamHealth Plaintiffs' own express and repeated admission—focuses exclusively on objective information such as market price in determining the reasonable value of emergency medicine services. Second, it ignores that New York law focuses exclusively—again, by TeamHealth

Plaintiffs' own express and repeated admission—on rates paid in specific geographic regions within New York in determining the reasonable value of emergency medicine services. Defendants paid allowed amounts for emergency medicine services at rates specific to New York and to specific geographies within New York, and documents that generally describe Defendants' nationwide strategies or profit motives have no bearing on the reasonable value of emergency medicine services rendered in New York.

Defendants have already produced all of the objective information that is within their possession, custody, or control that relates to the factors specified in NYFSL § 604. Defendants have produced the various reimbursement methodologies used to calculate allowed amounts for the various Disputed Claims, and they have produced data showing all of the benefit amounts that Defendants paid between 2017 and 2021 "to reimburse similarly qualified physicians for the same services in the same region." NYFSL § 604(a)(1); *see* Declaration of Ethan M. Scapellati in Support of Defendants' Objections to Magistrate Judge Netburn's Discovery Rulings and Request to File Immediate Motion for Summary Judgment Prior to Close of Discovery ¶¶ 5-6. The parties have also exchanged objective data showing the amount charged and the amount allowed on each Disputed Claim, and each disputed benefit claim's description of the specific emergency medicine service provided. *Id.* ¶ 6. All other information that NYFSL § 604 identifies as a relevant factor is in the possession of TeamHealth Plaintiffs.

In addition, although not specifically mentioned in NYFSL § 604, Defendants have also produced surveys or analyses of market rates for emergency medicine services in New York. Defendants have produced and have committed to produce such documents even if they appear in nationwide documents that also address other subjects. *Id.* ¶ 7.

15

The Court should hold TeamHealth Plaintiffs to their repeated assertions at the June 27, 2022 hearing that under their theory of the case, the reasonableness of the payment on each Disputed Claim must be determined solely on the basis of objective market information.  *See, e.g.*, Tr. 6/27/22, Dkt. No. 159 at 30:25-31:2 ("[T]he law only focuses on price.  The law is going to focus on what is the price of the services that we are providing."); *id.* at 32:4-5 ("The reasonable value is always based on that price, the market price."); *id.* at 37:23-38:2 ("[A]nd the benefit they retain is the benefit of paying under market. . . . So it's the benefit to them for not meeting the market.  That's the unjust enrichment standard.").[9]  Defendants agree that only objective information is relevant to adjudicating the proper reimbursement of the Disputed Claims.  A health plan payment on a benefit claim for emergency medicine services is either objectively within the range of reasonable market rates or it is not, and the strategies and profit motives of the parties cannot alter that objective conclusion one way or the other.

Significantly, TeamHealth Plaintiffs are using this single complaint to challenge more than 7,500 separate benefit claims for emergency medicine services.  The benefit claims involve

---

[9] *See also* Tr. 6/27/22, Dkt. No. 159 at 30:14-15 ("[W]hat this case should be about is price, value based on price."); *id.* at 37:17-19 ("And our position is that the unjust enrichment is not paying us a fair market price as defined by the market."); *id.* at 43:6-7 ("It doesn't change the nature of the dispute, however, about the reasonable value of the service, number one."); *id.* at 43:8-15 ("[On] the complaints, it's the same issue.  It's not going to determine what is reasonable value in the marketplace about whether a patient complained about some element of a bill.  It doesn't move the needle on what is reasonable value or unjust enrichment in this context.  It just doesn't.  The focus needs to be back on what is the market rate and whether it's our charges.").

different patients, different health plans with different benefit terms for emergency medicine services, different payment methodologies, and different adjudicating Defendants.[10]  If TeamHealth Plaintiffs were correct that the parties' subjective strategies and profit motives were relevant to determining whether a benefit claim was underpaid, then any litigant who asserted an underpayment on even a single health claim would always be entitled to sweeping *mens rea* discovery of the kind demanded here.  But that is not the law—the law instead focuses on objective criteria when determining the health plan's benefit payment obligation.  *See* NYFSL § 604; *Wellcare,* 937 N.Y.S.2d at 544 (focusing on objective cost information).  Permitting such discovery would fundamentally transform the nature of this case beyond the narrow legal question regarding alleged unjust enrichment that remained after Judge Nathan's order dismissing TeamHealth's Plaintiffs broader claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and for breach of implied-in-fact contract.  *Emergency Physician Servs.*, 2021 WL 4437166, at *5–7, 11–12.  The Magistrate's order massively expands the scope of document discovery and depositions, as well as the substantial associated discovery burdens, to encompass large quantities of information that ultimately will play no role in resolving the correct payment amount on any of the Disputed Claims.[11]

---

[10] TeamHealth Plaintiffs have challenged the benefit payment amounts on only about 10% of the benefit claims that they submitted to Defendants or their affiliates during the period between 2017 and 2021, and only about 33% of the benefit claims that they submitted directly to Defendants.  (*See, e.g.*, Tr. 6/27/22, Dkt. No. 160 at 30:15-24.)

[11] TeamHealth Plaintiffs have at times contended that they need the *mens rea* discovery in order to prove the third element of unjust enrichment under New York law—"that equity and good

The discovery order is also contrary to law and clearly erroneous because it does not require that the produced documents bear a connection to the specific rates that Defendants were allowing for emergency medicine services in New York State and in sub-geographies within New York State. NYFSL § 604 expressly provides that such a geography-specific focus should be applied, requiring production of rates paid "to reimburse similarly qualified physicians for the same services *in the same region*." NYFSL § 604(a)(1) (emphasis added). TeamHealth Plaintiffs repeatedly acknowledged at the June 27, 2022 hearing that such a geography-specific limitation applies when making a reasonable value determination under New York law. *See* Tr.

---

conscience require restitution." *See Emergency Physician Servs.*, 2021 WL 4437166, at *12 ("To prevail on a claim of unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."). Magistrate Judge Netburn's did not cite the "equity and good conscience" element of unjust enrichment as a basis for her discovery order, and TeamHealth Plaintiffs have not cited any New York case suggesting that the "equity and good conscience" prong permits open-ended discovery into information that will have no clear bearing on resolution of the claims at trial. TeamHealth Plaintiffs have never explained how it could be the case, if the Court ultimately rules that Defendants had a common law duty to ignore plan terms and to instead pay "reasonable value" on the submitted claims, that TeamHealth Plaintiffs would need to prove anything more to obtain relief than that Defendants violated that duty by failing to pay reasonable value. In any event, if the Court does elect to permit TeamHealth Plaintiffs such *mens rea* discovery, Defendants must be permitted equal access, including into TeamHealth Plaintiffs' corresponding profit motives.

18

6/27/22, Dkt. No. 159 at 32:16-33:2 ("[P]rice will be determined by the geography in which it was provided.  We're not going to be benchmarking against services in South Dakota. … So we can say what is the reasonable value for the service here in Brooklyn.  What is the reasonable value upstate in Albany.  We can look at it market by market, and we can have specific information.  It's not going to be compared against South Dakota.  So you have the value based on the price in each of the geographies that are relevant to this case."); *id.* at 33:7-18 ("The value of that service may be different based on the market forces in South Dakota. . . . But what you're going to benchmark against is what is in that community, and it's really going to be based on price."); *id.* at 36:25-37:3 ("And the standard is the price in each geographic location.  And we're more than happy to produce whatever information we have on the price in every different jurisdiction.").  Thus, even if subjective strategy and profit motive information could be relevant to determining the reasonable value of the Disputed Claims—and it is not—Magistrate Judge Netburn's order erred in failing to limit the required production to documents specifically discussing strategies and profit motives in connection with the specific amounts allowed by Defendants for emergency medicine services claims in New York State.

## V.      DEFENDANTS SHOULD BE PERMITTED TO IMMEDIATELY MOVE FOR SUMMARY JUDGMENT AS TO ALL DISPUTED CLAIMS

In the interests of judicial economy and efficiency, Defendants respectfully request permission to immediately brief a summary judgment motion demonstrating that New York law bars all of TeamHealth Plaintiffs' unjust enrichment claims.  All of the Disputed Claims are encompassed by uniform rulings of New York State courts holding—in litigation brought by the very same plaintiffs—that such claims are barred as a matter of law.  It is appropriate that this Court should determine this case-dispositive issue now, rather than after months of additional expensive and time-consuming discovery that is not needed to resolve the issue.

In two sets of prior litigation ultimately determined by two different Appellate Divisions of the New York State courts, the courts held that New York law does not permit emergency medicine service providers to use common law unjust enrichment claims to challenge health plan benefit payments. *See supra* Section II (citing *Buffalo Emergency Servs. I, II,* and *III*). As in this case, TeamHealth Plaintiffs (1) cited to and relied on NYFSL §§ 603-605 in bringing their unjust enrichment claims, but (2) contended that they were not trying to directly enforce NYFSL §§ 603-605, but rather were borrowing its "reasonable value" requirement as a "benchmark" for purposes of their unjust enrichment claims. *Buffalo Emergency Servs. I*, 2017 WL 5668420, at *3. The commercial division trial court held that New York's statutory scheme barred such common law claims:

> The only dispute is whether plaintiffs' causes of action are wholly dependent on the Act and thus barred, or whether, as plaintiffs contend, the causes of action are independent common law claims that merely use the Act as a benchmark for an already existing duty. … Plaintiffs' claim that their causes of action are in fact about the failure to provide 'reasonable value,' and that the Act is merely a borrowed benchmark, does not alter the analysis. As used in the complaint, the term "reasonable value" is nothing more than a stand-in for the requirements of the Act. Put differently, there is no discernible difference between a claim that defendants breached by violating the Act (a non-viable cause of action) and plaintiffs' claim that defendants breached by failing to provide "reasonable value." Accordingly, the complaint must be dismissed in its entirety.

*Id.* In so holding, the court rejected plaintiffs' arguments that they should at minimum be able to use unjust enrichment causes of action to dispute health claims that fell below the Act's monetary thresholds for independent dispute resolution. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint at 20, Case No. 651937,

2017 WL 6016482 (filed July 14, 2017).[12]  The court accordingly dismissed the complaint in its entirety.

The Appellate Division affirmed, holding that "[t]he New York Emergency Services and Surprise Bills Act does not provide for a private right of action to enforce its provisions, and the court properly dismissed the complaint as an improper effort to 'circumvent the legislative preclusion of private lawsuits' for violation of the Act." *Buffalo Emergency Servs. II*, 167 A.D.3d at 461–62 (quoting *Han v. Hertz Corp.*, 12 A.D.3d 195, 196 (1st Dep't 2004)).  A second Appellate Division court subsequently rejected plaintiffs' attempt to escape these dismissal rulings by filing new pleadings that less expressly relied on NYFSL §§ 603-605.  *Buffalo Emergency Servs. III*, 195 A.D.3d 1403 (4th Dep't 2021).

---

[12] This Court has repeatedly recognized the significant dependence of TeamHealth Plaintiffs' unjust enrichment claims on NYFSL §§ 603-605.  Judge Nathan expressly relied on NYFSL § 605(a) in allowing TeamHealth Plaintiffs' unjust enrichment claims to survive Defendants' motion to dismiss  (Dkt. No. 65 at 3 ("State law similarly requires that health insurance companies pay a reasonable amount for the services of out-of-network emergency medical providers.  NYFSL § 605(a); Compl. ¶ 80."); *id*. at 17 ("[A]s alleged, United's obligation to compensate Plaintiffs comes from, among other authorities, New York state law.  *E.g.*, NYFSL § 605(a) (requiring that 'the health care plan shall pay an amount that it determines is reasonable for the emergency services rendered by the non-participating physician')."). And Magistrate Judge Netburn has repeatedly relied on NYFSL §§ 603-604 in issuing discovery rulings.  (Dkt. No. 143; Dkt. No. 158 at 2.)

The Disputed Claims in this case fall squarely within these cases holding that New York law bars unjust enrichment claims of the kind brought by TeamHealth Plaintiffs challenging the reasonableness of health plan benefit payments for emergency medicine services.  There are multiple other means available to challenge the benefit amounts paid on the Disputed Claims, including health plan benefit appeal processes.  But New York law bars TeamHealth Plaintiffs from pursuing the Disputed Claims through common law claims for unjust enrichment, and Defendants respectfully request permission to move the Court for summary judgment at this time.

## VI.   **CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court (1) set aside the three discovery rulings to which Defendants have objected, (2) stay the challenged discovery orders pending a further ruling from this Court, (3) permit Defendants to file a summary judgment motion challenging the viability of all of the Disputed Claims under New York law, and (4) grant such other relief as the Court deems just and proper.

Dated:  July 11, 2022                                     Respectfully submitted,

                                                         */s/ Ethan Scapellati*
                                                         K. Lee Blalack, II (*pro hac vice*)
                                                         Greg Jacob (*pro hac vice*)
                                                         O'MELVENY & MYERS LLP
                                                         1625 Eye Street, N.W.
                                                         Washington, D.C.  20006
                                                         (202) 383-5300
                                                         lblalack@omm.com
                                                         gjacob@omm.com

                                                         Ethan Scapellati
                                                         O'MELVENY & MYERS LLP
                                                         7 Times Square
                                                         New York, New York  10036
                                                         (212) 326-2000
                                                         agenovese@omm.com

                                                         *Counsel for Defendants*

## <u>WORD COUNT CERTIFICATION</u>

*Word Count*:   Under Rule II.D of the Court's Individual Practices, all memoranda are limited to 7,000 words.  This memoranda is compliant because it contains 6,587 words.


Dated:   July 11, 2022                                       Respectfully submitted,

*/s/ Ethan Scapellati*
K. Lee Blalack, II (*pro hac vice*)
Greg Jacob (*pro hac vice*)
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C.  20006
(202) 383-5300
lblalack@omm.com
gjacob@omm.com

Ethan Scapellati
O'MELVENY & MYERS LLP
7 Times Square
New York, New York  10036
(212) 326-2000
agenovese@omm.com

*Counsel for Defendants*
