**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

EMERGENCY PHYSICIAN SERVICES
OF NEW YORK, *et al.*,

      *Plaintiffs*,

v.

UNITEDHEALTH GROUP, INC., *et al.*,

      *Defendants*.

Case No: 1:20-cv-09183-JGK-SN

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANTS' OBJECTIONS TO DISCOVERY RULINGS**
**AND REQUEST TO MOVE FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

*Page*

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND.................................................................................................... 3

ARGUMENT ............................................................................................................................ 5

I.      STANDARD OF REVIEW ............................................................................................ 5

II.     UNITED MUST PRODUCE STRATEGY DOCUMENTS ............................................. 7

        A.      United's Documents Will Show Its Concerted Strategy To Avoid Paying Reasonable Value ............................................................................................... 7

        B.      United's Strategy Documents Are Also Relevant To Other Unjust Enrichment Elements ........................................................................................ 11

III.    THE COST AND COMPLAINT DOCUMENTS UNITED SEEKS ARE IRRELEVANT ............................................................................................................... 13

        A.      Plaintiffs' Costs Are Not Relevant To Reasonable Value .................................... 14

        B.      Complaints By Persons Not Participating In The Market Are Not Relevant to Reasonable Value ......................................................................................... 16

IV.    UNITED'S REQUEST FOR LEAVE TO FILE AN "IMMEDIATE MOTION FOR SUMMARY JUDGMENT" SHOULD BE DENIED ....................................................... 18

        A.      Judicial Economy And Efficiency Would Not Be Served By Permitting United To Move For Summary Judgment Prior To The Close Of Discovery ...... 18

        B.      Plaintiffs' Common Law Claim For Unjust Enrichment Is Neither Barred By Nor Dependent On The New York Financial Services Law................................. 19

               1.      The New York County Action.................................................................. 19

               2.      The Erie County Action .......................................................................... 21

        C.      The New York County and Erie County Actions Have No Claim- or Issue-Preclusive Effect on Plaintiffs' Unjust Enrichment Claim ................................... 22

CONCLUSION......................................................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                 ***Page(s)***

*Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*,
   962 N.E.2d 765 (N.Y. 2011) ................................................................ 21

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
   448 F.3d 573 (2d Cir. 2006) ................................................................ 6

*Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.*,
   145 N.Y.S.3d 446 (N.Y. App. Div. 2021) ..................................... 22, 23

*Buffalo Emergency Assocs., LLP v. Aetna Health, Inc. (N.Y.)*,
   No. 651937/2017, 2017 WL 5668420 (N.Y. Sup. Ct. Nov. 27, 2017) ........................... 20, 21

*Buffalo Emergency Assocs., LLP v. Aetna Health, Inc. (N.Y.)*,
   87 N.Y.S.3d 877 (N.Y. App. Div. 2018) ................................................ 20

*Children's Hosp. Cent. California v. Blue Cross of California*,
   226 Cal. App. 4th 1260 (Cal. Ct. App. 2014) ....................................... 10

*City of New York v. Welsbach Elec. Corp.*,
   878 N.E.2d 966 (N.Y. 2007) ................................................................ 22

*Collins Tuttle & Co. v. Leucadia, Inc.*,
   544 N.Y.S.2d 604 (N.Y. App. Div. 1989) .............................................. 6

*Columbia Mem'l Hosp. v. Hinds*,
   -- N.E. 3d --, 2022 WL 1572408 (N.Y. 2022) ..................................... 11

*Design Strategies, Inc. v. Davis*,
   No. 02-cv-5329, 2004 WL 1394327 (S.D.N.Y. June 22, 2004) ............... 9

*Giordano v. Thomson*,
   564 F.3d 163 (2d Cir. 2009) ................................................................ 6

*Kronenberg v. Allstate Ins. Co.*,
   No. 18-cv-6899, 2020 WL 1234603 (E.D.N.Y. Mar. 13, 2020) ............ 13

*L.I. City Ventures LLC v. Sismanoglou*,
   71 N.Y.S.3d 462 (N.Y. App. Div. 2018) .............................................. 13

*Mayer v. Bishop*,
   551 N.Y.S.2d 673 (N.Y. App. Div. 1990) ............................................ 11

*McGrath v. Hilding*,
   363 N.E.2d 328 (N.Y. 1977) ................................................................ 11

*N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*,
    937 N.Y.S.2d 540 (N.Y. Sup. Ct. 2011) ....................................................... passim

*Nassau Anesthesia Assocs. PC v. Chin*,
    924 N.Y.S.2d 252 (N.Y. Dist. Ct. 2011) ................................................................ 10

*Sec. & Exch. Comm'n v. Laura*,
    No. 18-cv-5075, 2020 WL 5152873 (E.D.N.Y. Aug. 31, 2020) ........................................... 12

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995) .............................................................................. 6

*Simmons v. Trans Express Inc.*,
    170 N.E.3d 733 (N.Y. 2021) ............................................................................ 22

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts. Inc.*,
    832 A.2d 501 (Pa. Super. Ct.) .................................................................... 10, 15

*United Bldg. Maint. Assocs., Inc. v. 510 Fifth Ave. LLC*,
    795 N.Y.S.2d 535 (N.Y. App. Div. 2005) ............................................................... 17

*United States v. Novartis Pharm. Corp.*,
    No. 11-cv-8196, 2014 WL 6655703 (S.D.N.Y. Nov. 24, 2014) ........................................... 11

*Vioni v. Providence Inv. Mgmt., LLC*,
    750 F. App'x 29 (2d Cir. 2018) ........................................................................ 9

*Williams v. Rosenblatt Sec., Inc.*,
    236 F. Supp. 3d 802 (S.D.N.Y. 2017) ............................................................ 5, 6, 10

**STATUTES**

N.Y. Fin. Serv. Law § 604 ........................................................................... 9, 10

**RULES**

Fed. R. Civ. P. 26 ................................................................................. 6, 12

Fed. R. Civ. P. 72 ..................................................................................... 5

Fed. R. Evid. 401 ..................................................................................... 6

Emergency Physician Services of New York, Buffalo Emergency Associates, Exigence Medical of Binghamton, and Emergency Care Services of New York (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to the Objections of Defendants UnitedHealth Group, Inc. ("UHG"), United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC (collectively, all defendants are referenced as "United") to Magistrate Judge Netburn's Discovery Rulings and United's Request to File Immediate Motion for Summary Judgment Prior to Close of Discovery ("Obj.").  Dkt. No. 164.

## PRELIMINARY STATEMENT

Plaintiffs, who are emergency room clinicians, bring an unjust enrichment claim against United for underpaying thousands of claims owed to Plaintiffs for necessary medical services they provided to patients covered by insurance issued or administered by United.  United's motion to dismiss this claim was denied.  During discovery United has refused to produce basic documents reflecting its systematic strategy to under-reimburse Plaintiffs.  Plaintiffs first requested these documents over seven months ago, and Judge Netburn has ordered United to produce them *four* times.  United's refusal to do so has caused unreasonable delays in discovery and in the progress of this case.  United now seeks further delay by challenging not only the Magistrate Judge's latest discovery orders, but also by seeking to reinterpret the Court's clear order denying United's motion to dismiss.  United's arguments are incorrect and divorced from the basic purpose of discovery and equity.

United first challenges the third and fourth discovery orders issued by Judge Netburn. While United acknowledges the legal standard for overturning a magistrate judge's discovery order, it makes no meaningful attempt to demonstrate that the standard has been satisfied.  Nor could it.  Judge Netburn ruled four times that United must produce the documents at issue, which

are relevant to every element of an unjust enrichment claim and will show that United knows what it should be paying—and deliberately chooses not to pay—for emergency medical services. United should not be permitted to continue forestalling production of these documents.  United also challenges the denial of its motion to compel production of documents related to Plaintiffs' cost structure and to complaints by hospitals or patients regarding amounts charged by Plaintiffs. Such documents are not properly subject to discovery, as they have nothing to do with United's unjust enrichment at Plaintiffs' expense.

Finally, United uses its objections to Judge Netburn's discovery orders as a vehicle for also seeking to file an early motion for summary judgment.  United relies on a legal argument which it failed to raise on its motion to dismiss and again on its motion for judgment on the pleadings, and United signals its intention to move for summary judgment again on separate grounds if its current attempt does not succeed.  This should not be permitted.  United should not be allowed to further postpone its discovery obligations by effectively taking a third bite at a dismissal motion.  Plaintiffs' common law claim for unjust enrichment is recognized under New York law—*see N.Y.C. Health & Hosps. Corp. v. WellCare of N.Y., Inc.*, 937 N.Y.S.2d 540, 545 (N.Y. Sup. Ct. 2011)—and as Judge Nathan observed, if not for this common law claim, Plaintiffs would have no remedy for United's unilateral decision to underpay them for providing emergency medical services, a result that would be contrary to law and equity.  *See* Dkt. No. 65 ("Opinion") at 27 ("United's position that Plaintiffs have no recourse if United fails to

2

reasonably compensate them . . . would conceivably incentivize insurers like United to pay as little as possible while Plaintiffs remain obligated to treat United's insureds").[1]

     As further detailed below, Plaintiffs respectfully request that this Court affirm Judge Netburn's discovery orders and deny United's request for leave to file a mid-discovery motion for summary judgment.  The Court should also reject United's request for stay.[2]

## FACTUAL BACKGROUND

     Plaintiffs are groups of emergency care clinicians who staff the emergency rooms of various New York hospitals.  Dkt. No. 97 ("Am. Compl.") ¶ 6.  United is the largest commercial health insurer in the United States, insuring 80 million people and comprising over 1,200 companies, including the overall parent company UHG and the other five defendants.  *Id.* ¶¶ 4, 16.

     Plaintiffs provided emergency medical care to more than 7,500 patients insured by United.  *Id.* ¶ 19.  In rendering that emergency care, Plaintiffs did not, and could not, confirm whether the patients were insured or otherwise able to pay because federal and state laws require that emergency medical providers treat all patients regardless of insurance status.  *Id.* ¶ 21.  After Plaintiffs rendered care, their hospitals obtained the patients' insurance information.  *Id.* ¶ 25.  For those patients insured by United, Plaintiffs submitted claims for payment to United through a

---

[1] United's objections mischaracterize the record in many respects.  Because the record is clear on its face, in this opposition Plaintiffs correct only United's mischaracterizations that are relevant to the instant motion and reserve their rights in all other respects.

[2] On July 21, 2022, Judge Netburn rejected United's request to stay production of its strategy documents.  Dkt. No. 169.

common portal.  *Id.* ¶ 26.  United paid Plaintiffs substantially less than the reasonable value of the medical care provided.  *Id.* ¶¶ 27, 31.  Plaintiffs' cause of action for this underpayment must be directed at United, because New York law shields patients from liability for underpayments such as these and obligates United to hold the members harmless from these balances.  *Id.* ¶¶ 33-34.  Knowing that Plaintiffs must render emergency care to any patient who seeks it and knowing that Plaintiffs cannot bill insured patients for the balance of unpaid claims, United systematically underpaid Plaintiffs' claims.  In so doing, United boosted its profits through the unwarranted "savings" resulting from the underpayments and through the collection of additional "savings" fees beyond the per-member-per-month fee that United already charges its self-insured clients.  *Id.* ¶¶ 50-51.  Plaintiffs seek to hold United liable for unjustly enriching itself at Plaintiffs' expense.  *Id.* ¶¶ 62-75.

Plaintiffs filed this action on November 2, 2020.  Upon motions to dismiss, the Court permitted Plaintiffs to proceed against United on causes of action for unjust enrichment and declaratory judgment.  Opinion at 27.  The case was then referred to Judge Netburn for discovery.  On November 16, 2021, Judge Netburn issued her first discovery order, authorizing the parties to serve "non-claim specific discovery," Dkt. No. 83, including discovery aimed at UHG's overall strategies for undercompensating emergency room physicians in New York and nationwide.  Dkt. No. 123 at 3.  In December 2021, Plaintiffs served detailed discovery requests for, among other things, the payment strategy documents that are the subject of United's objections.  *Id.* at 2.  After UHG served objections and produced nothing, Judge Netburn issued a second order, requiring UHG (then the only defendant) to produce the documents.  Dkt. No. 95.  UHG did not comply.  Plaintiffs then filed their Amended Complaint against UHG and five additional United entities.  *See* Am. Compl. ¶¶ 7-12.  On behalf of the newly added United

defendants, on March 11, 2022, United again objected to Plaintiffs' requests for payment strategy documents, and on May 31, 2022, Judge Netburn again ordered United to produce documents responsive to the requests, specifically directing United to "produce nationwide strategy documents relevant to New York, even if they are not New York-specific." Dkt. No. 149. United sought reconsideration or clarification of that order, Dkt. No. 153, and Judge Netburn held a hearing on June 27, 2022 at which she reiterated once again that United was required to produce documents regarding "higher level strategies" with respect to the United States as a whole and any "region that is relevant to New York." *See* Declaration of Wendy H. Schwartz ("Schwartz Decl."), Ex. 3 (Transcript of June 27, 2022 Hearing, Part II ("6/27/22 Tr. (Second Part)") 35:9-21); *see also* Dkt. No. 158.[3] United responded by filing these objections. United has thus delayed producing these documents—key to Plaintiff's claims—for almost seven months.

## ARGUMENT

### I.   STANDARD OF REVIEW

A magistrate judge's discovery order must be upheld "unless the ruling . . . was 'clearly erroneous or contrary to law.'" *Williams v. Rosenblatt Sec., Inc.*, 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (Koeltl, J.) (quoting Fed. R. Civ. P. 72(a)). "Under this highly deferential standard, magistrate judges are afforded broad discretion in resolving non dispositive disputes and reversal is appropriate only if their discretion is abused." *Id.* (internal quotation and citation omitted). Because United's objection regarding its strategy documents is directed at Judge

---

[3] United claims that this bench ruling "clarified" the earlier written order, Obj. 5 n.5, but the ruling denied the motion for clarification and was in fact fully consistent with the earlier order.

Netburn's denial of United's request for reconsideration, the burden here is even higher.  It is insufficient for United to argue that Judge Netburn's original order was in error; rather, United must show that Judge Netburn's conclusion that United had "failed to point to controlling decisions or data that the court overlooked" was clearly erroneous or contrary to law.  *Id.* (citing *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

To prove their unjust enrichment claim, Plaintiffs will show "(1) that the defendant[s] benefitted; (2) at the plaintiff[s'] expense; and (3) that equity and good conscience require restitution."  Opinion at 24 (quoting *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)).  Restitution is the remedy for an unjust enrichment claim, and the measure for that restitution is the reasonable value of services rendered.  *See* Opinion at 26; *see also Giordano v. Thomson*, 564 F.3d 163, 170 (2d Cir. 2009) (citing *Collins Tuttle & Co. v. Leucadia, Inc.*, 544 N.Y.S.2d 604, 605 (N.Y. App. Div. 1989)).  Plaintiffs are entitled to "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  And relevance is "any tendency to make a [consequential] fact more or less probable."  Fed. R. Evid. 401.

Despite the liberal scope of discovery and the exacting standard of review, United points to no controlling law that was overlooked by Judge Netburn in ordering this basic discovery.  Instead, United takes the position that discovery should have been limited in conformity with its own legal theory that the standard for reasonable value is purely objective, and that Plaintiffs should not be permitted discovery on *Plaintiffs'* theory that an equitable claim such as unjust enrichment encompasses much more.  As elaborated below, United cannot limit Plaintiffs' discovery to only those materials that are consistent with United's own theory of the case.

6

Moreover, United's legal argument regarding the standard for reasonable value is contrary to the weight of authority and cannot satisfy the standard for overturning a magistrate judge's well-considered decision.  United's objections to the denial of its motion to compel are similarly flawed.  Accordingly, United's objections should be denied in full.

## II.    UNITED MUST PRODUCE STRATEGY DOCUMENTS

United's strategy documents will show that United intentionally and systematically sought to pay below market value for the services provided.  This evidence is related to every element of Plaintiffs' unjust enrichment claim.  United knows what these documents are and surely appreciates their relevance.  Indeed, United has produced these documents once already, in an earlier case in Nevada that went to trial on an unjust enrichment claim and resulted in a compensatory damages award and a $60 million punitive damages verdict against United. Having designated those documents as confidential in Nevada, United now seeks to avoid producing them in any similar cases (several are being litigated around the country by the same counsel representing the parties in this case).  Judge Netburn correctly rejected United's attempt to withhold these strategy documents, as did yet another Pennsylvania court in similar litigation. *See* Schwartz Decl., Ex. 5 (*Emergency Care Services of Pennsylvania, P.C. v. UnitedHealth Group, Inc.*, No. 000598, Order (July 8, 2022)).  Judge Netburn also correctly declined to reconsider her prior order directing production of United's strategy documents. That decision should be upheld.

### A.    United's Documents Will Show Its Concerted Strategy To Avoid Paying Reasonable Value

The "reasonable value" of Plaintiffs' services is a basic element of Plaintiffs' unjust enrichment claim.  Judge Netburn correctly decided that "[P]laintiffs are entitled to know how [United is] making [] determinations" regarding the amounts paid for the services provided.

06/27/22 Tr. (Second Part) 35:21-22.  This is consistent with Judge Nathan's finding that it would be inconsistent with New York common law to limit Plaintiffs to whatever amounts United decided to pay.

The documents sought will confirm that the rates United paid pursuant to its nationwide strategy are in fact below reasonable value.  United intentionally underpays providers like Plaintiffs and then charges its own customers for "savings" based on that underpayment—using the billed amount as the baseline "value" of the service.  For example, if a provider bills United $1,000 for a service, and United reimburses that service at $200, United claims that it has "saved" its client $800.  United then charges its client a fee based on that purported "savings."  Thus, United is financially incentivized to—and in fact does—underpay for medical services.  Simply put, the less United pays, the more United makes.  Judge Netburn considered such incentives in denying United's reconsideration motion, *see id.* at 20-21; 30:2-12, and United fails to explain why documents revealing a strategy of underpayment would not be relevant to this case.  These documents will not only elucidate United's "general nationwide profit motives," Obj. 14, but will also demonstrate United's concerted, targeted strategy to under-reimburse Plaintiffs (and affiliated entities) for emergency medical services.  Such documents are exactly the kind of evidence that can and should be considered by a jury tasked with deciding whether United paid reasonable value.  This is precisely what happened in Nevada where a jury returned a $60 million punitive damages verdict against United in an unjust enrichment case brought by affiliates of Plaintiffs.

United's position that its strategy documents reflect "subjective *mens rea* type considerations" that are irrelevant to a supposed "purely objective inquiry," is contrary to law.[4] Plaintiffs do not seek—and Judge Netburn did not order United to produce—strategy documents to prove "*mens rea*."  The strategy documents will show that United did not pay reasonable value for Plaintiffs' services because United's reimbursement rates were calculated pursuant to policies and strategies deliberately aimed at underpaying for those services.  The measure of reasonable value for purposes of unjust enrichment is not strictly "objective" but takes a number of factors into account, including the amounts that market participants are willing to pay.  *See, e.g.*, *Vioni v. Providence Inv. Mgmt., LLC*, 750 F. App'x 29, 33 (2d Cir. 2018) (internal citation omitted); *see also Design Strategies, Inc. v. Davis*, No. 02-cv-5329, 2004 WL 1394327, at *6 (S.D.N.Y. June 22, 2004) (explaining that unjust enrichment claims "necessarily implicate considerations of the Defendants' *subjective intent and motives*") (emphasis added)).

United also suggests that a provision of the New York Emergency Medical Services & Surprise Bills Act ("NYEMSSBA")—New York Financial Services Law § 604—provides the only measure for reasonable value in a common law unjust enrichment case.  Obj. 10-15.  This is incorrect—the standard is governed by common law, and Plaintiffs' claims are not tethered to NYEMSSBA.  As explained in further detail below, Section 604 is part of a state statutory scheme permitting independent dispute resolution ("IDR") of certain disputes regarding payment for out-of-network emergency services.  But Plaintiffs' claims are not eligible for that process, and Plaintiffs are expressly not suing under that statute.  At United's invitation, Judge Netburn

---

[4] United's citation to *WellCare* is inapposite.  Obj. 17.  That case does not discuss "objective" versus "subjective" measures of reasonable value.

initially borrowed the criteria from Section 604 to guide discovery into the market value of the

emergency services provided.  *See, e.g.*, Dkt. No. 135 (Order requiring United to produce

"market studies and analyses" and citing N.Y. Fin. Serv. Law § 604 (a)).  As Judge Netburn

explained: "I understand that you are not bringing a claim under Section 604 of the Financial

Services Law.  But that at least provides one framework for what is a reasonable rate which at

least will guide me in thinking about this."  *See* Schwartz Decl., Ex. 1 (Transcript of April 19,

2022 Hearing ("04/19/2022 Tr.") 11:13-16).  This was appropriate—Section 604 may provide

guidance on the prevailing rate for emergency medical services, but it does not provide the

exclusive criteria on which parties can rely.  *See Children's Hosp. Cent. California v. Blue Cross

of California*, 226 Cal. App. 4th 1260, 1276 (Cal. Ct. App. 2014) (trial court erred in determining

that California equivalent to Section 604 provided "exclusive standard for determining the

reasonable value" in quantum meruit action).

Nor do Plaintiffs' references to "price" at the June 27, 2022 hearing alter the analysis.

*See* Obj. 17 n.11.  Cases cited by Plaintiffs show that the reasonable value standard is the price

for services in the relevant community.  *See* Schwartz Decl., Ex. 2 (Transcript of June 27, 2022

Hearing, Part I ("6/27/22 Tr. (First Part)") 36:22-37:4); *see also Nassau Anesthesia Assocs. PC v.

Chin*, 924 N.Y.S.2d 252, 253 (N.Y. Dist. Ct. 2011); *Children's Hosp.*, 226 Cal. App. 4th at 1277;

*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alts. Inc.*, 832 A.2d 501, 508 (Pa. Super. Ct.).

Evidence that United manipulated the market price for medical services by intentionally paying

providers *below* that known price makes it more likely that United did not pay Plaintiffs

reasonable value for their services.

United cites no "controlling decisions or data" overlooked by Judge Netburn, *see

Williams*, 236 F. Supp. 3d at 803, nor could it, given the volume of detailed submissions

considered by Judge Netburn.  Plaintiffs intend to prove that United had a concerted strategy to profit at Plaintiffs' expense by paying less than reasonable value for Plaintiffs' services.  As Judge Netburn held in her second two orders, Plaintiffs are entitled to pursue this theory in discovery.  Dkt. No. 149 at 6; 06/27/22 Tr. (Second Part) 34:12-14.

### B.   United's Strategy Documents Are Also Relevant To Other Unjust Enrichment Elements

United also ignores the fact that its strategy documents are relevant to every element of an unjust enrichment claim.  Rather than posing a "narrow legal question," Obj. 17, unjust enrichment is a fact-specific equitable claim.  *See Columbia Mem'l Hosp. v. Hinds*, -- N.E. 3d --, 2022 WL 1572408, at *6 (N.Y. 2022) (unjust enrichment "depends upon broad considerations of equity and justice" and courts generally look to see "whether the defendant's conduct was tortious or fraudulent").  Plaintiffs are entitled to discovery not only on isolated transactions, but also on intentional systemic misconduct aimed at underpayment.  *See Mayer v. Bishop*, 551 N.Y.S.2d 673, 675 (N.Y. App. Div. 1990) (considering "the circumstances of [the] transaction and the relationship of [the] parties" in deciding unjust enrichment claim); *see also United States v. Novartis Pharm. Corp.*, No. 11-cv-8196, 2014 WL 6655703, at *8 (S.D.N.Y. Nov. 24, 2014) ("[T]he unjust enrichment cause of action is broadly concerned with the equities of the situation.").  The discovery ordered by Judge Netburn will show that United employs overall policies and practices, independent of health plan terms, that have led to vast underpayments of Plaintiffs' claims and substantial profits to United.  Plaintiffs are entitled to discovery on these issues because the unjust enrichment inquiry "must focus on the 'human setting involved,' not merely upon the transaction in isolation."  *Mayer*, 551 N.Y.S.2d at 675 (quoting *McGrath v. Hilding*, 363 N.E.2d 328, 331 (N.Y. 1977)); *see also WellCare*, 937 N.Y.S.2d at 543.

Contrary to United's insinuation, the fact that Judge Netburn did not specifically "cite" the equity and good conscience element in her bench ruling does not make it irrelevant for discovery purposes.  Obj. 17 n.11.  United's brief conveniently omits Judge Netburn's recognition that "equity and good conscience" is an issue for trial and that United cannot simply stipulate that element away in a ploy to "skirt discovery."  06/27/22 Tr. (Second Part) 12:8-9; *see also id.* at 11:21-12:3 ("I'm pretty sure the law doesn't allow a party to sort of concede facts that they don't want to have discovery on, so I think your second argument is not terribly strong because, you know, parties could all the time sort of concede issues that would otherwise look bad at trial if the case were to go forward to their advantage.").

United's disagreement with Plaintiffs' theory that a sweeping strategy to intentionally underpay providers led to unjust enrichment goes to the merits of the case and cannot limit the broad discovery contemplated by the Federal Rules.  *See, e.g.*, *Sec. & Exch. Comm'n v. Laura*, No. 18-cv-5075, 2020 WL 5152873, at *6 (E.D.N.Y. Aug. 31, 2020) ("Movants cannot now preclude the SEC's entitlement to discovery in the middle of this pre-trial stage . . . simply because they believe (or hope) 'that [their] opponent's position can never be legally sufficient.'" (internal citation and quotation omitted)).  As Judge Netburn has noted, discovery disputes should not be used "to determine the ultimate question here as to whether or not the defendants have been unjustly enriched."  04/19/2022 Tr. 29:8-9.  Moreover, United's strategy documents are relevant to United's own affirmative defense that the "monetary relief sought under theories of restitution, disgorgement, constructive trust and/or any other theory is not equitable."  Dkt. No. 111 at 17.  To the extent that United intends to put equity at issue, its own alleged inequitable conduct is relevant.  *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense").  The

strategy documents requested will show that United engaged in a deliberate and inequitable scheme to under-reimburse medical providers—including Plaintiffs—in order to boost its own margins and fees.

Finally, United's contention that discovery into its strategies would resurrect dismissed claims is unpersuasive.  Plaintiffs intend to prove that United unjustly enriched itself by intentionally and systematically under-reimbursing Plaintiffs.  Such conduct is as relevant to an unjust enrichment claim as it would be to a conspiracy claim.  *Cf. L.I. City Ventures LLC v. Sismanoglou*, 71 N.Y.S.3d 462, 464 (N.Y. App. Div. 2018) (real estate broker stated unjust enrichment claim against defendants who allegedly engaged in "scheme to deprive plaintiff of a commission."); *Kronenberg v. Allstate Ins. Co.*, No. 18-cv-6899, 2020 WL 1234603, at *1 (E.D.N.Y. Mar. 13, 2020) (insurance company's  "systematic[] undervaluing" of claims supported unjust enrichment cause of action).

In sum, United cannot meet the high standard for showing that Judge Netburn's ruling was contrary to law or clearly erroneous.  The Court should reject United's objection and its request for a stay of the Order compelling production of strategy documents.

## III.  THE COST AND COMPLAINT DOCUMENTS UNITED SEEKS ARE IRRELEVANT

United contends that if Plaintiffs are entitled to discovery of United's reimbursement strategy, then it is entitled to reciprocal discovery from Plaintiffs.  However, United has already requested—and Plaintiffs have already produced—documents that would be parallel and relevant to this issue, including documents regarding Plaintiffs' rates (called "chargemasters"), and Plaintiffs will also produce documents regarding the factors considered and the analysis

undertaken in setting those rates.[5]  United's contention that (1) documents related to Plaintiffs'

cost structure and (2) complaints by facilities or patients regarding Plaintiffs' charges also fall

within this category is incorrect.

     **A.**     **Plaintiffs' Costs Are Not Relevant To Reasonable Value**

As Judge Netburn correctly ruled, Plaintiffs' costs are not relevant to any disputed issues

because reimbursement is a price-based, as opposed to a cost-based, determination.  Judge

Netburn examined both common law and New York statutory law governing reasonable fees and

determined that in an unjust enrichment case, a plaintiff can recover "reasonable value," as

measured by the amounts usually received for comparable services in the relevant geographic

region.  Dkt. No. 158 at 2.  Under that standard, a more efficient provider with a lower cost

structure is entitled to the same rate of reimbursement as an inefficient provider with a higher

cost structure, because the issue is what price the market will bear.

United incorrectly contends that Judge Netburn's ruling is contrary to Judge Nathan's

opinion and to *WellCare*, on which Judge Nathan relied.  Judge Netburn in fact correctly

examined and analyzed *WellCare*, explaining that *WellCare* addressed the standard for stating a

cause of action for unjust enrichment but did not "speak to the question of how a reasonable rate

should be measured."  Dkt. No. 158 at 2.  Likewise, Judge Nathan's opinion on the motion to

dismiss quoted *WellCare* only in determining that Plaintiffs stated a cause of action.  Opinion at

26.

---

[5] The parties are currently negotiating terms and custodians for ESI productions; Plaintiffs'

documents regarding the evaluation of charges and any annual revisions thereto will be produced

as a part of that ESI discovery.

Moreover, with respect to the manner of price calculation, the plaintiff in *WellCare*
sought "only the amount it expected to be paid—and the amount it billed WellCare," regardless
of whether the "reasonable value of [Plaintiff's] services is higher." *WellCare*, 937 N.Y.S. 2d at
542. *WellCare*'s discussion of costs centered mainly on out-of-state cases, which found that
plaintiffs had stated a cause of action for unjust enrichment when an insurer failed to pay a
hospital for emergent services. *See id.* at 545 (hospital plaintiff's complaint, alleging that
emergency room physicians were required by law to provide medical services to insurer's
members, stated cause of action for unjust enrichment under New York law). And, as Judge
Netburn found, New York law is focused on reasonable value based on charges, not costs.
Accordingly, as Judge Netburn correctly held, costs are not the relevant metric for determining
the reasonable value of the Plaintiffs' professional services.[6]

Nor does *Temple*, a Pennsylvania case, stand for the proposition that costs are relevant in
an unjust enrichment inquiry. *Temple*, 832 A.2d 501. Like *WellCare*, *Temple* addressed an
insurer's failure to adequately reimburse a hospital for services provided. *Id.* at 507-08. While
the *Temple* court noted that paying a hospital "less than actual costs" would be "inequitable," it
also held that reasonable value is properly measured by "'what someone normally receives for a
given service in the ordinary course of its business from the community that it serves' or 'the
average charge for the services at issue.'" Dkt. No. 158 at 2 (quoting *Temple*, 832 A.2d at 510).
Nothing in *Temple* compels the conclusion that costs are relevant to determining reasonable
value for professional services under New York common law. Indeed, a Pennsylvania court has

---

[6] Notably, hospitals are responsible for cost-reporting in connection with Medicare and Medicaid
reimbursements; that is not the case for clinicians, like Plaintiffs.

recently ruled, in a case between Plaintiffs' affiliates and United, that costs are *not* relevant to determining the reasonable value of emergency medical services. *See* Schwartz Decl., Ex. 4 (*Emergency Care Services of Pennsylvania, P.C. v. UnitedHealth Group, Inc.*, No. 000598, Order (Mar. 21, 2022)). Judge Netburn correctly evaluated *Temple* in denying United's motion to compel production of costs.

**B.    Complaints By Persons Not Participating In The Market Are Not Relevant to Reasonable Value**

Judge Netburn also correctly denied United's motion to compel the production of documents reflecting complaints about Plaintiffs' services. As Judge Netburn explained, "there is the opportunity for speculation, uncertainty, sort of unique facts for each complaint that would render that information, in my view, too speculative, not a strong-enough foundation to make a reasonable argument based on it." 06/27/22 Tr. (First Part) 45:3-7. United does not grapple with these considerations or attempt to show that Judge Netburn's determination was erroneous or contrary to law.

United instead insists that if a patient or hospital complained about Plaintiffs' billed charges—which neither is responsible for paying—such a complaint might show that Plaintiffs' billed charges were themselves unreasonable. This contention is meritless. As Judge Netburn explained, patient complaints are based on lots of individual variables and would open the door to speculation. 06/27/22 Tr. (First Part) 45:3-7. Moreover, New York law insulates patients from responsibility for United's underpayments. United's arguments about any hospital complaints is even further afield, for the bald assertion that hospitals are "fellow market participants" in emergency medical services, Obj. 13, is unsupported and does not explain the possible relevance to reasonable value of a hospital's complaints about what Plaintiffs may have billed to an insurer.

16

The proper focus of analysis is the market rate for emergency services, not whatever billing complaints may have been made by persons or entities with no responsibility for paying the billed charges.  United twists both Judge Nathan's opinion and Plaintiffs' position on the relevance of billed charges.  Plaintiffs will prove that their billed charges *reflect* reasonable value—not that they are the measure of such value.  *See, e.g.*, *United Bldg. Maint. Assocs., Inc. v. 510 Fifth Ave. LLC*, 795 N.Y.S.2d 535, 536 (N.Y. App. Div. 2005) ("The court properly based its calculation of the reasonable value of plaintiff's services on evidence showing what plaintiff had billed . . . .").  Plaintiffs have produced other evidence regarding reasonable value, including information from other insurers and the FAIR Health charge database regarding similar services in relevant geographic areas.  This is consistent with Judge Nathan's holding that:

> As alleged, United's duty is to pay Plaintiffs a "reasonable" rate for their services, Compl. ¶¶ 65–82, not to pay whatever amount Plaintiffs decide to bill United. Moreover, an equally unappealing outcome could result from United's position that Plaintiffs have no recourse if United fails to reasonably compensate them, which would conceivably incentivize insurers like United to pay as little as possible while Plaintiffs remain obligated to treat United's insureds.

Opinion at 26.[7]

---

[7] United misleadingly relies on a partial quotation from Plaintiffs' counsel.  Obj. 13 n.8.  At the June 27 hearing, Plaintiffs' counsel informed the Court that United had produced numerous documents reflecting its systematic under-reimbursement in other litigations.  Counsel explained: "So what [United's] studies show is that United knows that our bill[ed] charge was the amount that we're entitled to be paid, they paid less on that, and they used that bill[ed] charge as the metric for what United charges its clients. But when United comes into this courtroom, United

IV.   **UNITED'S REQUEST FOR LEAVE TO FILE AN "IMMEDIATE MOTION FOR SUMMARY JUDGMENT" SHOULD BE DENIED**

Seeking to throw further sand into the gears of the discovery process, United now wants to move "immediately" for summary judgment, even as it continues to resist Judge Netburn's discovery orders.  This stratagem is nothing but a distraction:  United points to no facts adduced in discovery that could warrant such a motion while discovery is still underway.  United's proposed summary judgment argument rests on three "rulings of New York State courts," Obj. 19, two of which were decided well before the instant action was even commenced.  United fundamentally misconstrues these decisions, and its proposed motion would serve only as another stumbling block to discovery.  United's request for leave to file a so-called "immediate motion for summary judgment" should be denied.

A.   **Judicial Economy And Efficiency Would Not Be Served By Permitting United To Move For Summary Judgment Prior To The Close Of Discovery**

If United really believes that New York state jurisprudence forecloses Plaintiffs' action as a matter of law, it offers no explanation for having failed to raise this argument earlier, either in support of its motion to dismiss or in support of its subsequent motion for judgment on the pleadings, brought by all United defendants.  Instead, United introduces the argument for the first time only as an adjunct to its objections to Judge Netburn's discovery orders.  The approach is at odds with this Court's practices—which require a pre-motion conference in advance of any motion for summary judgment—and suggests that the proposed motion is nothing more than a

---

says the providers' charges are unreasonable, they're too high, the providers are not entitled to their bill[ed] charge."  06/27/22 Tr. (Second Part) 21:16-23.

last-ditch effort to forestall production of what United anticipates will be damaging strategy documents.  The "interests of judicial economy and efficiency," *id*. at 8, would not be served by permitting United to advance its specious argument in a mid-discovery summary judgment motion that would function in all respects as a belated supplement to its motions to dismiss and for judgment on the pleadings.  This is particularly so given that United has unmistakably signaled that the proposed summary judgment motion, if unsuccessful, would not be its last, *see id*. at 7 n.6 (reserving the right to move for summary judgment on "other grounds" upon the "close of discovery"), notwithstanding its counsel's prior assurances that it had no intention of burdening the Court with "serial summary judgment motions."  06/27/22 Tr. (First Part) 7:4-8:3 ("[W]e understand the Court's only going to want one summary judgment.").  The efficient resolution of this action would only be obstructed by entertaining United's proposed summary judgment motion now, while fundamental discovery disputes remain unresolved.

### B.   Plaintiffs' Common Law Claim For Unjust Enrichment Is Neither Barred By Nor Dependent On The New York Financial Services Law

The premise of United's proposed summary judgment motion is fundamentally unsound.  As discussed below, the New York County and Erie County actions upon which United relies do not support the improbable position advocated by United:  that those who enrich themselves by strategically underpaying emergency medical care providers cannot be held liable for unjust enrichment.

#### 1.    The New York County Action

In the New York County action relied upon by United—a state court action brought by plaintiffs here (among others) against several Aetna Health entities (the "Aetna Defendants")— the New York Supreme Court found that the plaintiffs' unjust enrichment claim was unsustainable because the "sole basis" for that claim was the plaintiffs' allegation that the Aetna

Defendants had failed to comply with NYEMSSBA.  *See Buffalo Emergency Assocs., LLP v. Aetna Health, Inc. (N.Y.)* ("*Buffalo Emergency I*"), No. 651937/2017, 2017 WL 5668420, at *3 (N.Y. Sup. Ct. Nov. 27, 2017).  The New York Supreme Court acknowledged that reference to or reliance on NYEMSSBA would not "in and of itself" have foreclosed the plaintiffs' unjust enrichment claim, but it found that the plaintiffs had failed to allege any "independent sources of duty" beyond NYEMSSBA and concluded that the unjust enrichment claim, as alleged, was completely indistinguishable from a NYEMSSBA claim.  *See id.*  On that basis, the court held that the claim could not proceed, because NYEMSSBA itself included no provision for a private right of action.  *See id.*  The First Department affirmed, characterizing the plaintiffs' complaint as an "improper effort to circumvent the legislative preclusion of private lawsuits for violation of [NYEMSSBA]."  *Buffalo Emergency Assocs., LLP v. Aetna Health, Inc. (N.Y.)* ("*Buffalo Emergency II*"), 87 N.Y.S.3d 877, 877 (N.Y. App. Div. 2018) (citation and internal quotation marks omitted).  The First Department added that the unjust enrichment claim was "also deficient" inasmuch as the plaintiffs had failed to allege an "equitable obligation running from defendants to plaintiffs."  *Id.*

Contrary to United's characterizations of these two rulings—*see* Obj. 7-8, 20, 22—neither court held that unjust enrichment claims of the sort at issue here—*i.e.*, claims premised on an insurer's deliberate underpayment for emergency medical services—are precluded *per se* by NYEMSSBA, or that the invocation of NYEMSSBA in a party's pleadings must necessarily render an unjust enrichment claim nonviable.  Rather, the *Buffalo Emergency I* and *Buffalo Emergency II* courts simply held that the claims alleged ***in that case*** were "wholly dependent" on NYEMSSBA.  *Buffalo Emergency I*, 2017 WL 5668420, at *3 ("[P]laintiffs' claims would not exist without [NYEMSSBA] since [NYEMSSBA] itself is the sole source of Aetna's purported

duty to pay the claims at the minimum rate asked for."). Here, NYEMSSBA is not the basis of any of Plaintiffs' allegations, much less an indispensable basis: Plaintiffs allege that they are required by law to treat United's insureds, that they were systematically underpaid by United for providing such treatment, that United was enriched as a result of the underpayment, and that Plaintiffs are therefore equitably entitled to reimbursement for the reasonable value of the services rendered. These allegations state a common law claim for unjust enrichment, *see* Opinion at 25 (collecting cases), without reference to any statutory reimbursement requirements. *Buffalo Emergency I* and *Buffalo Emergency II* thus do not foreclose Plaintiffs' unjust enrichment claims in this action.

Attempting to make the *Buffalo Emergency I* and *Buffalo Emergency II* decisions seem more relevant, United contends that Plaintiffs have "extensively relied" on NYEMSSBA, Obj. 7, but the pleadings do not bear this out at all. In their Amended Complaint, Plaintiffs cited to NYEMSSBA in conjunction with *WellCare* for the purpose of showing that United has common law and statutory obligations to pay reasonable value. Am. Compl. ¶ 29. This in no way renders Plaintiffs' claims "wholly dependent" on NYEMSSBA. *See Buffalo Emergency I*, 2017 WL 5668420, at *2-3. "Mere overlap between the common law and [statutory law] is not enough to extinguish common-law remedies." *See Assured Guar. (UK) Ltd. V. J.P. Morgan Inv. Mgmt. Inc.*, 962 N.E.2d 765, 770-71 (N.Y. 2011). During discovery, Plaintiffs have consistently made clear that their claims do not arise under NYEMSSBA. *See* Dkt. No. 126 4 n.2; 04/19/2022 Tr. 9:23-24 (Counsel for Plaintiffs: "[T]his is an unjust enrichment action, not a contract action and not a statutory action.").

### 2. The Erie County Action

Following dismissal of the New York County action, another action was filed in Erie County against the same Aetna Defendants by the plaintiffs here (among others), again asserting

causes of action that included a claim for unjust enrichment.  In that Erie County action, the

plaintiffs' unjust enrichment claim was dismissed on the basis of *res judicata* and/or collateral

estoppel, and the Fourth Department affirmed.  *See Buffalo Emergency Assocs., LLP v. Aetna*

*Health, Inc.* ("*Buffalo Emergency III*"), 145 N.Y.S.3d 446, 447 (N.Y. App. Div. 2021).  The

finding that the Erie County action was in some respects duplicative of the earlier New York

County action—and, therefore, that the claims in the New York County action could not be

relitigated in the Erie County action—has no pertinence to ***this*** action, which involves different

allegations against different defendants.

### C.    The New York County and Erie County Actions Have No Claim- or Issue-Preclusive Effect on Plaintiffs' Unjust Enrichment Claim

United does not invoke principles of *res judicata* or collateral estoppel in support of its

summary judgment argument, nor could it.  The defendants in the New York County and Erie

County actions are not the defendants here, nor are they in privity with the defendants here,

foreclosing any recourse to the doctrine of *res judicata*.  *See Simmons v. Trans Express Inc.*, 170

N.E.3d 733, 736 (N.Y. 2021); *see also City of New York v. Welsbach Elec. Corp.*, 878 N.E.2d

966, 968 (N.Y. 2007) ("One linchpin of res judicata is an identity of parties actually litigating

successive actions against each other . . . .").

There is also no identity of issues, an essential prerequisite for any finding of collateral

estoppel.  *See Simmons*, 170 N.E.3d at 737; *Welsbach Elec.*, 878 N.E.2d at 968.  To the extent

that there is any question whether the allegations of unjust enrichment in *this* action are "wholly

dependent" on the existence of NYEMSSBA, it is a question that can only be answered by

reference to the specific pleadings here; that question was not (and could not have been)

addressed by the *Buffalo Emergency I* or *Buffalo Emergency II* courts.  The finding that the Erie

County action was in some respects a relitigation of—and therefore barred by—the New York

County action, *see Buffalo Emergency III*, 145 N.Y.S.3d at 447, is likewise unrelated to any issue currently before this Court; the Fourth Department's decision can have no preclusive effect with respect to this action, which involves a different set of allegations against a different set of defendants.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that United's objections to Magistrate Judge Netburn's discovery rulings be denied and that United's request for leave to file an "immediate" motion for summary judgment be denied.

Dated: July 25, 2022

/s/ Wendy H. Schwartz

**BINDER & SCHWARTZ LLP**
Wendy H. Schwartz
Sarah Dowd
366 Madison Avenue, 6th Floor
New York, NY 10017
(212) 510-7008
wschwartz@binderschwartz.com
sdowd@binderschwartz.com

**LASH & GOLDBERG LLP**
Justin C. Fineberg (*pro hac vice*)
Jonathan Siegelaub
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2131
(305) 347-4040
jfineberg@lashgoldberg.com
jsiegelaub@lashgoldberg.com

*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

EMERGENCY PHYSICIAN SERVICES
OF NEW YORK, *et al.*,

      *Plaintiffs*,

v.

UNITEDHEALTH GROUP, INC., *et al.*,

      *Defendants*.

Case No: 1:20-cv-09183-JGK-SN

**CERTIFICATE OF COMPLIANCE WITH THE**
**<u>INDIVIDUAL PRACTICES OF JUDGE JOHN G. KOELTL</u>**

      Plaintiffs' Memorandum of Law In Opposition To Defendants' Objections to Discovery Rulings and Request to Move for Summary Judgment ("Memo of Law") complies with the formatting rules under Rule II.D.

      The Memo of Law complies with the world limit under Rule II.D because the relevant portions of the Memo of Law contain 6,713 words, which were counted by Microsoft Word.

Dated: July 25, 2022

/s/ Wendy H. Schwartz

**BINDER & SCHWARTZ LLP**

Wendy H. Schwartz
Sarah Dowd
366 Madison Avenue, 6th Floor
New York, NY 10017
(212) 510-7008
wschwartz@binderschwartz.com
sdowd@binderschwartz.com

**LASH & GOLDBERG LLP**

Justin C. Fineberg (*pro hac vice*)
Jonathan Siegelaub
Miami Tower
100 SE 2nd Street, Suite 1200
Miami, FL 33131-2131
(305) 347-4040
jfineberg@lashgoldberg.com
jsiegelaub@lashgoldberg.com

*Counsel for Plaintiffs*