```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
---
EMERGENCY PHYSICIANS SERVICES OF NEW
YORK, ET AL.,

                         **Plaintiffs,**

      - against -

UNITEDHEALTH GROUP, INC., ET AL.,

                         **Defendants.**

20-cv-9183 (JGK)

<u>MEMORANDUM OPINION
AND ORDER</u>

---

**JOHN G. KOELTL, District Judge:**

    This objection arises out of an action in which the plaintiffs, various hospital-based emergency care providers in New York, allege that the defendants, commercial health insurer UnitedHealth Group, Inc. ("United") and its subsidiaries, have failed to reimburse the plaintiffs for the reasonable value of emergency medical services provided to the defendants' members. The plaintiffs object to a November 16, 2022 Order of Magistrate Judge Netburn (ECF No. 220) that limited discovery to disputed insurance claims for emergency medical services performed during the period from January 1, 2018, through July 31, 2021. See ECF No. 228 (the "Objection"). The plaintiffs alternatively seek leave to amend the operative amended complaint (ECF No. 97).

    For the reasons that follow, the Court **grants** the Objection for the limited purpose of modifying the November 16, 2022 Order to allow discovery into any claims for additional care rendered to "United's Members," as that term is defined in paragraph 19 of

the amended complaint, but only to the extent that such claims for additional care arose during the period from August 1, 2021, to December 31, 2021. The motion for leave to amend is **denied without prejudice** to renewal before Magistrate Judge Netburn.

I.

The plaintiffs commenced this litigation in November 2020. The Court dismissed several of the plaintiffs' causes of action in September 2021, leaving only the plaintiffs' claims for unjust enrichment and declaratory relief. The case was later referred to the magistrate judge for general pretrial purposes, including scheduling, discovery, and non-dispositive motions.

In a joint letter filed on November 8, 2021, United agreed to assist the plaintiffs in identifying the United subsidiaries responsible for adjudicating the disputed insurance claims, so that the plaintiffs could amend their complaint to include those subsidiaries as defendants. However, United represented to the magistrate judge that it would need "the full list of at-issue claims to begin that process." ECF No. 80. On November 16, 2021, Magistrate Judge Netburn directed the plaintiffs to provide "a draft order authorizing the limited release of information on the insurance claims that are the subject of the lawsuit," and to "serve [the] [d]efendants with a list of these claims for the purpose of expediting the identification" of the relevant United subsidiaries. ECF No. 83. That same day, the plaintiffs served

United with a list of 8,024 claims associated with medical care rendered during the period from January 1, 2018, to July 1, 2021 ("First Claims List"). Dowd Decl., ECF No. 229, ¶ 4. After the parties exchanged additional correspondence and United identified several subsidiary defendants, the magistrate judge ordered the plaintiffs to file an amended complaint by February 24, 2022. See ECF No. 95.

The plaintiffs timely filed their amended complaint, which alleges that the defendants "implemented a scheme to unjustly enrich themselves by paying [p]laintiffs less than the reasonable value of the emergency care provided" to patients with United insurance. Am. Compl. ¶ 5. The plaintiffs specifically allege that "[d]uring the period beginning in January 2018 and ending in July 2021, [p]laintiffs provided emergency care to more than 7,500 patients ('United's Members') covered by commercial insurance plans sold and/or administered by United (the 'Disputed Claims')." Id. ¶ 19. A footnote at the end of that paragraph reads: "Because [p]laintiffs continue to provide emergency medical services to United's Members, the Disputed Claims are continuing to accrue." Id. ¶ 19 n.5. The amended complaint also alleges that "[f]or all of the Disputed Claims, United's failure to pay [p]laintiffs the reasonable value of their services comes at [p]laintiffs' expense," id. ¶ 68, such that the plaintiffs are entitled to unjust enrichment damages "in an amount which will continue to

accrue through the date of trial," id. ¶ 75. In addition, the plaintiffs seek a declaratory judgment "prospectively" requiring United to reimburse the plaintiffs for the "reasonable value" of emergency medical services. Id. ¶ 82.

On June 30, 2022, the plaintiffs served the defendants with a second list of allegedly underpaid claims, which included some of the claims already listed on the First Claims List, as well as 2,450 additional claims associated with medical care provided on dates of service ranging from August 1, 2021, to December 31, 2021. See Dowd Decl. ¶¶ 6-7. After United repeatedly refused to provide discovery pertaining to claims listed only on the Second Claims List, the plaintiffs filed a letter with the magistrate judge, seeking a conference regarding their anticipated request for an order compelling United to supply such discovery. ECF No. 218. United opposed, arguing that insurance claims with dates of service between August and December 2021 are not relevant to the action, and are therefore beyond the scope of discovery. ECF No. 219. The magistrate judge denied the plaintiffs' letter request in the November 16, 2022 text order at issue, which provides:

> Plaintiffs are precluded from seeking unjust enrichment damages for services performed outside the period of January 1, 2018, to July 31, 2021. Accordingly, to the extent claims on the "Second Claims List" are for services performed before or after that period, Defendants do not need to respond. To the extent claims on the "Second Claims List" are for services performed within that period, Plaintiffs must promptly file with the Court (1) an explanation for why these claims were

4

not included in the "First Claims List" and (2) the
total number of claims on the "Second Claims List" that
are for services performed between January 1, 2018, and
July 31, 2021.

ECF No. 220 (the "November 16, 2022 Order"). The plaintiffs now object to the November 16, 2022 Order, arguing that it was unauthorized, contrary to law, and clearly erroneous.

## II.

"The standard of review that a district court applies to a magistrate's orders depends on whether the issue decided by the magistrate judge is dispositive or nondispositive." Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, No. 14-cv-9371, 2018 WL 3863447, at *3 (S.D.N.Y. Aug. 13, 2018).[1] "Whereas dispositive orders are subject to de novo review, if a party timely objects to a magistrate's nondispositive order, a district court may only 'modify or set aside any part of the order that is clearly erroneous or is contrary to law.'" Id. (quoting Fed. R. Civ. P. 72(a)); see 28 U.S.C. § 636(b)(1)(A). An order is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Surles v. Air France, No. 00-cv-5004, 2001 WL 1142231, at *1 (S.D.N.Y. Sept. 27, 2001). An

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

5

order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Id.

### III.

The plaintiffs object to the November 16, 2022 Order on two principal grounds. First, the plaintiffs contend that the Order improperly disposed of (1) the plaintiffs' request for damages in connection with the subset of insurance claims for medical care rendered between August and December 2021, and (2) the claim for declaratory relief. Second, the plaintiffs argue that the Order, if nondispositive, is clearly erroneous. The defendants respond that the Order is simply a nondispositive discovery ruling, which appropriately cabined the scope of discovery to align with the insurance claims put at issue in the amended complaint.

The plaintiffs' contention that the Order was a dispositive ruling foreclosing certain claims for relief is unpersuasive. The plaintiffs specifically take issue with the first sentence of the Order, which reads: "Plaintiffs are precluded from seeking unjust enrichment damages for services performed outside the period of January 1, 2018, to July 31, 2021." The import of this sentence, if read in isolation, is perhaps less than clear. But viewed in light of the Order as a whole, the sentence is most fairly read as a prefatory statement that describes the scope of the action in order to contextualize the discovery ruling. The fact that the Order includes an interpretation of the pleadings, and in

6

particular of the request for unjust enrichment damages, does not place the Order beyond the bounds of the magistrate judge's authority. As courts in this district have explained, "legal questions involved in a nondispositive order do not transform the order into a dispositive one." Blackrock, 2018 WL 3863447, at *3. Also meritless is the plaintiffs' argument that the Order would undermine any declaratory relief awarded in this case. The Order never mentions the plaintiffs' request for a declaratory judgment, and it cannot reasonably be construed as precluding a claim for declaratory relief.

Thus, the November 16, 2022 Order is not a dispositive decision, but a nondispositive ruling that defines the parameters of certain discovery obligations based on the magistrate judge's understanding of the scope of the action. And because the Order is nondispositive, it is subject to review for clear error.

To establish clear error, the plaintiffs argue that the Order restricts the scope of discovery based on a fundamental misreading of both the amended complaint and the "function of the claims lists." Obj., ECF No. 228, at 11-12. As an initial matter, it is doubtful that the plaintiffs did not originally view the First Claims List as defining the universe of disputed claims at issue in the action, whatever the precise purpose of providing the list may have been. The First Claims List was the product of the magistrate judge's November 2021 order directing

7

the plaintiffs to supply "a list of <u>these</u> claims," a statement referring specifically to "the insurance claims that are <u>the subject of the lawsuit</u>." ECF No. 83 (emphases added). Moreover, the amended complaint, which was filed after the submission of the First Claims List, plainly relies on the same dates of service in defining the term "Disputed Claims." Am. Compl. ¶ 19. In any event, the November 16, 2022 Order does not purport to rely on the "function" of the claims lists in interpreting the range of insurance claims relevant to the plaintiffs' cause of action for unjust enrichment. And it is the operative amended complaint filed on February 24, 2022 -- not the First Claims List or the Second Claims List -- that defines the scope of the claims for relief and, therefore, the scope of discovery.

With respect to the amended complaint, the plaintiffs argue that they clearly allege their entitlement to compensation for "continuing unjust enrichment," which includes damages for all claims with dates of service on or after August 1, 2021. Obj. at 12-14. The defendants argue that the amended complaint expressly limits the relevant insurance claims to only those that accrued between January 1, 2018, and July 31, 2021, the same time period used to define the scope of discovery in the magistrate judge's Order. A fair reading of the amended complaint reveals that neither party is precisely right.

8

Contrary to the plaintiffs' contentions, the complaint's references to "continuing unjust enrichment" and "continue[d]" accrual of damages do not sweep all insurance claims postdating July 2021 into the scope of action. See Am. Compl. ¶ 75. Rather, those allegations are fairly read as describing the lingering benefit to United, and the compounding financial harm to the plaintiffs, flowing from "United's failure to pay [p]laintiffs the reasonable value" "[f]or all of the Disputed Claims." Id. ¶ 68. The amended complaint plainly requests unjust enrichment damages solely in connection with the "Disputed Claims," a term bearing the definition assigned to it in paragraph 19. In that paragraph, the plaintiffs defined "Disputed Claims" to encompass all insurance claims associated with the care provided "to more than 7,500 patients ('United's Members') covered by commercial insurance plans sold and/or administered by United" "[d]uring the period beginning in January 2018 and ending in July 2021." Am. Compl. ¶ 19. And the embedded term "United's Members" refers to the roughly 8,000 patients with United insurance for whom the "[p]laintiffs provided emergency care" in that same period. Id.

The definition of "Disputed Claims" is in turn qualified by footnote 5, which states that "[b]ecause [p]laintiffs continue to provide emergency medical services to United's Members, the Disputed Claims are continuing to accrue." Id. ¶ 19 n.5. The plaintiffs argue that this footnote expands the definition of

9

"Disputed Claims" to cover all claims accruing after July 2021. Meanwhile, the defendants contend that the footnote applies only to those claims "continuing to accrue" as of the filing of the amended complaint on February 24, 2022. Both interpretations disregard the footnote's use of the capitalized terms "United's Members" and "Disputed Claims." The footnote states that the plaintiffs "continue[d] to provide care" to "United's Members" -- that is, to certain of the roughly 8,000 United-insured patients for whom the "[p]laintiffs provided emergency care" "[d]uring the period beginning in January 2018 and ending in July 2021" -- and that as a result, "Disputed Claims" continue to accrue. Am. Compl. ¶ 19 & n.5. Thus, footnote 5 does expand the definition of "Disputed Claims," but only slightly. As defined in paragraph 19 and footnote 5, the term "Disputed Claims" encompasses (1) claims associated with emergency care provided to roughly 8,000 patients defined as "United's Members" during "the period beginning in January 2018 and ending in July 2021," presumably including all of the claims on the First Claims List, and (2) any claims for additional care provided to those same patients after July 2021.[2] And because the plaintiffs made clear at oral argument on the

---

[2] Construing footnote 5 to be limited to United's Members who received additional treatment in the period from August 1, 2021, to December 31, 2021, is consistent with the intent of the parties to include services for patients insured by entities that were already identified as defendants in the amended complaint.

10

Objection that they are not seeking damages for claims with dates of service on or after January 1, 2022, the cutoff date of service for the "Disputed Claims" is December 31, 2021.

Given this definition of "Disputed Claims," the Court is left with the definite and firm conviction that the magistrate judge erred in limiting the defendants' discovery responses to only those insurance claims with dates of service on or between January 1, 2018 and July 31, 2021. That ruling disregards the effect of footnote 5, which expands the definition of "Disputed Claims" to include any claims for additional services rendered to "United's Members," as that term is defined in the amended complaint, between August 1, 2021 and December 31, 2021.

The parties should cooperate to ensure that discovery is exchanged in accordance with this ruling. Any disputes with respect to the scope of discovery in light of this Memorandum Opinion and Order should be brought to the attention of the magistrate judge.

**IV.**

The plaintiffs also seek leave to amend the operative complaint in order to "clarify" the scope of their requests for relief. Obj. at 15. If the plaintiffs still wish to amend their complaint, they should present their motion to the magistrate judge in the first instance, rather than pursuing the motion in the context of an objection to another of the magistrate judge's

11

rulings. Once the magistrate judge has ruled on any such motion for leave to amend, the parties will have their opportunity to object to that ruling and to debate the applicable standard of review. For now, the motion for leave to amend is **denied without prejudice** to renewal before Magistrate Judge Netburn.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons discussed above, the Objection is **granted** solely for the purpose of modifying the November 16, 2022 Order to reflect the Court's reading of the amended complaint. The motion for leave to amend is **denied without prejudice** to renewal before the magistrate judge.

SO ORDERED.

Dated:   New York, New York
         January 28, 2023

                                          John G. Koeltl
                                     **United States District Judge**