

Wendy H. Schwartz
Binder & Schwartz LLP
366 Madison Avenue  6th Floor          (T) 212.510.7143
New York, NY 10017                      (F) 212.510.7299
                                        wschwartz@binderschwartz.com

February 21, 2023

<u>VIA ECF</u>

Honorable Sarah Netburn
Thurgood Marshall Courthouse
40 Foley Square, Room 430
Southern District of New York
New York, New York 10007-1312

> Re:  *Emergency Physician Services of New York, et al. v. UnitedHealth Group, Inc., et al.*,
> Case No. 1:20-cv-09183 –Response to February 15, 2023 Order (Dkt No. 313)

Dear Judge Netburn:

We write on behalf of Provider Plaintiffs, in response to Your Honor's order for additional information regarding our ESI review and production process.  Dkt. No. 313 (the "Order").

To start, we wish to clarify the terms "Yield," "R-Set," and "NR-Set," to reflect our review process. In total, 340,043 documents hit on the parties agreed-upon search terms and custodians in New York.  This volume is the "Yield."

As the Court is aware, this is one of several litigations pending throughout the country and some contract negotiations between the related parties relevant to the litigations occurred on a national level (although the negotiations did not specifically address New York).  In each case, the search terms, custodians, and document requests are extremely similar.  Thus, to maximize efficiency, and ensure completeness, Provider Plaintiffs engaged in a two-part review.  One review occurred through the use of technology assisted review ("TAR") on documents that were potentially responsive to many of the cases nationally (the "National Review").  The National Review included documents that hit on search terms and custodians in New York and other cases.  The total volume reviewed through the National Review was 348,031 documents.  269,414 of these documents were from the Yield, and the remaining documents were included for other cases which either included different custodians or a broader time period than that agreed to in New York.  Of the 348,031 documents in the National Review:

- 149,014 documents were identified as potentially responsive.  This volume is the "National R-Set."  The National R-Set was then reviewed by attorneys for broad potential responsiveness to nationwide issues (including New York) for production in all cases. **Within the National R-Set, 122,136 documents were from the files of the agreed-to custodians and were within the Relevant Time Period in New York.** Documents within the New York subset that were marked responsive at this first level review were then reviewed by counsel for responsiveness specifically to New York, considering Requests for Production and relevant court orders.



- 199,017 documents were identified as not responsive.  This volume is the "National NR-set" and these documents were removed and not reviewed, with the exception of a sample set of documents that were reviewed to validate the TAR model (the "Validation Set").

The other portion of our review occurred through a separate manual attorney review of documents only hitting on New York search terms and in the files of New York custodians (the "New York Review"), and not on any terms or custodians from another case.  The New York Review consisted of 70,629 documents.  These documents were not a part of the National Review, and therefore, were reviewed specifically for New York.

**Thus, a total of 192,765 documents were manually reviewed for the New York case: 122,136 from the National R-Set and 70,629 from the New York Review.**  To accurately respond to Your Honor's Order, we refer to this collective set of documents as the "New York R-Set."

Please find responses to each of your questions below.

**Question 1:** How many emails, broken down by custodian, were captured by the Yield and by the R-Set?

**Response:** Of the 340,043 documents in the Yield, 133,886 were parent email files.  The custodian counts[1] for the emails in the Yield are:

- Kent Bristow: 41,623
- Paul Bevilacqua: 23,761
- Jennifer Shrader: 18,703
- Sandy Steele: 16,474
- Jason Heuberger: 6,926
- Joe Carman: 6,877
- Paula Millsaps-Dearolf: 5,192
- Eddie Ocasio: 4,192
- Lisa Zima: 3,795
- Leif Murphy: 3,412
- Tracy Chancey: 2,931

Of the 192,765 documents in the New York R-Set, 78,614 were parent email files.  The custodian counts for the emails in the New York R-set are:

- Kent Bristow: 22,254
- Sandy Steele: 16,435
- Paul Bevilacqua: 13,912
- Jennifer Shrader: 9,166
- Lisa Zima: 3,788
- Jason Heuberger: 3,755
- Eddie Ocasio: 2,408
- Joe Carman: 2,190
- Paula Millsaps-Dearolf: 1,922
- Leif Murphy: 1,462
- Tracy Chancey: 1,322

---

[1] A detailed report of the email volumes by custodian for both the Yield and the New York R-Set is attached as Exhibit A to the Declaration of Marcus Henderson filed herewith.  As noted in that Declaration, the reports include both duplicate and primary custodians.  The 133,886 and 78,614 email counts are captured by the primary custodian reports. We included the duplicate custodian information to illustrate that some documents may have more than one custodian.



Consistent with Provider Plaintiffs' ESI productions, Paul Bevilacqua, Kent Bristow, and Jennifer Shrader had a large amount of search hits and potentially responsive documents in their custodial files.  Also consistent with our productions, Leif Murphy and Eddie Ocasio had a relatively small amount of search hits and potentially responsive documents in their custodial files.

**Question 2:** With respect to Plaintiffs' randomly sampled review of the NR-Set, how did Plaintiffs select that sample? How many documents did it include? Who were the custodians? What was the result of the sampling? That is, did the sampling review result in modifications to the protocol?

**Response:** TAR was performed in accordance with an industry standard TAR Protocol, developed by our vendor, Lighthouse Document Technologies, Inc. ("Lighthouse Global"), with input from counsel for Provider Plaintiffs.  This protocol is attached as Exhibit A to the Declaration of Lon Troyer ("Troyer Declaration") filed herewith.  To validate the TAR process, a random statistically significant sample of 384 documents from the National NR-Set was reviewed.  Troyer Decl. ¶ 7.  This sample size was based on a Confidence Level and Interval for Estimating Richness of the National NR-Set of 95%, +/- 1.808%.  *Id.* ¶ 8.  This Elusion Sample Confidence Level and estimated richness is industry standard practice.  *See id.*  Of the 384 sampled documents, 13 were Responsive and 371 were Non-Responsive.  *Id.* ¶ 9.  The result of this sampling validated the TAR and did not result in any modification to the protocol.  *Id.*  Validation was achieved because the sample contained no more relevant documents than predicted by the machine learning technology.  This process is also industry standard.  *Id.*

The custodian counts[2] for the for the 384 sampled documents in the Validation Set are:

- Kent Bristow: 92
- Paul Bevilacqua: 68
- Jennifer Shrader: 54
- Joe Carman: 36
- Paula Millsaps-Dearolf: 27
- Jason Heuberger: 19
- David Greenberg: 16
- Tracy Chancey: 14
- Eddie Ocasio: 12
- Leif Murphy: 10
- Mark Kline: 10

- Hamilton Lempert: 6
- Diane Luciow: 4
- Brent Davis: 4
- Michelle Weiner: 3
- Linda Thacker: 3
- Victoria Begy: 2
- Blitman, Iris: 1
- Frantz, Robert: 1
- Harris, Rena: 1
- Istvan, David: 1

Consistent with our ESI productions, the custodians with the most randomly selected documents are Kent Bristow, Paul Bevilacqua, and Jennifer Shrader and the New York custodians with the fewest randomly selected documents are Eddie Ocasio and Leif Murphy.

---

[2] A detailed report of these document volumes by custodian is attached as Exhibit B to the Troyer Declaration. Because the National Review included documents outside the scope of the custodians in New York, some non-New York custodians were part of the Validation Set.  All New York custodians were included in the Validation Set.



**Question 3:** For the one document that Plaintiffs acknowledge contained search terms and was responsive, was that document in the R-Set or the NR-Set? For the one document that Ps acknowledge contained search terms but contend was not responsive, was that document in the R-Set or the NR-Set? For both documents, please explain why the document was in the R-Set (and not produced) or in the NR-Set.

**Response:**

*A. The One Responsive Document*

The one document that contained search terms, was responsive, and was not initially produced, is PLAINTIFFS377751. Ex. 1.[3] This document was in the 70,629 documents hitting only on New York search terms and custodians, which were manually reviewed by attorneys. Plaintiffs agree that this document is responsive, and Plaintiffs produced other similar documents in their initial ESI productions. Plaintiffs also produced this particular document once United brought the document to our attention.

This document was initially not produced because it was tagged as Not Responsive by a reviewing attorney. The explanation for this tag is simply human error, which is always a factor in large ESI reviews. *See, e.g.*, *Moore v. Publicis Groupe*, 287 F.R.D. 182, 190 n.11 (S.D.N.Y. 2012), *adopted sub nom. Moore v. Publicis Groupe SA*, No. 11-cv-1279 (ALC)(AJP), 2012 WL 1446534 (S.D.N.Y. Apr. 26, 2012) (citing approvingly studies on the use of predictive coding technology and observing that "responsiveness 'is fairly well defined, and that disagreements among assessors are largely attributable to human error,' with only 5% of reviewer disagreement attributable to borderline or questionable issues as to relevance"); *Malone v. Kantner Ingredients, Inc.*, No. 12-cv-3190, 2015 WL 1470334, at *3 (D. Neb. Mar. 31, 2015) (denying motion for additional electronic discovery where "[a]t most," movant "offered evidence of mistakes made" during manual review, because "human error is common when attorneys are tasked with personally reviewing voluminous electronically stored information.").

Since United's letter identifying this document, we have gone back and reviewed our ESI for this particular issue and can confirm that all responsive documents related to the subject matter in PLAINTIFFS377751 have been produced.

*B. The One Not Responsive Document*

Provider Plaintiffs disagree that the other document United identified as hitting on search terms (Dkt. No. 305) is responsive in its entirety. That document contains two email chains between TeamHealth and Collect Rx, Inc. ("Collect Rx"), as well as internal TeamHealth emails. Each of these chains were in the R-Set and reviewed by attorneys after the TAR. These emails were in the R-Set because they had potential responsiveness scores above the cutoff threshold.

---

[3] Provider Plaintiffs have filed Exhibits 1 through 3 under seal along with the Declaration of Wendy H. Schwartz consistent with Rule III.F of Your Honor's Individual Practices in Civil Cases.



Each of these email chains relate to Collect Rx, which is an outside vendor that provides pre-payment and post-payment negotiation and appeals services on behalf of various healthcare companies.  Provider Plaintiffs have received services from Collect Rx through TeamHealth, which has been contracted with Collect Rx since at least 2018.

On July 21, 2022, United asked for "all Documents, including internal and external Communications, Concerning ***Your reasoning and/or strategy*** behind contracting with Claims Reimbursement/Collection Vendors, including, but not limited to, Collect Rx, Inc." (emphasis added).

On November 7, 2022, Provider Plaintiffs produced email communications regarding Collect Rx that are responsive to United's request, including the first email identified by United in Dkt. No. 305.  *See* Ex. 2.  Provider Plaintiffs also produced other Collect Rx-related emails and their attachments, including a file of all of Provider Plaintiffs' Collect Rx appeals in New York, which includes the billed charges, allowed amount, negotiated amount, status of negotiations, and disposition.  *See, e.g.*, Ex. 3.  While not conceding admissibility, we believed these were responsive to United's specific request because they showed the outcome of negotiations, and we also produced other related correspondence, but not all, because United's specific request was limited to "reasoning and/or strategy" to contract with Collect Rx.

With those principles in mind, the emails contained in Dkt. No. 305 were treated as follows:

- The bottom email reflected in the first disputed email chain (email from Jennifer Shrader to Pat O'Connor) was marked Responsive and produced (unredacted) on November 7, 2022, as PLAINTIFFS376533. Ex. 2.  This email was marked Responsive because it contains Provider Plaintiffs' instructions to Collect Rx to begin a data collection project on claims paid by United and arguably includes some of Provider Plaintiffs' goals in contracting with Collect Rx.  We note that New York is not a focus of this email, and its relevance is quite tangential, but we produced this email nonetheless in an effort to err on the side of production.
- The remainder of the emails that form this first disputed email chain were tagged as Not Responsive because they discuss logistics and are not responsive to any of United's discovery requests.
- The second disputed email chain (beginning with an email from Jennifer Shrader to Ryan Ellison) was tagged as Not Responsive because it discusses logistics and is not responsive to any of United's discovery requests.

The emails in these two chains tagged as non-responsive do not reflect Plaintiffs' "reasoning and/or strategy behind" contracting with Collect Rx.  Nor do these emails have anything to do with the reasonable value of emergency medicine services in New York or United's reimbursement methodology.  United has not articulated—in its letter to the Court or in meet and confers—any reason it needs this logistical information, and we do not know of what use it would be.

In sum, the attorney review of these documents was performed diligently, and the determination that these documents are not responsive does not indicate any inherent issues with Provider Plaintiffs' ESI review.



Very truly yours,

/s/ Wendy H. Schwartz
Wendy H. Schwartz