**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────

**EMERGENCY PHYSICIAN SERVICES OF NEW**
**YORK, ET AL.,**

                 **Plaintiffs,**

       **- against -**

**UNITEDHEALTH GROUP, INC., ET AL.,**

                 **Defendants.**
────────────────────────────────

**20-cv-9183 (JGK)**

**MEMORANDUM OPINION**
**AND ORDER**

**JOHN G. KOELTL, District Judge:**

The plaintiffs, various emergency medical care providers in New York, brought this action against the defendants, commercial health insurer UnitedHealth Group, Inc. ("UHG") and certain of its subsidiaries and affiliates, alleging that the defendants failed to reimburse the plaintiffs for the reasonable value of emergency medical services provided to the defendants' insured members. In September 2021, the Court dismissed several of the plaintiffs' causes of action, leaving only the claims for unjust enrichment and declaratory relief. See Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021) (Nathan, J.) ("MTD Opinion"). The defendants now move for summary judgment on the ground that a series of four state court decisions arising out of litigation between these plaintiffs and the defendants' competitor, Aetna, Inc. ("Aetna"), bar the plaintiffs' common-law unjust enrichment claims in this action. The state court decisions on which the

defendants rely are Buffalo Emergency Associates, LLP v. Aetna Health, Inc., No. 651937/2017, 2017 WL 5668420 (N.Y. Sup. Ct. Nov. 27, 2017) ("BE I"); Buffalo Emergency Associates, LLP v. Aetna Health, Inc., 87 N.Y.S.3d 877 (1st Dep't 2018) ("BE II"); Buffalo Emergency Associates, LLP v. Aetna Health, Inc., No. 810915/2019, NYSCEF Doc. No. 44 (N.Y. Sup. Ct. Mar. 10, 2020), ("BE III"), Jacobs Decl., Ex. 12, ECF No. 185-12; and Buffalo Emergency Associates, LLP v. Aetna Health, Inc., 145 N.Y.S.3d 446 (4th Dep't 2021) ("BE IV") (together, the "Buffalo Emergency Cases"). For the reasons that follow, the defendants' motion for summary judgment is **denied.**

### I.

### A.

The following facts are taken from the parties' Local Rule 56.1 Statements and supporting papers and are undisputed unless otherwise noted.[1]

---

[1] The plaintiffs point out that the defendants' Local Rule 56.1 Statement treats a number of facts alleged in the plaintiffs' amended complaint as "undisputed," even though the defendants previously denied those same alleged facts in their answer. Pls.' Opp'n, ECF No. 199, at 7. However, the defendants represent that "for the purposes of determining this [m]otion," they "accept" as true "the limited set of factual allegations" relevant to the issues presented. Accordingly, to the extent that the defendants' Local Rule 56.1 Statement relies on facts alleged in the amended complaint, the Court considers those facts to be undisputed in resolving this motion for summary judgment.

The plaintiffs, Emergency Physicians of New York PC, Buffalo Emergency Associates LLP, Exigence Medical of Binghamton PLLC, and Emergency Care Services of New York PC, are groups of emergency care providers who staff the emergency rooms of 19 hospitals in 17 different municipalities across New York.[2] See Pls.' Response to Defs.' Rule 56.1 Statement ("Pls.' 56.1 Response"), ECF No. 198, at ¶ 1. In addition to UHG, the defendants include United HealthCare Services, Inc., UMR, Inc., United Healthcare Service LLC, Oxford Health Plans LLC, and UnitedHealthcare Insurance Company, several entities that insure or administer employer-sponsored health benefit plans.[3] See id. ¶ 4. The plaintiffs do not have written contracts with the defendants to specify the rates of payment for the plaintiffs' emergency medical services, and accordingly, the plaintiffs are "out-of-network" providers with respect to the defendants' plan members. Id. ¶ 2.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

[3] The parties dispute whether UHG itself insures or administers employer-sponsored health benefit plans, or whether UHG instead serves only as a holding company. See, e.g., Pls.' 56.1 Response ¶ 4; see also Defs.' Memo. of Law, ECF No. 184, at 3 n.2. For present purposes, this dispute is immaterial because the Court has already determined that UHG is a proper party to the action, irrespective of whether it administers or insures health benefit plans. See Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2022 WL 4087596, at *2 (S.D.N.Y. Sept. 6, 2022).

The plaintiffs allege that they are "legally obligated to treat all patients who present at their emergency departments, no matter the patients' insurance status or ability to pay for their care." Id. ¶ 3; see Am. Compl., ECF No. 97, at ¶ 3. When the plaintiffs render emergency care to patients with employer-sponsored health benefit plans insured or administered by the defendants, the plaintiffs submit their claims for reimbursement to the defendants directly. See Pls.' 56.1 Response ¶ 5. Although the parties dispute certain aspects of the claims adjudication process, all agree that one of the defendants will eventually make a coverage determination as to a particular medical claim, and if the claim is covered, the defendant will then specify the amount to be paid for the relevant plaintiff's services. Id.; see also Am. Compl. ¶ 27. With regard to these payments, the plaintiffs allege that they are entitled "under New York law" to the "reasonable value of the emergency care provided" to the defendants' plan members. Pls.' 56.1 Response ¶ 3; Am. Compl. ¶ 29. The defendants dispute this assertion, and they likewise dispute that the plaintiffs are legally required to treat all patients who arrive in their emergency rooms. See Defs.' 56.1 Statement, ECF No. 183, at ¶ 3.

As stated in the defendants' Local Rule 56.1 Statement, "[t]hrough this lawsuit, [the] [p]laintiffs are contesting the amount of reimbursement that they received on thousands of health

benefit plan claims pertaining to emergency medicine services that they allegedly rendered to members of employer-sponsored health benefit plans that are insured or administered by one of the [d]efendants."[4] Id. ¶ 6. The defendants contend that the plaintiffs received at least some reimbursement "on all of the [d]isputed [c]laims," while the plaintiffs insist that certain claims were never paid. See Pls.' 56.1 Response ¶ 16. Whether or not payments were made on all the claims at issue, the plaintiffs allege that the "adjudicated" amounts paid to the plaintiffs did not represent the "reasonable value" of the "emergency medicine services . . . rendered to the [defendants'] members." Id. ¶ 16.

---

[4] In their respective Local Rule 56.1 Statements, filed in September 2022, the parties adopted competing interpretations of the precise timeframe alleged to encompass the insurance claims at issue. See Pls.' 56.1 Response ¶ 6. That dispute was resolved in this Court's January 28, 2023 Memorandum Opinion and Order, which explained, in the course of addressing a disagreement over the scope of discovery, that the amended complaint is best read to put at issue "(1) claims associated with emergency care provided to roughly 8,000 patients defined as 'United's Members' during 'the period beginning in January 2018 and ending in July 2021,' . . . and (2) any claims for additional care provided to those same patients" between August 1, 2021, and December 31, 2021. Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2023 WL 1106154, at *4 (S.D.N.Y. Jan. 28, 2023). In any event, the parties' dispute over the dates of service for the relevant medical claims is immaterial to the issues presented on this motion for summary judgment. Indeed, the parties dedicate much of their Local Rule 56.1 Statements to disputing facts that are similarly immaterial to the questions raised in this motion, including facts related to the number of medical claims at issue, the propriety of the plaintiffs' claims lists, and the significance of the available claims data.

**B.**

The plaintiffs commenced this action in November 2020. The complaint, which named UHG and Multiplan, Inc. ("Multiplan") as defendants, asserted claims for violations of the Racketeering Individuals and Corrupt Organizations Act ("RICO"), a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, and claims for unjust enrichment and breach of implied-in-fact contract under New York law. See ECF No. 1. The complaint alleged generally that the defendants were engaged in a scheme to underpay the plaintiffs for emergency medical services "provided to [UHG's] insureds," id. ¶¶ 3-5, and that this failure to pay "the reasonable value of the services rendered" benefitted the defendants at the plaintiffs' expense, id. ¶¶ 797-799.

UHG and Multiplan moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in January 2021. See ECF Nos. 28, 30. The defendants' papers made no mention of BE I, BE II, or BE III, which had already been decided. In a September 28, 2021 Memorandum Opinion and Order, Judge Nathan dismissed the RICO claims and the state-law claim for breach of an implied-in-fact contract, but allowed the claims for unjust enrichment and declaratory relief to proceed against UHG. See MTD Opinion, 2021 WL 4437166, at *13. Judge Nathan rejected UHG's contention that the plaintiffs had failed to plead unjust enrichment under New York law, explaining that "New York courts have found . . . that

6

'where, as here, a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees.'" Id. at *12 (quoting N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc., 937 N.Y.S.2d 540, 545 (Sup. Ct. 2011)). Judge Nathan likewise rejected UHG's argument that allowing the unjust enrichment claim would encourage emergency medicine providers to "grossly inflate their bills." Id. at *13; see ECF No. 46 at 10. This concern was unfounded, Judge Nathan explained, because UHG's alleged "duty is to pay [the] [p]laintiffs a 'reasonable' rate for their services, not to pay whatever amount [the] [p]laintiffs decide to bill." MTD Opinion, 2021 WL 4437166, at *13. And Judge Nathan added that "an equally unappealing outcome could result from [UHG's] position that [the] [p]laintiffs have no recourse if [UHG] fails to reasonably compensate them," because such a rule "would conceivably incentivize insurers like [UHG] to pay as little as possible while [the] [p]laintiffs remain obligated to treat [UHG's] insureds." Id.

Discovery ensued, and on February 24, 2022, the plaintiffs filed an amended complaint limited to their remaining claims for unjust enrichment and declaratory relief. See Am. Compl. ¶¶ 62-82. The plaintiffs removed Multiplan from the pleading and added as defendants the UHG subsidiaries and affiliates listed above.

7

The amended complaint alleges that the plaintiffs are "legally
obligated to treat all patients" in their emergency departments
regardless of insurance status, id. ¶ 3, that they have provided
emergency medical care to thousands of patients insured by the
defendants, id. ¶ 19, and that in doing so, the plaintiffs
"conferred a benefit" on the defendants, because UHG "owes its
insureds an obligation to make sure [that they] receive covered
medical services," id. ¶¶ 70-71. The plaintiffs allege that they
provided such care to the defendants' insureds on an "out-of-
network" basis, meaning that they lacked a contract with the
defendants establishing the rates to be paid, and accordingly,
the plaintiffs "were dependent on [the defendants] to . . . pay
[the] [p]laintiffs the reasonable value of the emergency care
provided . . . as required under New York law." Id. ¶¶ 28-29
(citing Wellcare, 937 N.Y.S.2d at 545, and N.Y. Fin. Serv. Law
§ 605(a)). The defendants, however, are alleged to have paid the
plaintiffs "substantially less than the reasonable value of the
emergency care provided," id. ¶ 27, which allowed the defendants
to "generate additional and substantial [member] fees" based on
the supposed "savings" to their insureds. Id. ¶ 18; see, e.g.,
id. ¶¶ 46-47, 64. Thus, the amended complaint alleges that the
defendants breached their "equitable obligation" to "pay [the]
[p]laintiffs the reasonable value of the services rendered," id.

¶¶ 30-31, thereby "unjustly enrich[ing]" themselves at the plaintiffs' expense, id. ¶¶ 73, 5, 31.

Based on these allegations, the plaintiffs seek unjust enrichment damages equivalent to "the difference between the reasonable value of the [emergency medical] services . . . rendered and the amounts allowed by [the defendants] for such services, plus the time-value of that money." Id. ¶¶ 69, 75. The plaintiffs also seek a declaratory judgment providing, as relevant here, that (1) "the rates paid by [the defendants] for the [medical] claims at issue are inadequate and violate [their] obligation to pay [the] [p]laintiffs for services rendered [to the defendants' insureds] at a reasonable value," and (2) this obligation to pay the plaintiffs "for emergency medical services . . . at the reasonable value thereof" applies "prospectively." Id. ¶¶ 81-82.

The defendants filed an answer and also brought a motion for partial judgment on the pleadings, in which they argued that UHG was not a proper party to the action because it is a "holding company" without any role in administering health benefit plans. ECF No. 114 at 1-2. This Court rejected that argument, reasoning that "regardless of whether UHG is responsible for administering health benefit plans or adjudicating health benefit claims," the plaintiffs adequately "alleged that UHG benefitted financially" from its subsidiaries' "failure to reimburse [the] [p]laintiffs

[for] the reasonable value of the services provided." <u>Emergency
Physician Servs. of New York v. UnitedHealth Grp., Inc.</u>, No. 20-
cv-9183, 2022 WL 4087596, at *2 (S.D.N.Y. Sept. 6, 2022) ("Rule
12(c) Opinion"). Thus, "the plaintiffs ha[d] pleaded a direct
unjust enrichment claim against UHG," and the defendants' motion
for partial judgment on the pleadings was denied. <u>Id.</u>

In July 2022, deep into discovery and with the motion for
partial judgment on the pleadings still pending, UHG requested
leave to file a summary judgment motion on a "case-dispositive
issue" -- namely, its argument that the unjust enrichment claims
"are barred as a matter of law" in light of several state court
decisions arising out of "prior litigation" involving the same
plaintiffs. ECF No. 164 at 19-20. This Court declined to stay
discovery but allowed the defendants to make their motion. ECF
No. 176. On September 1, 2022, five days before the decision on
the motion for partial judgment on the pleadings, the defendants
moved for summary judgment. <u>See</u> ECF No. 182. The parties finished
briefing the summary judgment motion after the motion for partial
judgment on the pleadings was decided.

**II.**

The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."

10

Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. However, "disputed legal questions . . . present nothing for trial and are appropriately resolved at summary judgment." Flair Broad. Corp. v. Powers, 733 F. Supp. 179, 184 (S.D.N.Y. 1990).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrate[s] the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the movant meets that burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In determining whether summary judgment is proper, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See id.; Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011).

**III.**

The defendants raise two arguments in support of their motion for summary judgment. First, the defendants contend that, "as the New York courts explained" in what the defendants call "the Buffalo Emergency quadrilogy," "New York law does not permit healthcare providers to use common law unjust enrichment claims to pursue 'reasonable value' payments" for "emergency medicine services . . . rendered to members of employer-sponsored health benefit plans." Defs.' Memo. of Law, ECF No. 184, at 7. Second, the defendants argue that collateral estoppel precludes these plaintiffs from relying on an unjust enrichment theory, because the same plaintiffs already litigated and lost on that issue in the Buffalo Emergency Cases. See id. at 22. The Court addresses each argument in turn.[5]

**A.**

The defendants argue that they are entitled to summary judgment because "New York courts have consistently held that New York state law does not permit emergency medicine services providers . . . to use common law unjust enrichment claims to

---

[5] In addition to opposing the defendants' arguments based on the Buffalo Emergency Cases, the plaintiffs contend that the summary judgment motion is "procedurally unsound" for various reasons. Pls.' Opp'n at 6-9. Because the defendants' arguments fail on the merits regardless of the procedural posture or the type of motion used to present them, it is unnecessary to address the plaintiffs' procedural arguments.

pursue . . . 'reasonable value' payments" from insurers. Defs.'
Memo. of Law at 1. According to the defendants, New York courts
have instead determined that all such claims are "precluded or
barred" in light of New York's Emergency Medical Services and
Surprise Bills Act (the "Emergency Services Act" or the "Act"),
id. at 6, a state statute that requires health insurers to pay a
"reasonable" amount for emergency medical care rendered by out-
of-network providers, and that creates an "independent dispute
resolution" ("IDR") process through which such providers can
contest the payments made for some, but not all, medical claims.
N.Y. Fin. Serv. Law §§ 601 et seq.[6] While the defendants contend
that New York courts have "consistently" endorsed this
conclusion, they cite no supporting authority other than the
four Buffalo Emergency Cases involving the plaintiffs in this
action. And the plaintiffs argue that the Buffalo Emergency Cases
did not categorically foreclose the type of claims asserted here,
but merely disposed of complaints against a different commercial
health insurer for reasons unique to those cases.

---

[6] See N.Y. Fin. Serv. Law § 605(a) (requiring "health care
plan[s]" to pay a "reasonable" amount to "non-participating
provider[s]" for "emergency services" and establishing an IDR
process for "determining a reasonable fee"); see also id. § 604
(setting forth criteria to guide the IDR entity's determination
of the "appropriate amount to pay for a health care service");
id. § 602 (exempting certain "emergency services" from the IDR
process).

The <u>Buffalo Emergency</u> Cases arise out of two separate actions in which these plaintiffs, along with other emergency care providers, sued commercial health insurer Aetna for alleged underpayment of insurance claims reflecting the emergency medical services provided to Aetna's members.[7] The first of these actions was commenced in the New York State Supreme Court, New York County. In that case, the plaintiffs specifically alleged that Aetna had failed to pay "the reasonable value for [emergency care] services . . . established under New York law, <u>i.e.</u>, at a minimum, the 'usual and customary costs'" of such services. Jacob Decl., Ex. 1 ("<u>BE I</u> Compl."), ECF No. 185-1, at ¶¶ 33-34. The quoted phrase "usual and customary cost[]" was borrowed directly from the Emergency Services Act's criteria for determining a "reasonable" fee through the IDR process, <u>see</u> N.Y. Fin. Serv. Law §§ 604(g), and the complaint repeatedly cited the Act's precise definition of that phrase as the basis for the "reasonable value" allegedly owed to the plaintiffs. <u>See, e.g.</u>, <u>BE I</u> Compl. ¶¶ 34-35 (defining "usual and customary cost" as "the eightieth percentile of all charges for the particular health care service performed . . . in the same geographical area as reported in a

---

[7] Specifically, the plaintiffs sued three Aetna entities: Aetna Health, Inc. (New York), Aetna Health Insurance Company of New York, and Aetna Life Insurance Company. <u>BE I</u>, 2017 WL 5668420, at *1. This Memorandum Opinion and Order refers to these three defendants collectively as "Aetna."

[state-approved] benchmarking database maintained by a nonprofit organization," which, at the time, was the entity "FAIR Health" (quoting N.Y. Fin. Serv. Law § 603(i))); id. ¶ 4 ("The reasonable value . . . is, at a minimum, equivalent to the 'usual and customary costs' as defined by New York statute; i.e., the FAIR Health eightieth percentile of all charges benchmark."); id. ¶ 37 ("Contrary to its legal obligations, Aetna has paid and continues to pay [the] [p]laintiffs . . . at amounts substantially and arbitrarily lower than the FAIR Health eightieth percentile of all charges benchmark, as defined by New York law."); see also id. ¶¶ 32, 36, 40, 47, 68. Relying on these allegations, the BE I complaint asserted causes of action for breach of implied-in-fact contract and unjust enrichment. The plaintiffs also requested a declaratory judgment providing that Aetna "must pay . . . the reasonable value of [the plaintiffs'] services based upon the standards established under New York law, which is, at a minimum, equal to the 'usual and customary cost' defined by N.Y. Fin. Serv. L. §§ 601 et seq." Id. ¶ 68.

Aetna moved to dismiss, arguing that the "[p]laintiffs ha[d] no standing" because "each of their claims ar[ose] from and [was] intended to enforce the provisions contained in the [Emergency Services] Act," which "does not provide for a private right of action." Jacob Decl., Ex. 2 ("Aetna BE I Memo."), ECF No. 185-2, at 6. Aetna argued that the plaintiffs' "attempt to enforce . . .

15

the Act by couching their claims as common law causes of action"
failed because, as alleged in the complaint, the "claims would
not [have] exist[ed] absent the Act -- the Act itself [was] the
sole source of Aetna's purported duty to pay the [emergency care]
claims at issue at a higher rate." Id. at 7-8. In response, the
plaintiffs characterized their claims differently. The plaintiffs
argued that their claims arose not out of the Act's provisions,
but out of a "wholly independent" "common-law right to be paid
. . . for the reasonable value of their services," and that the
complaint simply "import[ed] [a] standard" from the Act to show
what might constitute "reasonable value." Jacob Decl., Ex. 3
("Pls.' BE I Opp'n"), at 11, 9.

The New York Supreme Court in BE I shared Aetna's view of
the plaintiffs' claims. The court dismissed the complaint on the
grounds that the "plaintiffs' claims would not [have] exist[ed]
without the [Emergency Services] Act," rendering those claims an
"improper[] attempt to enforce the provisions" of a statute that
"does not provide for a private right of action." BE I, 2017 WL
5668420, at *2-3. The Appellate Division, First Department,
affirmed, reasoning in a brief opinion that (1) "the [BE I]
court properly dismissed the complaint as an improper effort" to
bring a "private right of action" under the Act, and (2) "[i]n
any event," other pleading defects required dismissal of the

claims for unjust enrichment and declaratory relief. BE II, 87
N.Y.S.3d at 877.

The defendants now rely on BE I and its progeny to argue
that the "Emergency Services Act precludes providers of emergency
medicine services from using common law unjust enrichment claims
to seek 'reasonable value' payments" from health insurers. Defs.'
Memo. of Law at 11. But neither BE I nor BE II stands for this
broad proposition. Indeed, the BE I court expressly acknowledged
that Aetna "never argued that [the] plaintiffs' claims were
preempted," 2017 WL 5668420, at *2, belying any contention that
the court had interpreted the Act as categorically "preclud[ing]
or barr[ing]" a whole class of common-law unjust enrichment
claims, see Defs.' Memo. of Law at 6. Rather, the decision in BE
I simply addressed the "only dispute" between the parties, which
was "whether [the] plaintiffs' causes of action [were] wholly
dependent on the Act" (in which case, the parties agreed that
the complaint would "fail[] to state a cause of action"), or
"whether, as [the] plaintiffs contend[ed], the causes of action
[were] independent common law claims that merely use[d] the Act
as a benchmark for an already existing du[t]y." BE I, 2017 WL
5668420, at *3. The mere fact that the complaint "referenced"
the Act was "not in and of itself dispositive"; the plaintiffs'
claims would be viable if the cited statute "define[d] an

already existing duty," but not viable if the statute "itself [was] the source of the duty." Id.

The BE I court's dismissal of the complaint plainly rested on its determination that the plaintiffs' claims, as specifically alleged in the pleading, were derived solely from the Emergency Services Act and thus constituted an improper attempt to plead a cause of action under the Act's provisions. In its survey of the complaint, the court highlighted the plaintiffs' reliance on the Act's requirements to establish the defendant's alleged obligation "to compensate [the] plaintiffs for no less than the 'usual and customary cost' of emergency medicine services." Id. at *1 (citing N.Y. Fin. Serv. Law § 603(i)); see also id. at *2 (pointing out that the plaintiffs sought a declaration directing Aetna to "pay [the] plaintiffs [at a] reasonable value . . . based upon the 'usual and customary costs' as defined by [N.Y. Fin. Serv. Law] §§ 603 et seq."). Based on its assessment of the allegations, the court then concluded that "[i]n all three of [the] plaintiffs' claims, the Act itself" was the sole "source of [the] duty [Aetna] purportedly breached." Id. at *3. As relevant here, the BE I court found that the declaratory judgment claim "specifically [sought] to bind [Aetna] to the terms of the Act," and also that "[u]nder [the] plaintiffs' unjust enrichment claim, [the defendant's] failure to abide by the Act [was] the sole basis for the purported violation of equity and good conscience." Id. Put differently,

18

notwithstanding the plaintiffs' insistence that they had asserted a "common-law claim . . . not entirely dependent on [the Act]," the plaintiffs failed to allege any "independent source[] of duty," apart from the Act itself, that would support a cause of action for unjust enrichment. Id. at *2-3. For the same reason, the court dismissed the plaintiffs' contention that the Act was "merely a borrowed benchmark" for the "reasonable value" owed under the common law. Id. at *3. Instead, "[a]s used in the complaint" at issue, "the term 'reasonable value' [was] nothing more than a stand-in for the requirements of the Act." Id.

In short, the defendants here are correct that the BE I court rejected the plaintiffs' attempt to frame their claims as independent common-law causes of action that simply used the Act as a benchmark. However, the BE I court rejected those arguments not because it interpreted the Act to foreclose such common-law claims entirely, but because the plaintiffs' characterizations were inconsistent with the actual allegations in the complaint -- which, in the BE I court's view, failed to plead an independent common-law duty and instead asserted claims derived solely from purported violations of the Act's provisions. This case-specific holding, grounded in the defects of a particular pleading, does not support the defendants' position in this case that the Act categorically precludes common-law unjust enrichment claims seeking insurance payments for emergency medical services at a

19

reasonable value. In adopting that interpretation of BE I, the defendants read the decision too broadly.

The First Department's ruling in BE II, which affirmed the decision in BE I, was similarly narrow. The First Department held that "the [BE I] court [had] properly dismissed the complaint as an improper effort to circumvent the legislative preclusion of private lawsuits for violation of the Act," referring not to the "preclusion" of independent common-law claims generally but to the absence of any statutorily authorized "private right of action to enforce [the Act's] provisions." BE II, 87 N.Y.S.3d at 877 (emphasis added). This analysis of the plaintiffs' perceived attempt to assert claims under the Act, which comprises a single sentence in the First Department's brief opinion, nowhere implies that the Act operates as a total bar on otherwise viable common-law claims seeking reimbursements for the reasonable value of emergency medical services.

The First Department also held that, "[i]n any event," the plaintiffs' unjust enrichment claim was "defective" because the "complaint did not allege an equitable obligation running from [the] defendants to [the] plaintiffs," which was a "required element" of that claim. Id. And the declaratory judgment claim "similarly failed" because it called on the court "to declare [certain] findings of fact." Id. These holdings rest on pleading defects that are not at issue in this case, because the Court has

already determined that the plaintiffs' claims for unjust
enrichment and declaratory relief are adequately alleged. See MTD
Opinion, 2021 WL 4437166, at *12-13 (holding that the plaintiffs
stated an unjust enrichment claim under New York law and also
"satisf[ied] the standard" for pleading a "declaratory judgment
action"); see also Rule 12(c) Opinion, 2022 WL 4087596, at *2
("[T]he plaintiffs have pleaded a direct unjust enrichment claim
against UHG.").

      Thus, neither BE I nor BE II suggested that the Emergency
Services Act categorically precludes common-law unjust enrichment
claims seeking the reasonable value of emergency medical services,
and they did not hold that such claims could never be viable under
New York law. Indeed, in arguing to the contrary, the defendants
advance an interpretation of BE I and BE II that is inconsistent
with New York precedent. As the New York Court of Appeals has
explained, "[i]t is well settled that 'when the common law gives
a remedy, and another remedy is provided by statute, the latter
is cumulative, unless made exclusive by the statute.'" Assured
Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc., 962 N.E.2d 765,
769 (N.Y. 2011) (quoting Burns Jackson Miller Summit & Spitzer
v. Lindner, 451 N.E.2d 459, 462 (N.Y. 1983)). Accordingly, the
New York courts have "emphasized that 'a clear and specific
legislative intent is required to override the common law[,]'
and that such a prerogative must be 'unambiguous.'" Id. (quoting

Hechter v. N.Y. Life Ins. Co., 385 N.E.2d 551, 554 (N.Y. 1978));
see Bischoff v. Boar's Head Provisions Co., 436 F. Supp. 2d 626,
632 (S.D.N.Y. 2006) ("[New York] common law can only be displaced
by a statement of clear and specific legislative intent."). The
Emergency Services Act is devoid of any such "clear and specific
legislative mandate to abolish preexisting common-law claims," see
Assured Guar., 962 N.E.2d at 769, and the courts in BE I and BE II
did not purport to find one. Those courts simply found that the
Act does not authorize a private right of action to enforce its
provisions -- but, consistent with New York law, they never
concluded that the lack of such a right evinces an intent to bar
the sort of common-law claims at issue in this case. See, e.g.,
Assured Guar., 962 N.E.2d at 769 (noting that the absence of "a
private right of action . . . does not . . . require [courts] to
conclude" that "traditional" common-law remedies "are no longer
available to redress an injury"); Bischoff, 436 F. Supp. 2d at
632 (concluding that "the [New York] legislature's failure to
expressly provide for derivative suits" in a particular statute
"does not necessarily signify an intent to eliminate derivative
rights that undoubtedly existed under the common law").

Instead, BE I and BE II adhered to the general principle
that where, as here, a statute does not provide for a private
right of action, plaintiffs "may not pursue" a purported common-
law claim "predicated solely on a violation" of that statute,

but "may bring a common-law claim . . . that is not entirely
dependent on the [statute] for its viability." Assured Guar.,
962 N.E.2d at 770; see also Schlessinger v. Valspar Corp., 991
N.E.2d 190, 192–93 (N.Y. 2013) (if "no private right to enforce
[a] statute exists," litigants cannot assert a "purported claim
[that] would not have existed absent the [statute's] provisions").
The BE I court relied on Assured Guaranty for this very rule,
and it ultimately determined that the plaintiffs' claims, as
alleged, "fail[ed] to state a cause of action" because they
depended on "the Act itself [as] the [sole] source of duty [the]
defendants purportedly breached." BE I, 2017 WL 5668420, at *3.
By contrast, in this case, Judge Nathan clearly found that the
plaintiffs stated an adequate common-law unjust enrichment claim
under independent sources of law apart from the Act, including
New York's Wellcare decision. See MTD Opinion, 2021 WL 4437166,
at *12.[8] The defendants nonetheless contend that the claims in

---

[8] Of the four Buffalo Emergency Cases, the only one to mention
Wellcare was BE I, which described Wellcare as "inapposite." BE
I, 2017 WL 5668420, at *4. The BE I court distinguished Wellcare
on the grounds that the "Medicare provider hospitals" pursuing
the unjust enrichment claims there were obligated to treat the
defendant insurer's patients "under the Federal Emergency Medical
Treatment and Active Labor Act ('EMTALA')," while the plaintiffs
in BE I were "private practice physicians" to whom that "mandate"
did not apply. Id. In this case, the amended complaint contains
specific allegations as to why both federal law (in particular,
EMTALA) and state law (in particular, N.Y. Public Health Law
§ 2805-b) impose a duty on the plaintiffs to treat UHG's insured
members, see, e.g., Am. Compl. ¶¶ 3, 22–24, and the parties
briefed the issue of Wellcare's applicability at the motion to

this case "fall squarely" within the holdings of BE I and BE II,
because the amended complaint, other filings, and "several of
[the Court's] rulings" "referr[ed] to and invok[ed] the Act" as
a "relevant source of authority." Defs.' Memo. of Law at 17-18.
But according to the New York Court of Appeals, "[m]ere overlap
between the common law and the [statute in question] is not
enough to extinguish common-law remedies." Assured Guar., 962
N.E.2d at 770-71; see also BE I, 2017 WL 5668420, at *3 ("That a
cause of action references or relies on an act without a private
right of action is not in and of itself dispositive."). Thus,
the fact that the Act remains relevant to various issues in this
case does not transform the plaintiffs' independent common-law
causes of action into impermissible claims predicated solely on
the Act itself.

    As for BE III and BE IV, those decisions simply applied
principles of preclusion to deny the plaintiffs a second chance
to litigate their case against the same defendant in a different
New York forum. In BE III, the same plaintiffs from BE I filed

_____

dismiss stage, see, e.g., ECF Nos. 38, 46. Judge Nathan
ultimately concluded that the plaintiffs had adequately alleged
their obligation to provide emergency medical services to the
defendants' members, and she accordingly determined that the
principle set forth in Wellcare applied. See MTD Opinion, 2021
WL 4437166, at *12 (finding that "the Wellcare court's clear
holding" applies because the "[p]laintiffs have alleged that
their provision of services is compelled by law").

another complaint against Aetna, the same defendant, this time
in the New York State Supreme Court, Erie County. Just like the
BE I complaint, the BE III complaint asserted causes of action
against Aetna for breach of implied-in-fact contract, unjust
enrichment, and declaratory relief, all based on Aetna's alleged
underpayment of insurance claims for emergency medical services
that Aetna's members received from the plaintiffs. See Jacob
Decl., Ex. 8 ("BE III Compl."), ECF No. 185-8, at ¶¶ 1, 83-119.
The BE III complaint concerned all of the insurance claims at
issue in the first action, as well as additional claims for
emergency services rendered after the BE I complaint was filed
on April 14, 2017. Compare BE I Compl. ¶ 2, with BE III Compl.
¶ 2; see Defs.' Memo. of Law at 14. The BE III complaint also
omitted nearly all references to the Emergency Services Act, and
instead added citations to, among other authorities, New York's
Wellcare case. See, e.g., BE III Compl. ¶¶ 54, 65. Aetna moved
to dismiss the BE III complaint, arguing that the plaintiffs'
claims were barred by the doctrines of res judicata and
collateral estoppel. See Jacob Decl., Ex. 9, ECF No. 185-9, at
3-10; id., Ex. 11, ECF No. 185-11, at 3-7.

The New York Supreme Court in Erie County dismissed the BE
III complaint, plainly construing it as an attempt to relitigate
claims that either were our could have been brought in the prior

25

action. See BE III, No. 810915/2019, at 30-31, 32-33.[9] The BE III
court explained that "the doctrine of res judicata" bars attempts
to "litigate a claim where a judgment on the merits exists from a
prior action between the same parties involving the same subject
matter," and also that this principle "applies not only to claims
actually litigated but to claims that could have been raised in
the prior litigation." Id. at 32 (collecting New York cases).
Thus, "[u]nder New York's transactional analysis," "once a claim
is brought to a final conclusion, all other claims arising out
of the same transaction or series of transactions are barred,
even if based upon different theories or if seeking a different
remedy." Id. (citing O'Brien v. City of Syracuse, 429 N.E.2d
1158, 1159 (N.Y. 1981)). Applying these principles, the BE III
court concluded that, notwithstanding the removal of references
to the Act, the BE III complaint was "virtually identical" to
the BE I complaint, id. at 33, in which the same plaintiffs had
"plead[ed] the same causes of action . . . seek[ing] the same
relief" against the same defendant, id. at 29-30. Accordingly,
the court determined that allowing the BE III claims to proceed
"would be inconsistent with what has already been decided," id.
at 33, namely that (1) the "nearly identical" claims in the prior
litigation were an "improper effort" to bring "a private cause of

---

[9] Citations to BE III refer to the pagination at the bottom of
each page.

action" under the Act, and (2) in any event, the plaintiffs had failed to allege the "equitable obligation" required to sustain a claim for unjust enrichment, id. at 29-30 (paraphrasing BE I and describing the First Department's reasoning in BE II). The BE III court dismissed the action in its entirety, without any analysis of whether the preclusive effect of the prior action applied to medical claims that accrued after the filing of the BE I complaint.

The Appellate Division, Fourth Department, affirmed the dismissal of the BE III complaint in BE IV. BE IV, 145 N.Y.S.3d at 446-47. In its opinion, the Fourth Department noted that the BE I and BE II courts had "reject[ed] . . . [the] plaintiffs' argument that the common-law claims that were asserted existed independent of the . . . Act." Id. It concluded its opinion with the following brief analysis as to whether the plaintiffs' BE III claims were precluded:

> Inasmuch as [the] plaintiffs' [previous] claims were brought to a final conclusion on the merits, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy. Finally, to the extent that [the] plaintiffs alleged claims in the current action that accrued after resolution of the prior action, those claims are similarly barred by collateral estoppel.

Id. at 447.

Relying on the decisions in BE III and BE IV, the defendants contend that "there have [now] been two sets of prior litigation

in which two different Appellate Divisions of the New York State
courts have determined that New York law does not permit [the]
[p]laintiffs to use common law unjust enrichment claims to seek
'reasonable value' payments" from insurers. Defs.' Memo. of Law
at 17. But just like the BE I and BE II courts, the BE III and
BE IV courts made no such determination. Neither the BE III court
nor the BE IV court interpreted the decisions in the prior action
as having held that common-law unjust enrichment claims seeking
the reasonable value of emergency care services are categorically
barred. Those courts merely observed that the decisions in BE I
and BE II rejected the plaintiffs' contention that they had
adequately alleged independent common-law claims and instead
dismissed the complaint as an improper attempt to plead a direct
violation of the Act. See BE III, No. 810915/2019, at 29-30; BE
IV, 145 N.Y.S.3d at 446-47. The BE III and BE IV courts then
applied principles of preclusion to put an end to what they
plainly viewed as a transparent attempt to relitigate the same
dispute against the same defendant based on "nearly identical"
factual allegations. To the extent the plaintiffs could have
alleged independent common-law claims against Aetna based on the
same set of facts, those claims were precluded in BE III and BE
IV because res judicata "broadly bars the parties . . . from
relitigating issues that . . . could have been raised in the
th[e] [prior] action." Paramount Pictures Corp. v. Allianz Risk

Transfer AG, 96 N.E.3d 737, 743 (N.Y. 2018); O'Brien, 429 N.E.2d at 1159 ("[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.").

The defendants make much of the fact that the Fourth Department applied collateral estoppel, or issue preclusion, to bar the plaintiffs from pursuing their case with respect to the subset of medical claims postdating those at issue in BE I and BE II. See BE IV, 145 N.Y.S.3d at 447. In the defendants' view, this collateral estoppel ruling establishes that the plaintiffs could not "bring[] new unjust enrichment claims . . . grounded solely in the common law" to "seek 'reasonable value' payments for emergency medicine services." Defs.' Reply, ECF No. 203, at 2 (emphases in original). But BE IV does not contain any language, whether in its single-sentence collateral estoppel analysis or otherwise, suggesting that the Fourth Department understood unjust enrichment claims based on the common law to be categorically barred in light of BE I, BE II, or some other source of New York law. Indeed, the question of whether emergency care providers generally, and the plaintiffs in particular, could ever bring viable unjust enrichment claims for the reasonable value of emergency medical services was not before the courts in BE I or BE II -- and accordingly, no ruling on that question could have

29

been given preclusive effect in BE IV. See, e.g., Simpson v. Alter, 911 N.Y.S.2d 405, 407 (2d Dep't 2010) (under the doctrine of collateral estoppel, "[p]reclusive effect may only be given to issues that were actually litigated, squarely addressed and specifically decided"). All that can be said about BE IV is that, in the court's view, the plaintiffs were precluded from adding post-BE I medical claims to a new complaint that was otherwise nearly identical to their prior complaint against the same defendant.

Indeed, if the Buffalo Emergency Cases in fact barred the plaintiffs' claims, then presumably these sophisticated defendants would have brought that purportedly case-dispositive issue to the Court's attention a long time ago. But the defendants' motion to dismiss, which was filed well after BE I, BE II, and BE III were decided, omitted any mention of the Buffalo Emergency Cases. The defendants now contend that the "issues in this case" were not "resolved with finality" until BE IV was decided. Defs.' Reply at 1; see id. at 3 (describing BE IV as "the final nail in the coffin, removing all possible doubt about whether [the] . . . unjust enrichment claims . . . are barred"). BE IV, however, added no new substance beyond what was contained in the earlier Buffalo Emergency Cases, and there is no reason why the defendants could not have cited BE I or BE II, the actual merits decisions on which the BE IV court's preclusion analysis relied, for the

30

proposition that the defendants now attribute to those cases. In any event, BE IV was decided in June 2021, three months before Judge Nathan's September 2021 ruling on the motion to dismiss -- and the defendants neither notified Judge Nathan of this supposed supplemental authority in advance of the decision, nor moved for reconsideration after Judge Nathan concluded that the plaintiffs had stated an unjust enrichment claim. The defendants likewise made no reference to the Buffalo Emergency Cases in their March 2022 motion for partial judgment on the pleadings, which sought dismissal of the unjust enrichment claim against UHG on grounds not previously argued. It was not until July 2022, over a year after BE IV was decided, that the defendants cited the Buffalo Emergency Cases to the Court. See ECF No. 164. And while the defendants now contend that the dispositive import of the Buffalo Emergency Cases is clear, the delay in identifying these cases for the Court suggests otherwise.

In short, the Buffalo Emergency Cases do not support the defendants' position that New York law categorically "preclude[s] or bar[s]" emergency medicine providers from "us[ing] common law unjust enrichment claims" to seek reimbursements from insurers for the "reasonable value" of "emergency medical services . . . rendered to members of [the insurer's] employer-sponsored health benefit plans." Defs.' Memo. of Law at 6, 1. Accordingly, the defendants' first argument in support of summary judgment fails.

**B.**

The defendants argue that, "[q]uite apart from" whether the
Buffalo Emergency Cases are "persuasive authority" on the merits,
those decisions preclude the plaintiffs from "relitigating the
exact same issue using the exact same arguments" in this action.
Defs.' Memo. of Law at 18-19 (emphases in original). For reasons
similar to those set forth above, this argument is without merit.

The doctrines of "res judicata, or claim preclusion," and
of "collateral estoppel, or issue preclusion," are "related to,
but distinct from" one another. Simmons v. Trans Express Inc.,
170 N.E.3d 733, 736-37 (N.Y. 2021). While "[u]nder res judicata,
. . . a valid final judgment bars future actions between the same
parties" on claims arising out of the same transaction, id. at
736, "[c]ollateral estoppel prevents a party from relitigating in
a subsequent action an issue clearly raised in a prior action or
proceeding and decided against that party . . . whether or not
the causes of action are the same," id. at 737. Because "the
consequences of a determination that a party is collaterally
estopped from litigating a particular issue are great, strict
requirements for application of the doctrine must be satisfied."
Gramatan Home Invs. Corp. v. Lopez, 386 N.E.2d 1328, 1331 (N.Y.
1979). First, "[t]he doctrine applies only where the issue in
the second action is identical to an issue which was raised,
necessarily decided[,] and material in the first action."

32

Simmons, 170 N.E.3d at 737; see Ryan v. N.Y. Tel. Co., 467 N.E.2d 487, 490 (N.Y. 1984) ("What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding. Of course, the issue must have been material to the first action or proceeding and essential to the decision rendered therein."). Second, the party seeking to relitigate an identical issue must have "had full and fair opportunity to litigate the issue in the earlier action." Simmons, 170 N.E.3d at 737.

As defined by the defendants, the "issue" that the plaintiffs are supposedly estopped from relitigating is "[t]he viability under New York law of a common law claim for unjust enrichment that seeks 'reasonable value' payments for emergency medicine services." Defs.' Reply at 4; see also Defs.' Memo. of Law at 22. The defendants contend that this issue was "already decided against [the plaintiffs] after fulsome litigation in the Buffalo Emergency [Cases]." Defs.' Memo. of Law at 22. But that is not correct. The question before the BE I and BE II courts was never whether common-law unjust enrichment claims for "reasonable value" payments are generally viable, but whether the causes of action in that particular case, as alleged, arose solely out of the provisions of the Emergency Services Act.[10] See, e.g., Aetna

---

[10] Indeed, Aetna clarified this very point in its BE I reply papers. In response to the plaintiffs' argument that dismissal of the BE I complaint would leave the plaintiffs with "no remedy at all for Aetna[']s alleged underpayments," Aetna stated:

BE I Memo. at 6 (citing specific allegations from the plaintiffs'
complaint to argue that "[a]lthough facially pleaded under state
common law, each of [the] [p]laintiffs' claims arises from and
is intended to enforce the provisions contained in the [Emergency
Services] Act"); BE I, 2017 WL 5668420, at *2 ("[Aetna] never
argued that [the] plaintiffs' claims were preempted, only that
they are dependent on a statute that does not allow for a private
right of action."). And because the issue for which the defendants
cite the Buffalo Emergency Cases was never actually "raised," it
was not "necessarily" litigated between Aetna and the plaintiffs.
Simmons, 170 N.E.3d at 737. Nor was that issue "material" to the
decision in BE I, which turned entirely on the finding that the
plaintiffs had improperly relied on the Act as the exclusive
source of Aetna's legal duties, or to the decision in BE II,
which agreed with that conclusion and identified other pleading
defects specific to the complaint. See Ryan, 467 N.E.2d at 490
(for collateral estoppel to apply, "the issue must have been

That is not true. While [the] [p]laintiffs are
prohibited from asserting claims that seek to enforce
the Act, they could have attempted to contend that
Aetna did not pay the reasonable value of the services
as measured by their value in the community where they
are rendered and by the person who rendered them.
[The] [p]laintiffs have not done so in this case,
relying exclusively and incorrectly on the Act instead.
Jacob Decl., Ex. 4, ECF No. 185-4, at 4 n.1.

material . . . and essential to the decision rendered" in the
previous litigation).

Likewise, the decisions in BE III and BE IV did not depend
at all on an inquiry into the general "viability" of the sort of
common-law unjust enrichment claims asserted here. Those decisions
rested solely on the application of preclusion principles to the
rulings in BE I and BE II. And because those prior decisions did
not discuss, much less resolve, the issue of whether common-law
unjust enrichment claims for "reasonable value" payments could
ever be viable, the preclusive effect applied in BE III and BE
IV could not have encompassed that issue.

In short, the issue for which the defendants invoke the
doctrine of collateral estoppel in this case is not identical to
any issue raised, necessarily litigated, or actually decided in
the Buffalo Emergency Cases. Accordingly, the plaintiffs are not
collaterally estopped from relying on their common-law theory of
unjust enrichment, which the Court already found to be adequately
alleged, in order to seek reimbursement for the reasonable value
of emergency medical care provided to the defendants' members.

## CONCLUSION

The Court has considered all of the parties' arguments. To
the extent not specifically addressed above, those arguments are
either moot or without merit. For the foregoing reasons, the

defendants' motion for summary judgment is **denied.** The Clerk is respectfully directed to close ECF No. 182.

**SO ORDERED.**

Dated:      New York, New York
            April 4, 2023

                                    John G. Koeltl
                            United States District Judge