**O'Melveny**

O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006-4061

T: +1 202 383 5300
F: +1 202 383 5414
omm.com

September 1, 2023

Honorable John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
Southern District of New York
New York, New York 10007-1312

APPLICATION GRANTED
SO ORDERED

*6 Kelt*

John G. Koeltl, U.S.D.J.

9/5/23

Greg Jacob
D: +1 202 383 5110
gjacob@omm.com

Re:   *Emergency Physician Servs. of New York, et al. v. UnitedHealth Grp., Inc., et al.,*
Case No. 1:20-cv-09183 – Motion to Seal Exhibits of the Declarations of Gregory
Jacob and Erika Mayers in Support of Defendants' Motion for Summary Judgment

In accordance with Rules I.A and III.F of Your Honor's Individual Practices in Civil Cases, Rule 2 of Your Honor's Emergency Individual Rules & Practices, SDNY Local Rule 7.1(d), the SDNY's Sealed Records Filing Instructions, and the Confidentiality Stipulation and Protective Order in effect in this action (the "Protective Order") (Dkt. No. 110), Defendants UnitedHealth Group, Inc. ("UHG"), United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, UnitedHealthcare Insurance Company, and Oxford Health Plans LLC (collectively, "Defendants") request that the Court grant Defendants leave to file under seal certain exhibits of the Declaration of Gregory Jacob (the "Jacob Declaration") and the Declaration of Erika Mayers (the "Mayers Declaration") in Support of Defendants' Motion for Summary Judgment .

Although documents "relevant to the performance of the judicial function and useful in the judicial process" are entitled to a presumption of public access, the presumption of access must be balanced against "competing considerations." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006). Among the relevant countervailing factors are the "privacy interests of those resisting disclosure," and the "nature and degree of injury" that will result from disclosure. *Id.* at 120.

A litigant's interest in keeping confidential its highly sensitive business and financial information is sufficient to tip the scale in favor of sealing the documents that contain such information. *See GoSMiLE, Inc. v. Dr. Jonathan Levine, D.M.D. P.C.*, 769 F. Supp. 2d 630, 649– 50 (S.D.N.Y. 2011) (granting motion to seal documents containing "highly proprietary material concerning the defendants' marketing strategies, product development, costs and budgeting"). Similarly, if the disclosure of a litigant's confidential business information places such party at risk of competitive harm, there is compelling justification for sealing the documents containing such information. *See Haley v. Teachers Ins. and Annuity Assn. of Am.*, 2020 WL 3618573, at *1 (S.D.N.Y. July 2, 2020) ("The sealing of documents may be justified to preserve higher values, including the need to protect an entity from competitive injury.") (citing *Lugosch*, 435 F.3d at 124).

Exhibits 5, 7, 9-10, 16-17, 19, 21-22, 30-34, 36, 48, 52-54, 59-60, and 70 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive information regarding TeamHealth Plaintiffs' business such as financial information concerning the average cost to provide emergency department care and the average

Case 1:20-cv-09183-JGK-SN   Document 456   Filed 09/01/23   Page 2 of 4

**O'Melveny**

reimbursement payment TeamHealth received per emergency department visit from various payors, including Defendants; nonfinancial information concerning internal business processes, practices, and standards; strategy concerning TeamHealth Plaintiffs' position on reasonable reimbursement rates considered for or conveyed through the parties' national negotiations for entering into network agreements; strategy concerning TeamHealth Plaintiffs' contracts and negotiations with facilities at which TeamHealth Plaintiffs' contracted and hired physicians rendered emergency medicine services; and proposed strategies for dealing with new surprise billing legislation.  These include the following exhibits, which are deposition transcripts that contain sensitive information that either or both of TeamHealth Plaintiffs and Defendants have designated "Confidential" or "Attorneys' Eyes Only" under the Protective Order: 2, 5-7, 11, 15, 17, 34, 40 48, 68-69, 72-73, and 75.  The disclosure of such commercially sensitive information could place Defendants at a commercial disadvantage, as such information could be used by other commercial insurance payors and hospital groups in negotiations for contracted rates of payment and could negatively impact TeamHealth Plaintiffs' bargaining position in future negotiations. Accordingly, such information should be redacted. *See GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

Exhibits 24-27, 29, 35, 40, 42, 57, 69, 72-75, and 77-78 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive information regarding Defendants' business such as information and data concerning the average reimbursement the various Defendants paid to TeamHealth Plaintiffs as out-of-network providers per emergency department visit; Defendants' proprietary business strategy concerning the structure of their health benefit plans with customers and fees associated with those plans; strategy concerning Defendants' position on reasonable reimbursement rates considered for or conveyed through the parties' national negotiations for entering into network agreements; and Defendants' confidential strategy pertaining to their relationship with non-party Equity Healthcare. These include the following exhibits, which are deposition transcripts that contain sensitive information that either or both of TeamHealth Plaintiffs and Defendants have designated "Confidential" or "Attorneys' Eyes Only" under the Protective Order: 11.  The disclosure of such commercially sensitive information could place Defendants at a commercial disadvantage, as such information could be used by other commercial insurance payors and provider groups in negotiations for contracted rates of payment and could negatively impact Defendants' bargaining position in future negotiations.  Accordingly, such information should be redacted. *See GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

Exhibit 11 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive information regarding non-party Equity Healthcare's business such as information relating to the parties' confidential national negotiations; nonfinancial information concerning TeamHealth Plaintiffs' and TeamHealth Holdings, Inc.'s business processes, practices, and standards; and information concerning Defendants' out-of-network programs.  The disclosure of such commercially sensitive information could place both Defendants and TeamHealth Plaintiffs at a competitive disadvantage.  Accordingly, such information should be redacted. *See GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

Exhibits 12-14, 20, 23, 37-38, 39, and 42 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive information regarding confidential and proprietary agreements, such as an agreement between non-party Equity Healthcare and Defendants; an agreement between Buffalo Emergency Associates, LLP and Emergency Physician Associates, LLC; a draft agreement between defendant UHC and plaintiff Emergency Physician Services of New York; an agreement between Defendants and Emergency

O'Melveny

Physician Services of NY, PC; an agreement and amendment between non-party POMCO and TeamHealth Plaintiff Emergency Care Services of New York; an agreement between United Healthcare Empire Plan Agreement and Buffalo Emergency Associates, LLP, Emergency Care Services of NYPC, Emergency Physician Services of NY, P C, and Exigence Medical of Binghamton, PLLC; the Administrative Services Agreement between Defendants and Estée Lauder Companies, Inc.; and various agreements, amendments, and associated documents between TeamHealth Plaintiffs and facilities at which TeamHealth Plaintiffs' contracted and hired physicians rendered emergency medicine services.   The disclosure of such commercially sensitive information could place the signatories to these agreements at a competitive disadvantage by making public confidential and proprietary information that would give competitors insight into the business dealings of parties and non-parties alike. Accordingly, such information should be redacted. *See GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

Exhibits 3, 45, 56, and 115 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive information used in expert reports served in this case.   Those reports contain commercially sensitive information on which Defendants' retained outside experts relied or calculated, including information and data pertaining to TeamHealth Plaintiffs' total billed charge amount for the disputed claims in the case; Defendants' total allowed amount on those claims; and calculations of amounts using percentages of billed charges, percentages of Medicare, and average charges and allowed amounts per claim.   The disclosure of such commercially sensitive information could place Defendants at a commercial disadvantage, as such information could be used by other commercial insurance payors and provider groups in negotiations for contracted rates of payment and could negatively impact Defendants' bargaining position in future negotiations.   Such disclosure would also place TeamHealth Plaintiffs at a competitive disadvantage as such information could be used by other commercial insurance payors and hospital groups in negotiations for contracted rates of payment and could negatively impact TeamHealth Plaintiffs' bargaining position in future negotiations. Accordingly, such information should be redacted. *See GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

Exhibits 105, 107-10, 115-18 of the Jacob Declaration discuss Confidential Information, as defined in the Protective Order, and include sensitive health benefit claims data contained in TeamHealth Plaintiffs' disputed claims list and Defendants' and TeamHealth Plaintiffs' confidential market data.   These exhibits include sensitive personally identifiable information ("PII"), which is protected from public disclosure by the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations ("HIPAA").   Courts routinely seal PII as its privacy is mandated by federal law. *See Valentini v. Grp. Health Inc.*, 2020 WL 7646892, at *2 (S.D.N.Y. Dec. 23, 2020). Defendants' and TeamHealth Plaintiffs' market data also contains commercially sensitive information pertaining to rate reimbursement that, if disclosed, would place the parties at a commercial disadvantage.   This also includes TeamHealth Plaintiffs' production of spreadsheets containing non-public charge benchmark data, claims that TeamHealth Plaintiffs allege were paid or administered by Defendants under a wrap or rental agreement, and claims that TeamHealth Plaintiffs allege were allowed by Defendants at TeamHealth Plaintiffs' full billed charges.   Accordingly, such information should be redacted. *GoSMiLE, Inc.*, 769 F. Supp. 2d at 649–50.

All of these materials are Confidential Information within the meaning of the Protective Order filed in this case. Dkt. No 110.   Pursuant to Paragraph 22 of the Protective Order, "[i]f a Party seeks to file unredacted Confidential Information or Attorneys' Eyes Only information, it shall file a motion with the Court for filing under seal, unless the producing Party otherwise agrees." *Id.*

**O'Melveny**

Therefore, in accordance with the Protective Order, Defendants hereby request that the Court permit Defendants to file the above items under seal.

Respectfully Submitted,

*/s/ Greg Jacob*

Greg Jacob,
for O'MELVENY & MYERS LLP

cc:      Counsel of Record (via ECF)