**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**EMERGENCY PHYSICIAN SERVICES OF NEW**
**YORK, ET AL.,**

               **Plaintiffs,**

      **- against -**

**UNITEDHEALTH GROUP, INC., ET AL.,**

               **Defendants.**
────────────────────────────────────

      **20-cv-9183 (JGK)**

      <u>**OPINION AND ORDER**</u>

**JOHN G. KOELTL, District Judge:**

    The plaintiffs, various emergency medical care providers in New York, brought this action against the defendants, commercial health insurer UnitedHealth Group, Inc. ("UHG") and certain of its subsidiaries and affiliates, alleging that the defendants failed to reimburse the plaintiffs for the reasonable value of emergency medical services provided to the defendants' insured members.

    In September 2021, the Court dismissed several of the plaintiffs' causes of action, leaving only the claims for unjust enrichment and declaratory relief. <u>See</u> <u>Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc.</u>, No. 20-cv-9183, 2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021) (Nathan, J.) ("MTD Opinion"). The defendants subsequently moved for summary judgment on the ground that four state court decisions arising out of litigation between the plaintiffs and the defendants'

competitor, Aetna, Inc., barred the plaintiffs' common-law unjust enrichment claim in this action. Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2023 WL 2772285 (S.D.N.Y. Apr. 4, 2023) (Koeltl, J.) ("MSJ Opinion"). On April 4, 2023, the Court denied the defendants' motion for summary judgment. Id.

The defendants now move for summary judgment primarily on the grounds that (1) the plaintiffs' unjust enrichment claim is preempted by the Federal Employee Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 1104, 1308, 5109, & 8901–13, and by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq, and (2) the plaintiffs have not satisfied the elements of their unjust enrichment claim. See Defs.' Mem. of Law in Supp. for Summ. J. ("Defs.' Mem.") at 2—3, ECF No. 457.

For the reasons explained below, the defendants' motion for summary judgment is **denied**.

## I.

The following facts are taken from the parties' Local Rule 56.1 statements, counterstatements, and supporting papers and are undisputed unless otherwise noted. The Court also assumes familiarity with the Court's prior decision denying the defendants' motion for summary judgment, including its extensive description of the facts and the procedural history of this case. See generally MSJ Opinion, 2023 WL 2772285.

**A.**

The plaintiffs, Emergency Physicians of New York PC, Buffalo Emergency Associates LLP, Exigence Medical of Binghamton PLLC, and Emergency Care Services of New York PC, are companies that contract with New York emergency departments to staff those departments with medical professionals, including nurses and physicians. See Pls.' Response to Defs.' Rule 56.1 Statement ("Pls.' 56.1 Response") ¶ 15, ECF No. 475. In addition to UHG, the defendants include United HealthCare Services, Inc., UMR, Inc., UnitedHealthcare Service LLC, Oxford Health Plans LLC, and UnitedHealthcare Insurance Company, several entities that insure or administer employer-sponsored health benefit plans.[1] See Defs.' Rule 56.1 Statement ("Defs.' 56.1 Statement") ¶¶ 11-12, ECF No. 464. These plans can be fully-insured, in which case a plan sponsor purchases insurance and the defendants both administer the plan and pay for plan benefits out of their own funds, or self-funded, in which case the plan sponsor covers plan benefits with its own funds and pays fees to the defendants for their administration of the plan. See id. ¶13. Certain of

---

[1] The parties dispute whether UHG itself insures or administers employer-sponsored health benefit plans, or whether UHG instead serves only as a holding company. See, e.g., Pls.' 56.1 Response ¶ 12. The Court previously determined that UHG is a proper party to the action, irrespective of whether it administers or insures health benefit plans. See Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2022 WL 4087596, at *2 (S.D.N.Y. Sept. 6, 2022).

these health benefit plans are also governed by ERISA and FEHBA. See id. ¶ 113.[2]

The plaintiffs do not have written contracts with the defendants to specify the rates of payment for the plaintiffs' emergency medical services, and accordingly, the plaintiffs are "out-of-network" providers with respect to the defendants' plan members. See Pls.' Counterstatement of Undisputed Material Facts ("Pls.' 56.1 Counterstatement") ¶¶ 15, ECF No. 476; see also Am. Compl. ¶ 28, ECF No. 97. The plaintiffs allege that the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), codified at 42 U.S.C. § 1395dd, legally obligates them to treat all plaintiffs who present at the emergency departments that they staff regardless of insurance status or ability to pay. Id. ¶ 8; see also Am. Compl. ¶¶ 21—24.[3]

When the plaintiffs render emergency care to patients with employer-sponsored health benefit plans insured or administered by the defendants, the plaintiffs submit their claims for reimbursement to the defendants directly. Pls.' 56.1 Response ¶ 56; see also Am. Compl. ¶ 26. Although the parties dispute

---

[2] The parties dispute which claims are governed by ERISA and FEHBA, see Pls.' 56.1 Response ¶ 113, but the plaintiffs seemingly do not contest that at least some claims are governed by each.

[3] The defendants dispute this assertion. Defs.' 56.1 Statement ¶ 63 ("EMTALA does not apply to . . . [the] [p]laintiffs themselves.").

certain aspects of the claim adjudication process, all agree
that one of the defendants will eventually make a coverage
determination as to a particular medical claim, and if the claim
is covered, the defendant will then specify the amount to be
paid for the relevant plaintiff's services. Defs.' 56.1
Statement ¶¶ 88, 91 (indicating that the plan terms inform these
choices); see also Am. Compl. ¶ 27.

Plan documents provide the methodology for determining
payment.[4] Defs.' 56.1 Statement ¶ 85. The documents for different
plans have different reimbursement schedules for out-of-network
providers such as the plaintiffs. For example, one plan document
instructs the defendants to pay "the higher of: [1] The median
amount negotiated with Network providers for the same services;
[2] 110% of the published rates allowed by the Centers for
Medicare and Medicaid Services (CMS) for the same or similar
services within the geographic market; [or] [3] The amount that
would be paid under Medicare . . . for the same service."[5] Id. ¶
85 (Ironform plan document). Another sets reimbursement at "70

---

[4] As discussed below, the plaintiffs dispute this, and instead
allege that the health benefit plans allow the defendants broad
discretion to determine payment for claims. Pls.' 56.1 Response
¶ 85.

[5] Unless otherwise noted, this Opinion and Order omits all
alterations, omissions, emphasis, quotation marks, and citations
in quoted text.

percent of the reasonable and customary rate based on information provided by a third-party vendor based on the geographic area where the services were rendered." Id. (New York State Nurses Association plan document). Another uses, "the highest of the: [1] Median Allowable Charge for Network Emergency Services; [2] Reasonable and Customary (R&C) (or similar amount determined using the Program's general method for determining payments for Non-Network Services); or [3] Amount that would be allowable under Medicare." Id. (AT&T plan document).

However, the plaintiffs cite less specific language from other plans, see Pls.' 56.1 Counterstatement ¶ 13 ("Eligible Expenses [for emergency services] are an amount negotiated by United HealthCare or an amount permitted by law.") and language that provides the defendants with the discretion to determine payment, see, e.g., Pls.' 56.1 Response ¶ 85 ("Gap, Inc. has delegated to United Healthcare the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the plan.").

For certain self-funded plans, if the defendants "pay[] an out-of-network clinician less than the clinician's billed charges, [they] charge[] [the] customer a fee, known as a shared

6

savings fee." Pls.' 56.1 Counterstatement ¶ 19.[6] This fee is a percentage of the difference between the amount that would be payable to the healthcare provider absent the discount and the amount the insurer actually pays after application of the discount. Id. ¶¶ 20—21.

As stated in the defendants' Local Rule 56.1 Statement, the plaintiffs "generally alleg[e] that they were being underpaid for the services provided to members of health plans insured or administered by [the] [d]efendants." Defs.' 56.1 Statement ¶ 1. The plaintiffs maintain that they are entitled to the "reasonable fair market value" of the emergency services provided to the defendants' plan members. Pls.' 56.1 Counterstatement ¶ 9; see also Am. Compl. ¶ 32, 67—69. The defendants dispute this assertion and allege that the defendants' "reimbursement was equal to around 2.2. to 3.2 times the . . . [p]laintiffs' costs," Defs.' 56.1 Statement ¶ 69, and suggest that the plaintiffs "expect commercial insurers like [the] [d]efendants to subsidize the costs that . . . [the] [p]laintiffs incur from treating uninsured and government-insured patients," Id. ¶ 76.

---

[6] The defendants dispute the plaintiffs' characterization of the shared savings fees but not their existence. Defs.' Response to Pls.' Counterstatement ¶ 19, ECF No. 490.

**B.**

The plaintiffs commenced this action in November 2020. The original complaint, which named UHG and Multiplan, Inc. ("Multiplan") as defendants, asserted claims for violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); a claim for declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201; and claims for unjust enrichment and breach of implied-in-fact contract under New York law. See ECF No. 1. The complaint alleged generally that the defendants were engaged in a scheme to underpay the plaintiffs for emergency medical services "provided to [UHG's] insureds," id. ¶¶ 3—5, and that this failure to pay "the reasonable value of the services rendered" benefited the defendants at the plaintiffs' expense, id. ¶¶ 797—799.

UHG and Multiplan moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) in January 2021. See ECF Nos. 28, 30. In a September 28, 2021 Memorandum Opinion and Order, Judge Nathan dismissed the RICO claims and the state-law claim for breach of an implied-in-fact contract but allowed the claims for unjust enrichment and declaratory relief to proceed against UHG. See MTD Opinion, 2021 WL 4437166, at *13. Judge Nathan rejected UHG's contention that the plaintiffs had failed to plead unjust enrichment under New York law, explaining that "New York courts have found . . . that where, as here, a

8

hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees." Id. at *12 (quoting N.Y.C. Health & Hosps. Corp. v. Wellcare of N.Y., Inc. ("Wellcare"), 937 N.Y.S.2d 540, 545 (Sup. Ct. 2011)).

Judge Nathan likewise rejected UHG's argument that allowing the unjust enrichment claim would encourage emergency medicine providers to "grossly inflate their bills." Id. at *13; see ECF No. 46 at 10. This concern was unfounded, Judge Nathan explained, because UHG's alleged "duty is to pay [the] [p]laintiffs a 'reasonable' rate for their services, not to pay whatever amount [the] [p]laintiffs decide to bill." MTD Opinion, 2021 WL 4437166, at *13. Judge Nathan added that "an equally unappealing outcome could result from [UHG's] position that [the] [p]laintiffs have no recourse if [UHG] fails to reasonably compensate them," because such a rule "would conceivably incentivize insurers like [UHG] to pay as little as possible while [the] [p]laintiffs remain obligated to treat [UHG's] insureds." Id.

Discovery ensued, and on February 24, 2022, the plaintiffs filed an amended complaint limited to their remaining claims for unjust enrichment and declaratory relief. See Am. Compl. ¶¶ 62—82. The plaintiffs removed Multiplan from the pleading and added

as defendants the UHG subsidiaries and affiliates listed above.
The amended complaint alleges that the plaintiffs are "legally
obligated to treat all patients" in their emergency departments
regardless of insurance status, id. ¶ 3, that they have provided
medical care to thousands of patients insured by the defendants,
id. ¶ 19, and that in doing so, the plaintiffs "conferred a
benefit" on the defendants, because UHG "owes its insureds an
obligation to make sure [that they] receive covered medical
services," id. ¶¶ 70—71.

The plaintiffs further allege that they provide such care
to the defendants' insureds on an "out-of-network" basis,
meaning that they lacked a contract with the defendants
establishing the rates to be paid, and accordingly, the
plaintiffs "were dependent on [the defendants] to . . . pay
[the] [p]laintiffs the reasonable value of the emergency care
provided . . . as required under New York law." Id. ¶ 29 (citing
Wellcare, 937 N.Y.S.2d at 545, and N.Y. Fin. Serv. Law § 605
(a)). The defendants, however, are alleged to have paid the
plaintiffs "substantially less than the reasonable value of the
emergency care provided," id. ¶ 27, which allowed the defendants
to "generate additional and substantial [member] fees" based on
the supposed "savings" to their insureds. Id. ¶ 18; see, e.g.,
id. ¶¶ 46—47, 64. Thus, the amended complaint alleges that the
defendants breached their "equitable obligation" to "pay [the]

10

[p]laintiffs the reasonable value of the services rendered," id. ¶¶ 30–31, thereby "unjustly enrich[ing]" themselves at the plaintiffs' expense, id. ¶¶ 5, 31, 73.

Based on these allegations, the plaintiffs seek unjust enrichment damages equivalent to "the difference between the reasonable value of the [emergency medical] services . . . rendered and the amounts allowed by [the defendants] for such services, plus the time-value of that money." Id. ¶¶ 69, 75. The plaintiffs also seek a declaratory judgment providing, as relevant here, that (1) "the rates paid by [the defendants] for the [medical] claims at issue are inadequate and violate [their] obligation to pay [the] [p]laintiffs for services rendered [to the defendants' insureds] at a reasonable value," and (2) this obligation to pay the plaintiffs "for emergency medical services . . . at the reasonable value thereof" applies "prospectively." Id. ¶¶ 81–82. The plaintiffs subsequently clarified that they only seek a declaration of the proper reimbursement for claims occurring between July 2021 and December 31, 2021. See Pls' Mem. of Law in Opp. to Defs' Mot. for Summ. J. ("Opp. Mem.") at 40, ECF No. 474.

The defendants filed an answer and brought a motion for partial judgment on the pleadings, in which they argued that UHG was not a proper party to the action because it is a "holding company" without any role in administering health benefit plans.

11

ECF No. 114 at 1—2. This Court rejected that argument, reasoning that "regardless of whether UHG is responsible for administering health benefit plans or adjudicating health benefit claims," the plaintiffs adequately "alleged that UHG benefitted financially" from its subsidiaries' "failure to reimburse [the] [p]laintiffs [for] the reasonable value of the services provided." Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc., No. 20-cv-9183, 2022 WL 4087596, at *2 (S.D.N.Y. Sept. 6, 2022) ("Rule 12(c) Opinion"). Thus, "the plaintiffs ha[d] pleaded a direct unjust enrichment claim against UHG," and the defendants' motion for partial judgment on the pleadings was denied. Id.

In July 2022, deep into discovery and with the motion for partial judgment on the pleadings still pending, UHG requested leave to file a summary judgment motion on a "case-dispositive issue"—namely, its argument that the unjust enrichment claims "are barred as a matter of law" in light of several state court decisions arising out of "prior litigation" involving the same plaintiffs against Aetna. ECF No. 164 at 19—20. This Court declined to stay discovery but allowed the defendants to make their motion. ECF No. 176. On September 1, 2022, five days before the decision on the motion for partial judgment on the pleadings, the defendants moved for summary judgment. See ECF No. 182.

In their motion for summary judgment, the defendants contended that a line of New York cases described by the defendants as the Buffalo Emergency quadrilogy held that the New York Emergency Medical Services and Surprise Bills Act, codified at New York Financial Services Law §§ 601 et seq, "does not permit healthcare providers to use common law unjust enrichment claims to pursue reasonable value payments" for "emergency medicine services . . . rendered to members of employer-sponsored health benefit plans." ECF No. 184 at 7. They further argued that because the same plaintiffs litigated and lost on the unjust enrichment issue in the Buffalo Emergency cases, collateral estoppel precluded these plaintiffs from relying on an unjust enrichment claim here. See id. at 18.

This Court rejected those arguments, reasoning that the New York State Supreme Court's holding in Buffalo Emergency Assocs., LLP v. Aetna Health, Inc., No. 651937/2017, 2017 WL 5668420 (Sup. Ct. Nov. 27, 2017) ("BE I") was "case-specific," "grounded in the defects of a particular pleading," and did "not support the defendants' position . . . that the [New York Emergency Medical Services] Act categorically precludes common-law unjust enrichment claims seeking insurance payments for emergency medical services at a reasonable value." See MSJ Opinion, 2023 WL 2772285, at *6. The Court further found that the First Department's affirmance in Buffalo Emergency Assocs., LLP v.

13

Aetna Health, Inc., 87 N.Y.S.3d 877, 877 (App. Div. 2018) ("BE
II"), "referr[ed] not to the preclusion of independent common-
law claims generally but to the absence of any statutorily
authorized private right of action to enforce the Act's
provisions." Id. This Court then concluded that the decisions in
Buffalo Emergency Assocs., LLP v. Aetna Health, Inc., No.
810915/2019, NYSCEF Doc. No. 44 (Sup. Ct. Mar. 10, 2020) ("BE
III") and Buffalo Emergency Assocs., LLP v. Aetna Health, Inc.,
145 N.Y.S.3d 446 (App. Div. 2021) ("BE IV") "simply applied
principles of preclusion to deny the plaintiffs a second chance
to litigate their case against the same defendant in a different
New York forum." Id. at *7.

     In September 2023, the defendants filed this motion for
summary judgment, arguing in large part that: (1) the
plaintiffs' unjust enrichment claim is preempted by federal law;
and (2) the plaintiffs failed to satisfy the elements of unjust
enrichment. See ECF No. 455. The Court heard oral argument on
the motion on September 12, 2024.

                                **II.**

     The standard for granting summary judgment is well
established. "The court shall grant summary judgment if the
movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477

                                 14

U.S. 317, 322—23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224. However, "disputed legal questions . . . present nothing for trial and are appropriately resolved on a motion for summary judgment." Flair Broad. Corp. v. Powers, 733 F. Supp. 179, 184 (S.D.N.Y. 1990).

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the materials in the record that "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the movant meets that burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis omitted). At the summary judgment stage, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. See id. The substantive law governing the case will identify those facts that are material and, "[o]nly dispute[] over facts that might affect the outcome of the suit under the governing law

will properly preclude the entry of summary judgment." Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### III.

The defendants initially move for summary judgment on the
ground that ERISA and FEHBA expressly preempt the plaintiffs'
unjust enrichment claim. Express preemption "occurs when Congress
withdraws specified powers from the States by enacting a statute
containing an express preemption provision." Wurtz v. Rawlings
Co., 761 F.3d 232, 238 (2d Cir. 2014). By contrast, under
complete preemption, a plaintiff's "cause of action may be
recast as a federal claim for relief, making its removal by the
defendant proper on the basis of federal question jurisdiction."
Id. at 238. The Court previously held that the plaintiffs' claims
were not completely preempted pursuant to Aetna Health Inc. v.
Davila, 542 U.S. 200 (2004). See MTD Opinion, 2021 WL 4437166, at
*9–10. Only the defendants' express preemption argument remains.

### A.

ERISA provides that the Act "shall supersede any and all
State laws insofar as they may now or hereafter relate to any
employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a).
However, "ERISA's nearly limitless 'relates to' language offers
no meaningful guidelines to reviewing judges" and courts have
been "reluctant to find that Congress intended to preempt state
laws that do not affect the relationships among" "the core ERISA

16

entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself." Gerosa v. Savasta & Co., 329 F.3d 317, 323 (2d Cir. 2003). The United States Supreme Court has provided further guidance and identified two categories of state laws that "relate to" and thus are preempted by ERISA: (1) laws referring to ERISA plans and (2) laws with an impermissible connection to ERISA plans. See Rutledge v. Pharm. Care Mgmt. Ass'n, 592 U.S. 80, 86—87, 88—89 (2020); Gobeille v. Liberty Mut. Ins. Co., 577 U.S. 312, 319—20 (2016); Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001).

First, ERISA preempts state laws that "refer to" ERISA plans. A state law references ERISA where it "acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." Gobeille, 577 U.S. at 319—20; see also Cal. Div. of Lab. Stds. Enf't v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325 (1997). A state law that applies to an insurer regardless of "whether or not they manage an ERISA plan" does not "act immediately and exclusively" on such a plan. See Rutledge, 592 U.S. at 88. Similarly, the existence of ERISA plans is not "essential" to a state law's application where the state law regulates the parties "whether or not the plans they service fall within ERISA's coverage" Id. at 89; see also N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers

Ins. Co., 514 U.S. 645, 656 (1995). In short, state laws that treat ERISA and non-ERISA plans evenhandedly do not "refer to" ERISA plans for preemption purposes.

Second, ERISA preempts state laws that have an "impermissible connection with ERISA plans." Rutledge, 592 U.S. at 86—87. To evaluate whether a state law has an impermissible connection with an ERISA plan, courts first "consider[] ERISA's objectives 'as a guide to the scope of the state law that Congress understood would survive.'" Id. at 86 (quoting Dillingham, 519 U.S. at 325). Accordingly, the United States Supreme Court has observed that "ERISA was enacted to make the benefits promised by an employer more secure by mandating certain oversight systems and other standard procedures," id. (quoting Gobeille, 577 U.S. at 319—20), and also "ensur[es] that plans do not have to tailor substantive benefits to the particularities of multiple jurisdictions," id.

Pursuant to these guiding principles, when evaluating whether a state law has an impermissible connection with an ERISA plan, courts ask whether the state law "governs a central matter of plan administration or interferes with nationally uniform plan administration." Id. at 86—87 (quoting Gobeille, 577 U.S. at 319—20). Specifically, state laws have been preempted where they "requir[e] payment of specific benefits," id. at 86—87 (citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85 (1983)), where they

18

"bind[] plan administrators to specific rules for determining beneficiary status," id. at 87 (citing Egelhoff, 532 U.S. 141 (2001)), or where "acute, albeit indirect, economic effects of the state law force an ERISA plan to adopt a certain scheme of substantive coverage," id. at 87 (quoting Gobeille, 577 U.S. at 320). However, "not every state law that affects an ERISA plan or causes some disuniformity in plan administration has an impermissible connection with an ERISA plan," particularly where "a law merely affects costs." Id. at 87. For example, "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." Id. at 88.

The United States Supreme Court addressed ERISA preemption most recently in Rutledge, a case with largely analogous facts. In Rutledge, the Court held that an Arkansas law requiring pharmacy benefit managers ("PBMs") to reimburse pharmacies at a rate equal to or greater than the rate the pharmacy paid to acquire drugs was not preempted by ERISA even though the law would likely result in ERISA plans paying higher prices for prescription drug benefits in Arkansas than elsewhere. See 592 U.S. at 86, 88. The PBMs were not ERISA plans themselves and instead acted as "intermediaries between prescription-drug plans and the pharmacies" used by the plans' beneficiaries. Id. at 83—84. In its holding, the Court stressed that the Arkansas law (1)

19

applied to PBMs regardless of whether they managed benefits for ERISA or non-ERISA plans, id. at 88—89, and (2) merely increased costs and did not require ERISA plans to structure benefits in a particular way, noting that "cost uniformity was almost certainly not an object of pre-emption," id. at 86—88.

After Rutledge, other district courts have considered the question of ERISA preemption and generally concluded that preemption does not bar various state law claims. See Vanguard Plastic Surgery, PLLC v. UnitedHealthcare Ins. Co., 658 F. Supp. 3d 1250, 1255—60 (S.D. Fla. 2023) (concluding "Rutledge is . . . plainly relevant" where the state laws addressed reimbursement rates and did not "require plans to provide any particular benefit to any particular beneficiary in any particular way"); NEMS PLLC v. Harvard Pilgrim Health Care of Conn. Inc., 615 F. Supp. 3d 125, 141—42 (D. Conn. 2022) (concluding that "at most, the [Connecticut] Surprise Billing Law slightly increases costs for ERISA plans" and is thus not preempted); ACS Primary Care Physicians Sw., P.A. v UnitedHealthcare Ins. Co., 514 F. Supp. 3d 927, 941—42 (S.D. Tex. 2021) (finding that statutes requiring insurers to reimburse emergency care at a usual and customary rate "equate to cost regulation that does not bear an impermissible connection with or reference to ERISA"), rev'd on other grounds, 60 F.4th 899 (5th Cir. 2023); Emergency Servs. of Okla., P.C. v. AetnaHealth, Inc., 556 F. Supp. 3d 1259, 1263-65

(W.D. Okla. 2021) ("[T]he Oklahoma common law doctrines under which [the] [p]laintiffs bring their claims operate akin to rate regulations and, accordingly, are not preempted."); Fla. Emergency Physicians Kang & Assocs., M.D., Inc. v. United Healthcare of Fla., Inc., 526 F. Supp. 3d 1282, 1297—99 (S.D. Fla. 2021) (finding state laws not preempted in part because they "fundamentally regard the rate at which third-party providers are reimbursed and the way that reimbursement rate is calculated").

By contrast, the defendants rely on Nathaniel L. Tindel, M.D., LLC v. Excellus Blue Cross Blue Shield, No. 5:22-cv-971, 2023 WL 3318489 (N.D.N.Y. May 9, 2023), where the court concluded that "because the nature of the benefit allegedly conferred on [the] [d]efendant is premised on the existence of the Plan, the cause of action relates to an ERISA plan and is preempted." Id. at *7. Similarly, in Liberty Wellness Chiropractic v. Empire Healthchoice HMO, Inc., No. 21 civ. 2132, 2023 WL 1927828 (S.D.N.Y. Feb. 10, 2023), the court held that "[a] claim under state law is not independent of ERISA if the terms of a benefit plan are an essential part of the claim, and liability would exist only because of the administration of an ERISA-regulated benefit plan." Id. at *7; see also Park Ave. Podiatric Care, P.L.L.C. v. Cigna Health and Life Ins. Co., Nos. 23-1134-cv & 23-

1135-cv, 2024 WL 2813721, at *1—2 (2d Cir. June 3, 2024) (summary ord.).[7]

The cases cited by the defendants do not reference the Supreme Court's decision in Rutledge,[8] and accordingly, provide no basis for distinguishing Rutledge. See generally Park Ave., 2024 WL 2813721; Tindel, 2023 WL 3318489; Liberty Wellness, 2023 WL 1927828. The defendants point to one possible distinction, arguing that "the minimum rates [in Rutledge] were imposed solely on the PBMs, not on ERISA plans," whereas here, the relief sought by the plaintiffs would directly affect the ERISA plans' administrators, if not the Plans themselves. See Defs.' Reply in Supp. of Mot. for Summ. J. ("Reply Mem."), at 4, ECF No. 493. However, in Vanguard Plastic Surgery, the District Court for the Southern District of Florida addressed this argument and

---

[7] To the extent the defendants cite cases predating Rutledge, those cases are unpersuasive. See, e.g., Plastic Surgery Ctr. P.A. v. Aetna Life Ins. Co., 967 F.3d 218 (3d Cir. 2020).

[8] The Defendants also cite to a case from the Ninth Circuit Court of Appeals in their Notice of Supplemental Authority. See ECF No. 500. In that case, the health plan denied reimbursements to the insurer after learning that the plaintiff provider was "fee-forgiving," or failing to collect the co-pays and deductibles that the plan participants were required to pay by the plan. See Bristol SL Holdings, Inc. v. Cigna Health and Life Ins. Co., 103 F.4th 597, 600 (9th Cir. 2024). This case also did not cite to Rutledge. See generally id. Further, Bristol did not involve a dispute over the rate of payment, but rather the denial of benefits following the providers' failure to comply with plan terms that prohibited fee-forgiving. Id. Thus, the state law claims in Bristol more plausibly "governed a central matter of plan administration," See Rutledge, 592 U.S. at 88.

considered whether Rutledge's holding was limited to PBMs. See
658 F. Supp. 3d at 1256. That court concluded that this
distinction misses Rutledge's central holding: "[T]hat a state
law doesn't 'relate to' an ERISA plan if it merely 'establishes a
floor for the cost of the benefits that plans choose to provide'—
so long as the law also 'does not require plans to provide any
particular benefit to any particular beneficiary in any
particular way.'" Id. at 1259 (quoting Rutledge, 592 U.S. at 90).
Accordingly, the Supreme Court's analysis in Rutledge provides
the appropriate analytical framework for the defendants'
preemption argument.

In this case, the unjust enrichment claim is not preempted
under either category of ERISA express preemption. First, the
plaintiffs' unjust enrichment claim does not "reference" an ERISA
plan because the doctrine of unjust enrichment applies
evenhandedly to both ERISA and non-ERISA plans. Second, the
plaintiffs' unjust enrichment claim does not have an
"impermissible connection" to an ERISA plan. If successful, the
plaintiffs' unjust enrichment claim would "merely increase
costs," and in Rutledge, the Supreme Court made clear that
preemption does not apply where state laws increase ERISA plan
costs without requiring payment of specific benefits or otherwise
"govern[ing] a central matter of plan administration," 592 U.S.
at 87-88. The possibility that these defendants might pass along

23

the increased cost to the health benefit plans such that ERISA plans pay more in New York than elsewhere does not constitute an impermissible connection because "cost uniformity almost certainly was not an object of preemption." Rutledge, 592 U.S. at 88; Travelers, 514 U.S. at 662 (same).

Accordingly, the defendants' motion for summary judgment on the claims governed by ERISA on preemption grounds is **denied**.

### B.

The defendants also contend that FEHBA preempts the plaintiffs' unjust enrichment claim. FEHBA provides that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). The Second Circuit Court of Appeals has held that "[t]wo independent conditions must be satisfied in order to trigger preemption under § 8902(m)(1)." Empire HealthChoice Assurance, Inc. v. McVeigh, 396 F.3d 136, 145 (2d Cir. 2005), aff'd, 547 U.S. 677 (2006). "First, preemption only occurs when the FEHBA contract terms at issue relate to the nature, provision, or extent of coverage or benefits" and "[s]econd, federal law may only preempt state or local laws if those laws relate to health insurance or plans" Id.

24

The United States Supreme Court has provided less guidance
on FEHBA preemption than on ERISA preemption. In McVeigh, the
Second Circuit Court of Appeals held that "laws of general
application that make absolutely no reference to health insurance
or plans but are used in a given case to construe or enforce
FEHBA plans" do not satisfy the second condition for § 8902(m)(1)
preemption. Id. at 146. However, the Supreme Court has not
endorsed that holding. See Coventry Health Care of Mo., Inc. v.
Nevils, 581 U.S. 87, 95—98 (2017) (expressing a broad view of
FEHBA preemption and clarifying that the Supreme Court's earlier
affirmance in McVeigh was limited to "the discrete question [of]
whether 28 U.S.C. § 1331 gives federal courts subject-matter
jurisdiction over FEHBA reimbursement actions"); see also Mahajan
v. Blue Cross Blue Shield Ass'n, No. 16-cv-6944, 2017 WL 4250514,
at *6—9 (S.D.N.Y. Sept. 22, 2017) (discussing the limitations of
McVeigh's holding in greater detail).

In Coventry, the Supreme Court held that FEHBA preempted a
Missouri law prohibiting subrogation and reimbursement. See
Coventry, 581 U.S. at 99. The Court noted that "Congress' use of
the expansive phrase 'relate to'" "expresses a broad pre-emptive
purpose." Id. at 95—96. However, because in Coventry, "the
parties agree[d] that Missouri's law prohibiting subrogation and
reimbursement [met] one of the two limitations, i.e., the State's
law relate[d] to health insurance or plans" and "dispute[d] only

25

whether the [law's] requirements . . . relate[d] to the nature, provision, or extent of coverage or benefits," the Court did not have reason to discuss the second prong of FEHBA preemption. Id. at 94—95. It is thus not immediately clear whether state common law unjust enrichment claims "relate to" "health insurance or plans" for the purpose of FEHBA preemption.

In the absence of further guidance from the Supreme Court, the Ninth Circuit Court of Appeals has held that FEHBA's preemption clause "closely resembles ERISA's express preemption provision, and precedent interpreting the ERISA provision thus provides authority for cases involving the FEHBA provision." Botsford v. Blue Cross & Blue Shield of Mont., Inc., 314 F.3d 390, 393—94 (9th Cir. 2002) (concluding that FEHBA preemption barred insured patient's state common law claims seeking additional reimbursement for an out-of-network surgery). Notably, both the ERISA and FEHBA preemption clauses use the phrase "relate to." Accordingly, having found that ERISA does not preempt the plaintiffs' unjust enrichment claim, the Court finds that the same is true of FEHBA.

Therefore, the defendants' motion for summary judgment on the FEHBA claims on preemption grounds is **denied**.

**IV.**

The defendants also contend they are entitled to summary judgment because the plaintiffs have failed to satisfy any

26

element of their unjust enrichment claim. "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates in the absence of any agreement." <u>Goldman v. Metro. Life Ins. Co.</u>, 841 N.E.2d 742, 746 (N.Y. 2005). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." <u>Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.</u>, 448 F.3d 573, 586 (2d Cir. 2006).

**A.**

The defendants contend that the plaintiffs cannot satisfy the first element of unjust enrichment because the plaintiffs conferred a benefit only on the defendants' insureds—not on the defendants themselves. The defendants argue that the "at-issue services were provided solely to the patients, not to [the] [d]efendants, and solely at the patients' request." Defs.' Mem. at 21. The plaintiffs argue in response that New York courts have recognized that the provision of emergency care to insured patients confers a benefit on insurers. <u>See</u> Opp. Mem at 16—20. The plaintiffs rely on two theories to show that the defendants benefited at the plaintiffs' expense: (1) that the plaintiffs' provision of emergency care discharged the defendants' obligation to make healthcare services available to its insureds; and (2) that the defendants benefited from the Plans' payments of shared

savings fees whenever the plaintiffs provided out-of-network emergency services and the plaintiffs accepted less than their billed charges. See id. at 20, 25.

Typically, in a claim for unjust enrichment, "if the services were performed at the behest of someone other than the defendant, the plaintiff must look to that party for recovery." JLJ Recycling Contractors Corp. v. Town of Babylon, 754 N.Y.S.2d 897, 897 (App. Div. 2003). Accordingly, New York courts have twice found that "no claim in quantum meruit can be asserted against the defendants" where "the complaint alleges that medical services were performed by the plaintiff doctors at the behest of their patients" rather than at the behest of the defendant insurance company. Pekler v. Health Ins. Plan of Greater N.Y., 888 N.Y.S.2d 196, 198 (App. Div. 2009); see Kirell v. Vytra Health Plans Long Island, Inc., 815 N.Y.S.2d 185, 187 (App. Div. 2006).

However, "New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services." AA Med., P.C. v. Centene Corp., No. 21-CV-5363, 2023 WL 5670682, at *4 (E.D.N.Y. June 30, 2023). In Wellcare, "an apparent case of first impression," a New York trial court concluded that where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to

28

pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees." 937 N.Y.S.2d at 543, 545. The Wellcare court contrasted emergency treatment with elective treatment and distinguished the earlier Appellate Division cases in Pekler and Kirell on the ground that each involved elective treatment. Id. at 545—46.[9] "In such instances where an individual patient seeks medical care and the care provider is afforded an opportunity to provide[] or decline care, the benefit runs entirely to the patient and not an insurer," AA Medical, 2023 WL 5670682, at *5, whereas in emergency cases, "[i]t is precisely because a hospital is required to provide such treatment that 'payment of less than actual costs is unreasonable and, thus, inequitable,'" id. at *4 (quoting Wellcare, 937 N.Y.S.2d at 544).

Both Wellcare itself and the cases it relies upon involve disputes between Medicare-managed care organizations and provider hospitals, and the defendants contend that, to the extent Wellcare is good law, its application is limited to the Medicare context. Along these lines, the District Court for the Eastern District of New York has found that the Wellcare decision "was premised upon application of specific federal laws and

---

[9] The defendants cite cases to counter Wellcare, but these appear mainly to involve elective care. See, e.g., Josephson v. United Healthcare Corp., No. 11-CV-3665, 2012 WL 4511365 (E.D.N.Y. Sept. 28, 2012) (non-emergency sinus surgery).

regulations covering the provision of medical services to
Medicare enrollees, and rested upon the statutory requirement
that the plaintiff hospital provide emergency services to
[Medicare] enrollees" and that where the "[p]laintiff does not
claim that its performance of services was compelled by Medicare,
Medicaid, or any law," the "the theory of recovery enunciated in
Wellcare is unavailable." Sasson Plastic Surgery, LLC v.
UnitedHealthcare of New York, Inc., No. 17-cv-1674, 2021 WL
1224883, at *15 (E.D.N.Y. Mar. 31, 2021) (emphasis added),
vacated in part on other grounds, 2022 WL 2664355 (E.D.N.Y. Apr.
26, 2022).

In this case, unlike in Sasson, the plaintiffs allege that
"under the federal Emergency Medical Treatment and Labor Act
("EMTALA"), 42 §§ 1395dd(a), (b), (d), and (h), hospitals and
physicians who staff hospital emergency rooms have a duty to
provide for an appropriate medical screening examination when an
individual comes to the emergency department" and "[i]f the
individual has an emergency medical condition, they are required
to stabilize the medical condition without inquiry into the
individual's method of payment or insurance status." Am. Compl. ¶
22. Thus, the plaintiff "claim[s] that its performance of
services was compelled by . . . [a] law," Sasson, 2021 WL
1224883, at *15, and there does not appear to be any basis for

limiting Wellcare to the Medicare context and excluding services
required to be provided under federal law (EMTALA).

Several other courts that have considered the unjust
enrichment doctrine in the health insurance context have reached
the opposite conclusion. The defendants cite to a Texas Supreme
Court decision which observed that "[a]n emergency-room physician
does not undertake to provide life-saving treatment for an HMO or
any other kind of insurance company" and agreed with the
reasoning of a federal district court that "a ripened obligation
to pay money to the insured[s] . . . hardly can be called a
benefit" within the meaning of the unjust enrichment doctrine.
See Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc., 659
S.W.3d 424, 437 (Tex. 2023); see also Murphy Med. Assocs., LLC v.
Yale Univ., No. 3:22-cv-33, 2023 WL 2631798 (D. Conn. Mar. 24,
2023) ("The insurance company derives no benefit from those
services; indeed, what the insurance company gets is a ripened
obligation to pay money to the insured—which hardly can be called
a benefit.") (quoting Travelers Indem. Co. of Conn. V. Losco
Grp., 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)). However, New
York courts have not adopted this holding.

Wellcare's holding is also consistent with the Restatement
(Third) of Restitution and Unjust Enrichment, which New York
courts look to when confronted with unjust enrichment claims.
See, e.g., Alan B. Greenfield, M.D., P.C. v. Long Beach Imaging

31

Holdings, LLC, 981 N.Y.S.2d 135, 137 (App. Div. 2014); Robert M. Schneider, M.D., P.C. v. Licciardi, 108 N.Y.S.3d 720, 728—29 (Sup. Ct. 2019); Urgent Med. Care, PLLC v. Amedure, 117 N.Y.S.3d 459 (Table), at *2 (Sup. Ct. 2019).

Section 20 of the Restatement provides that "[a] person who performs, supplies, or obtains professional services required for the protection of another's life or health is entitled to restitution from the other as necessary to prevent unjust enrichment." Restatement (Third) of Restitution and Unjust Enrichment § 20 (Am. L. Inst. 2011). However, the defendant need not be the direct recipient of the claimant's professional services. Rather, "[t]he claim . . . may be asserted against the recipient of services, a successor, or a representative." Id. § 20 cmt. a. Indeed, the Restatement endorses the "theory [asserted in this case] that the claimant, by obtaining needed services for the benefit of a third person, has in so doing discharged a duty of the defendant." Id.

More specifically, § 22 of the Restatement provides that "[a] person who performs another's duty to a third person or the public is entitled to restitution from the other as necessary to prevent unjust enrichment, if the circumstances justify the decision to intervene without request." Id. § 22(1). Generally, "[t]he law does not favor unrequested intervention in the affairs of another," id. § 22 cmt. a, but "[u]nrequested

32

intervention may be justified," id. § 22(2) "to avoid imminent harm to the interests of [a] third person," id. § 22(2)(b). To elaborate, the Restatement offers the following illustration:

> Hospital provides emergency services to patients enrolled with Managed Care Organization, at rates established under a contract designating Hospital a 'preferred provider.' The contract expires and is not renewed after the parties fail to reach agreements about the price. Hospital continues to provide services to MCO's patients nevertheless. MCO tenders payment for these services at the 'preferred' rate fixed by the prior agreement; Hospital demands compensation at the higher, 'standard' rate invoiced to uninsured patients. The court finds that there is no contract, express or implied, to fix the price of Hospital's services on either basis. Hospital's right to payment from MCO rests on a claim in restitution under § 22(2)(b); MCO's unjust enrichment is measured by the reasonable value of the services rendered by Hospital.

Id. § 22 cmt. g, illus. 10.

In this case, as in the Restatement's illustration, the plaintiffs—who staff hospital emergency rooms—provided emergency medical care to the defendants' insureds, but the plaintiffs are out-of-network providers. The defendant insurance companies provided reimbursement at the level required by the health plans it agreed to with the various plan sponsors. The plaintiffs allege they are entitled to the reasonable value of their services. According to the Restatement § 22(2)(b), the plaintiffs have discharged the insurance company's duty to its

insureds. Accordingly, where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees." Wellcare, 937 N.Y.S.2d at 545.

Both the Restatement provision and Wellcare's rationale are rooted in the theory that the plaintiffs' provision of emergency medical care discharged the defendants' obligation to make such care available to its insureds. See Wellcare, 937 N.Y.S.2d at 542 ("The complaint alleges that HHC hospitals provided emergency services to Wellcare's Medicare enrollees, fulfilling Wellcare's obligation to ensure that its enrollees received such services."). The plaintiffs also claim that the defendants benefited from the Plans' payment of shared savings fees whenever the plaintiffs provided out-of-network emergency services and the plaintiffs accepted less than their billed charges. Pls.' 56.1 Counterstatement ¶ 19. However, having concluded that the plaintiffs discharged the defendants' obligation to its insureds, it is unnecessary to rely on the plaintiffs' shared savings fee theory, which has been rejected by other courts. See Hott v. MultiPlan, Inc., 21 Civ. 02421, 2023 WL 185495, at *8 (S.D.N.Y. Jan. 13, 2023); Hudson Neurosurgery, PLLC v. UMR, Inc., 20-CV-9642, 2023 WL 6311218, at *7 (S.D.N.Y. Sept. 28, 2023).

34

**B.**

The defendants next contend that the plaintiffs cannot show that "equity and good conscience require restitution" under the third element of unjust enrichment. <u>See</u> <u>Beth Israel Med. Ctr.</u>, 448 F.3d at 589. The defendants argue primarily that equitable principles do not permit the plaintiffs to obtain reimbursement in excess of their costs from the defendants. <u>See</u> Defs.' Mem. at 28. In response, the plaintiffs assert that pursuant to New York law, they are entitled to the reasonable value of the care they provide and that the reasonable value of their services presents a question of fact for the jury. <u>See</u> Opp. Mem. at 29.

In New York, "recovery on [an unjust enrichment] claim is limited to the reasonable value of the services rendered by the plaintiff." <u>Giordano v. Thompson</u>, 564 F.3d 163, 170 (2d Cir. 2009); <u>see also</u> <u>DG & A Mgmt. Servs., LLC, v. Sec. Indus. Ass'n Compliance and Legal Div.</u>, 910 N.Y.S.2d 242, 245 (App. Div. 2010) ("[T]he remaining causes of action at issue sound in quantum meruit and unjust enrichment and, in both instances, the proper measure of [the] plaintiff's damages is the reasonable value of the services performed for [the] defendant.").

Contrary to the defendants' assertions, <u>Wellcare</u>'s comment that "an insurance company is unjustly enriched if it fails to pay the hospital in full for <u>the costs incurred</u> in rendering the necessary treatment" is not an expression of the measure of

35

unjust enrichment damages and is not inconsistent with the conclusion that an insurance company would be unjustly enriched if it failed to pay for the reasonable value of services rendered. See 35 N.Y.S.2d at 345 (emphasis added).

Therefore, the plaintiffs' request for the reasonable value of the emergency services rendered does not run afoul of equitable principles as a matter of law. Further, having established under New York law that the measure of recovery for an unjust enrichment claim is the reasonable value of services rendered by the plaintiffs, summary judgment on the question of whether the defendants reimbursed the plaintiffs for the reasonable value of services is inappropriate, because that issue presents a question of fact.

### C.

Finally, the defendants contend that the plaintiffs cannot satisfy the elements of their unjust enrichment claim because the relevant health plans are valid contracts that preclude recovery in quasi contract. Under New York state law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (N.Y. 1987). "[M]any courts in New York state and in this District have found that the existence of a valid

and binding contract governing the subject matter at issue in a particular case does act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement." Law Debenture v. Maverick Tube Corp., No. 06 Civ. 14320, 2008 WL 4615896, at *12 (S.D.N.Y. Oct. 15, 2008) (collecting cases); but see Lee v. Kylin Mgmt. LLC, No. 17-CV-7249, 2019 WL 917097, at *2 (S.D.N.Y. Feb. 25, 2019) (describing this view as "far from universal").

However, this case does not concern an unjust enrichment claim brought by a party to a valid and enforceable contract against a third-party nonsignatory to that agreement. Here, the plaintiffs—not the defendants—are third-party nonsignatories to the health plans and have sued parties to the health plan contracts. Indeed, the defendants cite only one New York state case where a valid contract precluded an unjust enrichment claim brought by a non-party to the contract against a party to that contract and in that case, the Appellate Division assumed arguendo that "the plaintiffs were third-party beneficiaries of th[e] contracts," and held that "their status as third-party beneficiaries would not permit them to recover in quasi contract." Gargano v. Morey, 86 N.Y.S.3d 595, 599 (App. Div. 2018).

These plaintiffs are not parties to the health plan contracts and are not alleged to be third-party beneficiaries of

those contracts. Accordingly, this case does not involve a claim "where the plaintiff is a party to a contract that defines his obligations and entitlements," and sues a non-party "seeking to enlarge his contractual entitlements or diminish his contractual duties and in effect circumvent the contractual limitations to which he agreed." Weyant v. Phia Grp. LLP, No. 17 Civ. 8230, 2021 WL 5998400, at *3 (S.D.N.Y. Dec. 20, 2021). These plaintiffs never agreed to be bound by the health benefit plans and thus do not seek to circumvent their bargained-for contractual obligations.

Accordingly, the defendants' motion for summary judgment dismissing the plaintiffs' unjust enrichment claim on the grounds that the plaintiffs failed to satisfy the elements of unjust enrichment is **denied.**

**V.**

The defendants also move for summary judgment on the ground that the plaintiffs lack standing because recovery of any additional reimbursement will pass, pursuant to contract, to non-party subsidiary, Emergency Physician Associates, LLC ("Emergency Physician Associates"),[10] see Defs.' 56.1 Statement ¶

---

[10] Emergency Physician Associates is "a wholly owned subsidiary of TeamHealth." Defs.' 56.1 Statement ¶ 26. The plaintiffs and Emergency Physician Associates have a Professional and Support Services Agreement which governs the flow of funds between the entities. Id.

26 (undisputed that, on a daily basis, the plaintiffs transfer any amount in excess of costs to a subsidiary) , and thus the plaintiffs have suffered no injury.  "[I]n order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (i.e., a concrete and particularized invasion of a legally protected interest); (2) causation (i.e., a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (i.e., it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief [the] plaintiff seeks in bringing suit)." Sprint Commc'ns Co., L.P. v. APCC Servs., Inc., 554 U.S. 269, 273—74 (2008). The defendants contend: (1) that the plaintiffs did not suffer an injury in fact because they would not have retained any of the money they allege the defendants failed to pay them; and (2) that any legal victory would therefore redress harm done to Emergency Physician Associates, not to the plaintiffs. See Defs.' Mem. at 36—38.

In Sprint, the United States Supreme Court addressed an analogous situation. In that case, customers placing long distance calls paid carriers to complete those calls. Id. at 271. The carriers were required to compensate the payphone operators for the customers' calls but failed to do so. Id. Rather than sue, many payphone operators assigned their claims to collection firms called "aggregators." Id. at 271—72. The

carrier defendants argued that the plaintiff aggregators lacked standing:  (1) "because it was the payphone operators (who are not plaintiffs), not the aggregators (who are plaintiffs), who were injured in fact" and (2) because "it is the payphone operators, not the aggregators, whose injuries a legal victory will truly redress" because "[t]he aggregators, after all, will remit all litigation proceeds to the payphone operators." Id. at 274. In response to the Sprint defendants' argument that "the aggregators cannot satisfy the redressability requirement of standing because, if successful in this litigation, the aggregators will simply remit the litigation proceeds," the Court noted that the redressability inquiry focuses instead "on whether the injury that a plaintiff alleges is likely to be redressed through the litigation—not on what the plaintiff ultimately intends to do with the money he recovers." Id. at 286—87.

In this case, the plaintiffs are the original holders of the claims, not assignees as in Sprint, but are otherwise similarly situated to the Sprint aggregators because they also will not retain any litigation proceeds. See Dev. Specialists, Inc. v. Meritage Homes Corp., 621 Fed. Appx. 434, 434—35 (9th Cir. 2015) (unpublished memorandum) ("[T]he original holder of the claim, not an assignee, has promised to remit all proceeds from this litigation to another. Thus, [the plaintiff] has an

even stronger claim to standing than the assignees in Sprint.").
Redressability and injury in fact do not hinge "on what the
plaintiff ultimately intends to do with the money he receives."
See Sprint, 554 U.S. at 287. The plaintiffs were injured by any
alleged underpayment to them, regardless of whether they will
retain the reimbursement. See id.

Accordingly, the defendants' motion for summary judgment
dismissing the plaintiffs' unjust enrichment claim on the ground
that the plaintiffs lack standing is **denied.**

**VI.**

The defendants next move for summary judgment on the ground
that the defendants' insureds assigned their health plan
benefits to the hospitals that treated them, not to the
plaintiffs. See Defs.' 56.1 Statement, ¶ 105. However, the
plaintiffs do not advance claims for health plan benefits that
otherwise would have belonged to patients. Instead, they seek
reimbursement for the defendants' failure to reimburse the
plaintiffs for the reasonable value of their services,
independent of the terms of the health benefit plans.

Accordingly, the defendants' motion for summary judgment on
the ground that the insured patients assigned their health plan
benefits to a party other than the plaintiffs is **denied.**

41

VII.

The defendants also contend that the plaintiffs' request for declaratory relief is redundant and that in any event, forward-looking relief cannot be granted because the federal and state No Surprises Act laws provide the exclusive remedy for future payment disputes over the proper rate of reimbursements for out-of-network emergency services. See 42 U.S.C. § 300gg-111, et seq.; N.Y. Fin. Servs. Law, § 601, et seq.

However, the defendants mischaracterize the plaintiffs' requested relief. The plaintiffs seek only a declaration of the proper reimbursement amount for claims occurring between July 2021 and December 31, 2021. This Court's January 28, 2023 Order limited discovery to the claims accruing through July 2021 that were contained in the plaintiffs' initial claims list. ECF No. 293 at 10.[11] Thus, the plaintiffs' claims are not duplicative because their request for declaratory relief will reach the claims excluded from discovery and therefore not encompassed by the plaintiffs' unjust enrichment claim.

Similarly, the plaintiffs' request for declaratory relief applicable to the period between July 2021 and December 2021 is appropriately cabined and would not "require judicial

---

[11] The disputed claims also encompassed "any claims for additional care provided to those same patients after July 2021." Id.

supervision over a long period of time." Defs.' Mem. (quoting

Niagara Mohawk Power Corp. v. Graver Tank & Mfg. Co., 470 F.

Supp. 1308, 1326 (N.D.N.Y. 1979)).

Finally, the defendants' argument that declaratory relief

would violate the federal and state No Surprises Act laws is

unavailing because both laws went into effect on January 1,

2022, and the plaintiffs' request for declaratory judgment

applies only to claims through December 31, 2021.

Accordingly, the defendants' motion for summary judgment

dismissing the plaintiffs' request for declaratory relief is

**denied.**

### VIII.

The defendants next move for summary judgment with respect

to Defendant UHG, arguing that UHG is not a proper defendant.

This Court previously denied the defendants' motion for partial

judgment on the pleadings and held that "the plaintiffs ha[d]

pleaded a direct unjust enrichment claim against UHG." Rule

12(c) Opinion, 2022 WL 4087596, at *2.

The defendants now reiterate their earlier argument that

"[n]o evidence exists that UHG adjudicated, priced, or paid any

Disputed Benefit Claims, or any claims to any provider." Defs.'

Mem. at 42. However, this Court's prior ruling concluded that

"regardless of whether UHG is responsible for administering

health benefit plans or adjudicating health benefit claims," the

plaintiffs adequately "alleged that UHG benefitted financially" from its subsidiaries' "failure to reimburse [the] [p]laintiffs [for] the reasonable value of the services provided." Rule 12(c) Opinion, 2022 WL 4087596, at *2 (emphasis added).

The defendants do not contest the plaintiffs' claim that UHG benefited financially from the alleged underpayment of benefit claims and accordingly, this Court's earlier decision controls "regardless of whether UHG is responsible for administering health benefit plans or adjudicating health benefit claims." See id.

The defendants' motion for summary judgment as to defendant UHG is therefore **denied.**

## IX.

Finally, the defendants seek summary judgment on claims paid pursuant to a written contract between the plaintiffs and the POMCO Select network. Defs.' Mem. at 42. The plaintiffs "agree that medical claims pursuant to a written contract between [the] [p]laintiffs and POMCO Select ("POMCO"), a UHG subsidiary, are not subject to [their] unjust enrichment claim" and do not seek reimbursement for the POMCO patients but instead contend that "United has not indicated which purported claims were paid pursuant to a written contract." Opp. Mem. at 43.

The defendants are correct, and the plaintiffs do not dispute, that "[t]he existence of a valid and enforceable

written contract governing" the in-network POMCO claims

precludes an unjust enrichment claim. See Alessi Equip. v. Am.

Piledriving Equip., 578 F. Supp. 3d 467, 506 (S.D.N.Y. 2022).

The parties disagree as to which particular claims at issue in

this case involve POMCO patients. The parties should be able to

resolve that dispute and if not, submit supplemental papers

directly addressing the factual dispute as to which claims

involve POMCO patients.

### CONCLUSION

The Court has considered all of the parties' arguments. To

the extent not specifically addressed above, those arguments are

either moot or without merit. For the foregoing reasons, the

defendants' motion for summary judgment is **denied**. The Clerk is

respectfully directed to close all pending motions.


**SO ORDERED.**

**Dated: September 17, 2024**
**New York, New York**

John G. Koeltl
United States District Judge